

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. _____ |
| ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, and CLARENCE T. "CASEY" CLEM, JR., | § § § § § § § § § § § | 3 0 7 - C V 1 2 9 7 - K |
| Defendants. | § § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 2 5 2007
CLERK, U.S. DISTRICT COURT
By _____
Deputy

## PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff, Atlantic Casualty Insurance Company (Atlantic Casualty), files its original complaint seeking a declaratory judgment and in support respectfully shows the Court as follows:

### I.
### PARTIES

1.     Atlantic Casualty is a North Carolina corporation and has its principal place of business in North Carolina.  Atlantic Casualty is not a citizen of Texas.

2.      Defendant Robert Ramirez is a citizen of the State of Texas and resident of Dallas County, and may be served with process at 2914 Panorama Drive, Carrollton, Texas 75007.  Mr. Ramirez is also an officer or director of LBJ Trucking Co.

3.      Defendant LBJ Trucking Co., Inc. is a Texas corporation with its principal place of business in Texas, and is a citizen of Texas, and may be served with process by serving its registered agent, Carolyn Elizabeth Benavides, at 2914 Panorama Drive, Carrollton, Texas 75007.

4.      Defendant Clem's Ye Olde Homestead Farms is a Texas limited partnership and may be served with process by serving its registered agent, Clarence Truman Clem, at 1639 Parker Road, Carrollton, Texas 75010.

5.      Defendant Bettye Crider Clem is a citizen of Texas and resident of Denton County, Texas and may be served with process at 1639 Parker Road, Carrollton, Texas 75010.

6.       Defendant Clarence Truman Clem is a citizen of Texas and resident of Denton County, Texas and may be served with process at 1639 Parker Road, Carrollton, Texas 75010.

7.      Defendant Kelly Clem is a citizen of Texas and resident of Denton County, Texas and may be served with process at 1639 Parker Road, Carrollton, Texas 75010.

8.      Defendant Clarence T. "Casey" Clem is a citizen of Texas and resident of Denton County, Texas and may be served with process at 1639 Parker Road, Carrollton, Texas 75010.

## II.
## JURISDICTION

9.     The Court has jurisdiction over this lawsuit under 28 U.S.C §1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## III.
## VENUE

10.     Venue is proper in this Court under 28 U.S.C. § 1391(a)(1), as some Defendants are residents of Dallas County, which is within this judicial district.

## IV.
## FACTS

11.     Atlantic Casualty brings this claim for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

12.     LBJ Trucking Co., Inc. was insured under commercial general liability ("CGL") policies numbered L057003403 and L057004262 issued by Atlantic Casualty effective April 27, 2004 to April 27, 2005 and April 28, 2005 to June 16, 2005.

13.     This declaratory judgment action stems from a lawsuit filed on June 12, 2007 by Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem and Clarence T. "Casey" Clem, Jr. (collectively the "Underlying Lawsuit Plaintiffs") against Bill Briscoe, individually and d/b/a Briscoe Land Reclamation Project, and d/b/a Bill Briscoe Enterprises, Inc., Hensley Industries, Inc., Robert Ramirez, individually and d/b/a LBJ Trucking Co., Inc., and LBJ Trucking Co., Inc. (collectively the "Underlying Lawsuit Defendants"), styled and numbered Cause No. 4:07-CV-285-RAS-DDB, *Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem and Clarence T. "Casey" Clem, Jr. v. Bill Briscoe, individually and d/b/a Briscoe Land Reclamation Project, and d/b/a Bill Briscoe Enterprises, Inc., Hensley Industries, Inc., Robert Ramirez, individually and d/b/a LBJ Trucking Co., Inc., and LBJ Trucking Co., Inc.*, in the United States District Court for the Eastern District of Texas, Sherman Division (the "Underlying Lawsuit").

14.     According to the Complaint in the Underlying Lawsuit, a parcel of land located at 1639 Parker Road in Carrollton, Texas ("the Clem property") has become a dumping site of solid waste, including foundry sand, generated by Hensley Industries, Inc. ("Hensley") and transported by Robert Ramirez, individually and d/b/a LBJ Trucking, Co., Inc. and LBJ Trucking Co., Inc. (collectively "LBJ Trucking").  The Underlying Lawsuit Plaintiffs, who are owners of the Clem property, allege that Bill Briscoe, individually and d/b/a Briscoe Land Reclamation Project and d/b/a Bill Briscoe Enterprises, Inc. ("Briscoe") engaged in the storage and disposal of solid waste, including foundry sand, that has contaminated the Clem property.

15.     The Underlying Lawsuit Plaintiffs allege that in 2001 Briscoe began performing reclamation work on part of the Clem property and contracted with Clem to bring in "clean fill material" as part of the project to raise certain lands out of the flood plain.

16.     The Underlying Lawsuit Plaintiffs allege that "Documents of Briscoe and the Briscoe entities demonstrate that a first load of foundry sand, as opposed to clean fill material, was delivered to the Clem Property on January 18, 2002.  Robert Ramirez was the transporter of the foundry sand from January of 2002 until at least October 17, 2002, when LBJ Trucking was incorporated."

17.     The Underlying Lawsuit Plaintiffs allege that:  none of them was aware that Briscoe was accepting, storing and disposing of foundry sand and other solid waste generated in part by Hensley and transported by Ramirez and LBJ Trucking to the Clem property.  The foundry sand and other solid waste was generated, transported, stored and disposed of at the property up to and including at least May 2, 2006.

18.     The Underlying Lawsuit Plaintiffs allege that:  in general, Hensley generated the foundry sand and provided it to Ramirez and LBJ Trucking, who transported the material and other

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT - Page 4**

solid waste to the Clem property. Hensley and Briscoe arranged for the disposal of the solid waste and foundry sand at the Clem property. Substantial quantities of solid waste and foundry sand remain at the property.

19.     The Underlying Lawsuit Plaintiffs allege that Briscoe, Hensley, Ramirez and LBJ Trucking have had continuous knowledge of the presence of solid waste and foundry sand that was illegally disposed of at the Clem property for some time.

20.     The Underlying Lawsuit Plaintiffs allege that: the Underlying Lawsuit Defendants' failure to remove the foundry sand and other waste constitutes wrongs, torts, and conduct that are continuing, uninterrupted and unremedied. The wastes generated, transported, stored and disposed of by the Underlying Lawsuit Defendants is continuing to be present in the environment, are uncovered and subject to storm water discharges, and continue to present an imminent and substantial endangerment to individuals and the environment. The presence of the foundry sand and other waste on the Clem property diminishes the current and future value of the property and results in loss of rental fees to the Underlying Lawsuit Plaintiffs.

21.     The Underlying Lawsuit Plaintiffs allege that: the Underlying Lawsuit Defendants' generation, handling, transport, storage, disposal and arranging for disposal of solid waste violates 30 Texas Administrative Code Chapter 335.2(a) and (b) because of Briscoe's failure to obtain an appropriate Texas Commission on Environmental Quality ("TCEQ") permit or authorization prior to disposing of the foundry sand and solid waste.

22.     The Underlying Lawsuit Plaintiffs also allege that the Underlying Lawsuit Defendants' conduct in generating, handling, transporting, storing, disposing and arranging for

disposal of foundry sand and other solid waste is in violation of Texas Health and Safety Code Chapter 361.

23.     The Underlying Lawsuit Plaintiffs allege that the Underlying Lawsuit Defendants' conduct violates 40 CFR § 257.1(c) because they played a part in creating a solid waste disposal facility that does not satisfy the criteria set forth in 40 CFR § 257.

24.     The Underlying Lawsuit Plaintiffs assert a cause of action under RCRA, 42 U.S.C. § 6945(a), which makes open dumping of solid waste illegal.  "Open dumping" is defined as including "disposal of solid waste anywhere other than at a licensed landfill or permitted treatment storage and disposal facility."  "Disposal" includes the discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste into or onto land or water such that solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."  The Underlying Lawsuit Plaintiffs allege that the Clem property is not a licensed landfill or permitted treatment and storage facility.

25.     The Underlying Lawsuit Plaintiffs also allege that:  the Underlying Lawsuit Defendants have violated § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B) because their respective generation, treatment, storage, disposal, arranging for disposal, and handling of foundry sand and other solid waste contribute to the past and present handling, storage, and disposal of solid waste in the form of foundry sand and other waste at the Clem property.  The foundry sand and other solid waste at the Clem property may present an imminent and substantial endangerment to health or the environment through its ability to be emitted into the air, discharged into the water, or remain in soils at the Clem property.

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT - Page 6**

26.     The Underlying Lawsuit Plaintiffs also allege that:  the Underlying Lawsuit Defendants have created a private nuisance on the Clem property and that their conduct has been a non-trespassory invasion of the Clem property that prevents or impairs the private use and enjoyment of their land.  Briscoe's conduct invading the Underlying Lawsuit Plaintiffs' interest includes the contracting for, acceptance, storage, handling, disposal and arranging for disposal of foundry sand and municipal solid waste while operating a land reclamation project on the Clem property. Hensley's conduct that is allegedly invading the Underlying Lawsuit Plaintiffs' interest includes the generation, handling, and arranging for disposal of foundry sand through Ramirez, LBJ Trucking, and Briscoe at the Clem property; and Ramirez and LBJ Trucking's conduct includes the transport, handling and arranging for disposal of foundry sand and other solid waste at the Clem property.  The Underlying Lawsuit Defendants' conduct was intentional and unreasonable or negligent or reckless and they are strictly liable for the nuisance.   The nuisance is ongoing and will continue to damage the Underlying Lawsuit Plaintiffs and their property until it is abated and the foundry sand and other waste is removed and remedied.  The Underlying Lawsuit Plaintiffs also seek damages for rental value, diminished property value and punitive damages.

27.     The Underlying Lawsuit Plaintiffs allege that: the Underlying Lawsuit Defendants' conduct was negligent because they knew or should have known that their conduct would cause property and other damage to the Underlying Lawsuit Plaintiffs.   The Underlying Lawsuit Defendants had a duty to protect the Underlying Lawsuit Plaintiffs and their property from the effects of generating, transporting, handling, storing, arranging for disposal and disposing of foundry sand and other solid waste at the Clem property. The Underlying Lawsuit Defendants violated this duty and concealed and failed to disclose that the material brought to the Clem property was not clean fill

but was contaminated, regulated and a waste. The Underlying Lawsuit Plaintiffs also seek punitive damages for gross negligence.

28.     The Underlying Lawsuit Plaintiffs allege that: the Underlying Lawsuit Defendants have committed a trespass by their generation, transportation, handling, storage, arranging for disposal, and disposal of foundry sand and other solid waste on the Underlying Lawsuit Plaintiffs' property in a manner that was beyond, outside, and in breach of any agreement between the Underlying Lawsuit Plaintiffs and Underlying Lawsuit Defendants. The trespass constitutes an invasion of the Underlying Lawsuit Plaintiffs' interest that prevents and impairs the quiet use and enjoyment of the Clem property and has caused the Underlying Lawsuit Plaintiffs damage, including loss of rental value, diminished property value and punitive damages.

29.     The Underlying Lawsuit Plaintiffs allege that Briscoe's conduct constitutes a breach of their license agreement, a violation of the Texas Deceptive Trade Practices Act and for indemnity.

30.     Atlantic Casualty has named the Underlying Lawsuit Plaintiffs as defendants in this lawsuit because they are potential judgment creditors. As parties, they will be bound by any decision rendered in this declaratory judgment action with respect to coverage under the Atlantic Casualty policies.

## V.
## DECLARATORY JUDGMENT

31.     Paragraphs 1-30 set forth above are incorporated herein by reference.

32.     Atlantic Casualty seeks a declaration from this Court that it has no duty to defend or indemnify Robert Ramirez or LBJ Trucking or any other insured or Defendant for the claims asserted by the Underlying Plaintiffs in the Underlying Lawsuit. Atlantic Casualty reserves all rights for

reimbursement of costs and fees paid to the extent allowable under Texas law and as deemed appropriate by this Court.

33.     The Atlantic Casualty policies provide as follows for certain "property damage" coverage caused by an "accident" or "occurrence":

> *1.  Insuring Agreement*
> *a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.*

34.     Atlantic Casualty seeks a declaratory judgment based on the following policy provisions:

35.     There is no alleged "occurrence" or accident as defined in the policy.  The policy limits coverage for property damage to a defined "occurrence" which means:  "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## A.
### WHO IS AN INSURED

36.     The Atlantic Casualty CGL policies only provide coverage to an "insured."  Both of the policies define an insured:

> *SECTION II - WHO IS AN INSURED*
> *1.  If you are designated in the Declarations as:*
>
> *d.  An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.*

\* \* \*

*2. Each of the following is also an insured:*

a. *Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:*

(1) *"Bodily injury" or "personal and advertising injury":*

(a) *To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;*

(b) *To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;*

(c) *For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or*

(d) *Arising out of his or her providing or failing to provide professional health care services.*

\* \* \*

37.    There are exclusions in the policy that preclude coverage for the injuries asserted by the Underlying Plaintiffs in the Underlying Lawsuit.  One of these exclusions is:

**B.**
**CLAIMS IN PROCESS EXCLUSION**

38.    The Atlantic Casualty CGL policies only provide coverage for an occurrence that first takes place during the policy period.  Both policies contain a Claims in Process Exclusion that excludes coverage for "bodily injury" and "property damage" under Coverage A.  This exclusion reads as follows:

> *Paragraphs b (3), c. and d. under Insuring Agreement of Section I – Coverage A- Bodily Injury and Property Damage Liability are deleted. The following is added to 2. Exclusions under Section I – Coverage A – Bodily Injury and Property Damage Liability:*
>
> *1. any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown:*
>
>> *a. which first occurred prior to the inception date of this policy; or*
>>
>> *b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy.*
>
> *2. any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.*
>
> *We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.*

39.   The allegations in the Underlying Lawsuit are not covered under the Atlantic Casualty policies because of this exclusion. The Claims in Process exclusion precludes coverage for all losses that occurred or were in the process of occurring prior to the inception of the policy whether known or unknown.

40.   The first policy period is from April 27, 2004 to April 27, 2005. The second policy begins on April 28, 2005 and ends early on June 16, 2005 due to cancellation. The Underlying Lawsuit complaint clearly alleges that the first load of "foundry sand" was delivered on January 18, 2002 by Robert Ramirez. Therefore, it is expressly alleged that the loss arising out of the property damage first occurred prior to the inception date of the policy, or was in the process of occurring at the inception date of the policy.

41.    Since the damage is alleged to have begun in 2002, this exclusion applies to the claims against Robert Ramirez and LBJ Trucking because the first policy did not come in to place until 2004.

## C.
### THE TOTAL POLLUTION EXCLUSION

42.    The policies both contain a Total Pollution Exclusion.  This exclusion reads as follows and applies to preclude coverage for the Underlying Lawsuit allegations:

> *Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following.*
>
> *This insurance does not apply to:*
>
> *f. Pollution*
>
> *(1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*
>
> *(2)  Any loss, or expense arising out of any:*
>
> > *(a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants";  p*
> >
> > *(b) Claim or suit by or behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."*

The 2004-2005 policy defines "pollutants" as:

> *Any solid, liquid, gaseous or thermal <u>irritant or contaminant</u>, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and <u>waste</u>. Waste includes materials to be recycled, reconditioned or reclaimed.*

The renewal policy defines "pollutants" as follows:

> *"Pollutants" means solid, liquid, gaseous, or thermal irritant or contaminant <u>or</u> all material for which a Material Safety Data Sheet is required pursuant to federal, state or local laws, where ever discharged, dispersed, seeping, migrating or released, including onto or into the air or any air supply, water or any water supply or land, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, sewage; and associated smoke, vapor, soot, fumes from said substance. Waste includes materials to be recycled, reconditioned, or reclaimed.*

### D.
### PROPERTY DAMAGE AND OTHER POLICY EXCLUSIONS

43.     The Underlying Lawsuit Plaintiffs allege that they have suffered property damage as a result of the transportation and disposal of the waste on the Clem property. The Underlying Lawsuit Plaintiffs seek damages including loss of rental value, diminished property value and punitive damages. The following exclusions apply in whole or part to these claims:

> *j. Damage To Property*
>
> *"Property damage" to:*
>
> *(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*
>
> *(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;*

*(3)  Property loaned to you;*

*(4)  Personal property in the care, custody or control of the insured;*

*(5)  <u>That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or</u>*

*(6)  <u>That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.  [Emphasis added.]</u>*

*Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.*

*Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.*

*Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*

*Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*

The products-completed operations hazard reads as follows:

*"Products-completed operations hazard":*

*a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

*(1)  Products that are still in your physical possession; or*

*(2)  Work that has not yet been completed or abandoned.*

> However, "your work" will be deemed completed at the earliest of the following times:
>
> > (a) When all of the work called for in your contract has been completed.
> >
> > (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
> >
> > (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

"Your work" is defined as:

> (1)    Work or operations performed by you or on your behalf; and
> (2)    Materials, parts or equipment furnished in connection with such work or operations.
> b.      Includes
> (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
> (2)    The providing of or failure to provide warnings or instructions.

44.     Subsection (6) precludes coverage for damage to the insured's work caused by the insured and to damage that must be restored, repaired or replaced because the insured's work was incorrectly performed.

45.     There is another property damage exclusion that is applicable as follows:

> m. Damage To Impaired Property Or Property Not Physically Injured

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

> *(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or*
>
> *(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

"Impaired property" is defined as:

> *. . . tangible property, other than "your product" or "your work", that cannot be used or is less useful because:*
>
> *a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*
> *b. You have failed to fulfill the terms of a contract or agreement;*
>
> *if such property can be restored to use by:*
>
> *a. The repair, replacement, adjustment or removal of "your product" or "your work"; or*
> *b. Your fulfilling the terms of the contract or agreement.*

46.     There is another property damage exclusion that is applicable as follows:

*n. Recall Of Products, Work Or Impaired Property*

*Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

> *(1)     "Your product";*
> *(2)     "Your work"; or*
> *(3)     "Impaired property";*

*if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.*

47.     The policies contain an exclusion for Lead Bearing Substance.  The policy/ies state(s):

*We do not cover any claim, loss, costs or expense for "bodily injury" or "personal and advertising injury" caused by plumbism (lead poisoning) or any disease or ailment caused by or aggravated by exposure, consumption or absorption of lead.*

*We do not cover any claim, loss, costs or expense for "property damage" arising out of the actual or alleged presence of lead in any form, including the costs of remedial investigations or feasibility studies, or to the cost of testing, monitoring, cleaning up or removal of any lead-bearing substance.*

48.     The policies contain an exclusion for Asbestos or Silica Dust.  The policy/ies state(s):

*We do not cover any claim, loss, costs or expenses for "bodily injury" or "personal and advertising injury" caused by asbestosis, silicosis, mesothelioma, emphysema, pneumoconiosis, pulmonary fibrosis, pleuritis, endothelioma or any lung disease or any ailment caused by, or aggravated by exposure, inhalation, consumption or absorption of asbestos fibers or silica dust.*

*We do not cover any claim, loss, costs or expense for "property damage" due to or arising out of the actual or alleged presence of asbestos or silica dust in any form, including the cost of remedial investigations or feasibility studies, or to the cost of testing, monitoring, cleaning and removal of any property or substance.*

49.     The 2005 renewal policy also contains an exclusion for Chromated Copper Arsenate (CCA).  That policy states:

*We do not cover any claim, loss, costs or expense for "bodily injury" or "personal and advertising injury" or any ailment caused by, or aggravated by exposure, inhalation, consumption or absorption of Chromated Copper Arsenate (CCA).*

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT - Page 17**

> *We do not cover any claim, loss, costs or expense for "property damage" due to or arising out of the actual or alleged presence of Chromated Copper Arsenate (CCA) in any form, including the cost of remedial investigations or feasibility studies, or to the cost of testing, monitoring, cleaning or removal of any property or substance.*

50.     Both policies contain an exclusion for Subsidence. This exclusion reads as follows:

> *In consideration for the premium charged, it is hereby understood and agreed that liability for bodily injury or property damage caused by, resulting from, attributable to or contributed to, or aggravated by the subsidence of land as a result of landslide, mud flow, earth sinking or shifting, resulting from operations of the Named Insured or any other subcontractor of the Named Insured is excluded.*

51.     The policies contain an exclusion for Independent Contractors / Subcontractors. This exclusion reads as follows:

> *You or any insured are not covered for claims. Loss, costs or expense arising out of the actions of independent contractors/subcontractors for or on behalf of any insured.*

52.     The policies also exclude coverage for intentional acts in the Combination Endorsement. The exclusion reads in pertinent part:

> *      *      *
>
> *Exclusion 2.a. of the Commercial General Liability Coverage Form is deleted in its entirety and replaced by the following:*
> *(a) "bodily injury" or "property damage" expected or intended from the standpoint of any insured.*

53.     The 2005 renewal policy contains an exclusion for Landfill, Garbage or Refuse Dumps. This exclusion reads as follows:

> *EXCLUSION- LANDFILL, GARBAGE OR REFUSE DUMPS, FERTILIZER OR RENDERING PLANTS, GARBAGE WORKS OR HAZARDOUS WASTE SITES*
>
> *You are not covered for claims, loss, costs or expense as a result of "bodily injury," "property damage" or "personal and advertising injury" claims arising out of or in the course of operations, ownership, maintenance or use of any landfill, hazardous waste site, garbage or refuse dump, fertilizer or rendering plant or garbage works including separation for recycling, reduction, reducing or incineration, or operations necessary or incidental thereto.*

**PLAINTIFF ATLANTIC CASUALTY INSURANCE COMPANY'S ORIGINAL COMPLAINT SEEKING DECLARATORY JUDGMENT – Page 18**

54.     There is no offense alleged under Coverage B and Coverage B also states:

*This insurance does not apply to:*

*a.  Knowing Violation of Rights of Another*
*"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."*

*m.      Pollution*
*"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*

*n.      Pollution-Related*
*Any loss, cost or expense arising out of any:*
*(1)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or*
*(2)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."*

**F.**
**PUNITIVE DAMAGES EXCLUSION**

55.     The Underlying Plaintiffs are seeking punitive damages.  Both policies contain the

following punitive damages exclusion:

*We do not cover any claim of or indemnification for punitive or exemplary damages.  If a "suit" seeking both compensatory and punitive damages has been brought against you for a claim covered by this policy, we will provide defense for such action.  We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.*

56.     Any claim for punitive damages would be excluded by this provision and would not

be covered to the extent punitive damages are uninsurable under Texas law.

# VI.
# PRAYER

For these reasons, Plaintiff Atlantic Casualty Insurance Company asks for judgment against

Defendants Robert Ramirez, individually and d/b/a LBJ Trucking Co., Inc., LBJ Trucking Co., Inc.,

Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem,

and Clarence T. "Casey" Clem, Jr. for:

       a.      A declaration that there is no duty to defend or indemnify any insured or pay any alleged or potential judgment creditor under the Atlantic Casualty policy for the allegations made by the Underlying Lawsuit Plaintiffs in the Underlying Lawsuit;

       b.      costs of court;

       c.      interest allowed by law for prejudgment or post-judgment interest; and

       d.      reimbursements of defense costs and all other relief the Court deems proper.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

By: _____

Camille Johnson, Attorney-in-Charge
State Bar No. 10686600
Gary N. Schumann
State Bar No. 17851930
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: camille@ssjmlaw.com

ATTORNEYS FOR PLAINTIFF
ATLANTIC CASUALTY INSURANCE COMPANY

Of counsel:
William A. Reece
State Bar No. 16672990
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: breece@ssjmlaw.com

%JS 44 (Rev. 10/06)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Atlantic Casualty Insurance Company

**DEFENDANTS**
Robert Ramirez, individually and d/b/a LBJ Trucking Co., Inc., LBJ Trucking Co., Inc., Clem's Ye Olde Homestead Farms, Ltd., et al.

RECEIVED JUL 25 2007 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ____Dallas County, Texas____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Savrick Schumann Johnson McGarr Kaminski & Shirley, L.L.P.
6440 N. Central Expy, Suite 107, Dallas, Texas 75206 (214) 368-1515

Attorneys (If Known)

**3 0 7 - C V 1 2 9 7 - K**

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Brief description of cause: 28 U.S.C. Section 1332(a)(1) -- Insurance Coverage Declaratory Action

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) PENDING OR CLOSED** (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 7/24/07
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____