# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **ATLANTIC CASUALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **ROBERT RAMIREZ, individually and** | § | **CIVIL ACTION NO. 3:07cv1297-K** |
| **d/b/a LBJ TRUCKING CO., INC.,** | § | |
| **LBJ TRUCKING CO., INC.,** | § | |
| **CLEM'S YE OLDE** | § | |
| **HOMESTEAD FARMS, LTD.,** | § | |
| **BETTYE CRIDER CLEM,** | § | |
| **CLARENCE TRUMAN CLEM,** | § | |
| **KELLY CLEM, and CLARENCE T.** | § | |
| **"CASEY" CLEM, JR.,** | § | |
| | § | |
| **Defendants.** | § | |

---

## ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS

---

Camille Johnson, Attorney-in-Charge
State Bar No. 10686600
Gary N. Schumann
State Bar No. 17851930
SAVRICK, SCHUMANN, JOHNSON,
McGARR, KAMINSKI & SHIRLEY, L.L.P.
6440 N. Central Expressway, Suite 107
Dallas, Texas  75206
Phone: (214) 368-1515
Fax: (214) 292-9647

Of counsel:

William A. Reece
State Bar No. 16672990
SAVRICK, SCHUMANN, JOHNSON,
McGARR, KAMINSKI & SHIRLEY, L.L.P.
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647

**ATTORNEYS FOR PLAINTIFF**
**ATLANTIC CASUALTY INSURANCE COMPANY**

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

I.  Introduction and Factual Background ............................................................................ 1

II.  Argument and Authorities ............................................................................................. 4

    a.  Atlantic's claims against the Clems are ripe. ......................................................... 4

        1.  The U.S. Supreme Court answered the question in Atlantic's favor in 1941. ............... 5

        2. Other federal courts agree with Atlantic's view. ........................................................ 7

        3. Cases the Clems rely on are inapposite. ...................................................................... 10

    b.  The Court should not dismiss the action against the Clems as a matter of discretion. ...... 17

III.  Conclusion ................................................................................................................... 21

Certificate of Service ......................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*American States Ins. Co. v. Bailey*,
 133 F.3d 363 (5th Cir. 1998) ........................................................... 10

*Bituminous Casualty Corp. v. Garcia*,
 223 F.R.D. 308 (N.D. Tex. 2004) .............................................. 16, 17

*Central Surety & Ins. Corp. v. Norris*,
 103 F.2d 116 (5th Cir. 1939) ............................................................ 7

*Century Surety Co. v. Hardscape Construction Specialties, Inc.*,
 No. 4:05-CV-285-Y, 2006 WL 1948063 (N.D. Tex. July 13, 2006)........................ 7, 8, 17

*Chevron USA, Inc. v. Traillour Oil Co.*,
 987 F.2d 1138, 1154 (5th Cir. 1993) ........................................... 11, 17

*Continental Cas. Co. v. West Machine & Tool, Inc.*,
 No. A 603CV447, 2004 WL 1445812, at *1 (E.D. Tex. June 22, 2004)........................... 9

*Cross v. Occidental Fire & Cas. Co.*,
 347 F. Supp. 342, 344 (W.D. Okla. 1972). ......................................... 3

*Dairyland County Mutual Insurance Company of Texas v. Childress*,
 650 S.W.2d 770 (Tex. 1983)................................................................ 8

*Dairyland Ins. Co. v. Makeover*,
 654 F.2d 1120, 1123 (5th Cir. 1981) ............................................. 10

*El Naggar Fine Arts Furniture, Inc. v. Indian Harbor Ins. Co.*,
 ---S.W.3d---, No. 01-05-01069-CV, 2007 WL 624535
 (Tex. App.—[1st Dist.] Houston March 1, 2007, pet. denied) ...................... 3, 6

*Erie R.R. Co. v. Tompkins*,
 304 U.S. 64 (1938)........................................................................ 10

*Farmers Texas County Mutual Insurance Company v. Griffin*,
 955 S.W.2d 81 (Tex. 1997)...................................................... 4, 12, 13, 15

*Federal Kemper Ins. Co. v. Rauscher*,
 807 F.2d 345, 352 (3rd Cir. 1986) ............................................... 10

*Feria v. CU Lloyd's of Tex.*,
    No. 05-00-01245-CV, 2001 WL 1263666 (Tex. App.—Dallas Oct. 23, 2001, no pet.) .. 14

*Griffin v. Farmers Texas County Mut. Ins. Co.*,
    No. 09-95-202CV, 1996 WL 389232, at *1
    (Tex. App.—Beaumont July 11, 1996), rev'd, 955 S.W.2d 81 (Tex. 1997) ................... 13

*Government Employees Ins. Co. v. Dizol*,
    133 F.3d 1220, 1225 (9th Cir. 1998) ............................................................ 19

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*,
    197 S.W.3d 305 (Tex. 2006) ...................................................................... 21

*Jones v. CGU Ins. Co.*,
    78 S.W.3d 626, 629 (Tex. App.—Austin 2002, no pet.) ................................... 5

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
    312 U.S. 270, 273 (1941) ................................................................. 6, 7, 10

*National American Insurance Co. v. Breaux*,
    368 F. Supp. 2d 604 (E.D. Tex. 2005) ...................................................... 8, 9

*Nelms v. State Farm Mut. Auto. Ins. Co.*,
    463 F.2d 1190, 1192 (5th Cir. 1972) ........................................................... 5

*Orix Credit Alliance, Inc. v. Wolfe*,
    212 F.3d 891, 896 (5th Cir. 2000) ............................................................. 11

*Owens v. Allstate Insurance Co.*,
    996 S.W.2d 207 (Tex. App.—Dallas 1998, pet. denied) ................................. 14

*Penny v. Powell*,
    162 Tex. 497, 347 S.W.2d 601, 603 (1961) .................................................... 5

*Rhode Island v. Narragansett Indian Tribe*,
    19 F.3d 685, 692 (1st Cir. 1994) ............................................................... 11

*Sherwin-Williams Co. v. Holmes County*,
    343 F.3d 383, 388 (5th Cir. 2003) ................................................... 18, 19, 20

*St. Paul Ins. Co. v. Trejo*,
    39 F.3d 585 (5th Cir. 1994) ............................................................... 17, 20

*Standard Accident Ins. Co. v. Meadows*,
    125 F.2d 422, 423-24 (5th Cir. 1942) ......................................................... 9

*Standard Fire Insurance Co. v. Sassin*,
    894 F. Supp. 1023 (N.D. Tex. 1995) ........................................................................ 15, 16

*State and County Mut. Fire Ins Co. v. Walker*,
    228 S.W.2d 404, 412 (Tex. App.—Fort Worth 2007, no pet.) ........................................ 12

*State Farm Fire & Cas. Co. v. Fullerton*,
    118 F.3d 374, 385 n.6 (5th Cir. 1997) ............................................................................ 8

*State Farm Fire & Cas. Co. v. Gandy*,
    925 S.W.2d 696 (Tex. 1996) .................................................................................. 12, 20

*State Farm Mut. Ins. Co. v. Ollis*,
    768 S.W.2d 722, 723 (Tex. 1989) .............................................................................. 6, 7

*United States Ins. Co. v. Kapiloff*,
    155 F.3d 488, 494 (4th Cir. 1998) ............................................................................... 19

*United Transp. Union v. Foster*,
    205 F.3d 851, 857 (5th Cir. 2000) ............................................................................... 11

## STATUTES

28 U.S.C. § 2201 .......................................................................................................... 4

42 U.S.C. § 6972 ......................................................................................................... 19

TEX. R. CIV. P. 43 ........................................................................................................ 15

TEX. R. CIV. P. 60 ........................................................................................................ 14

iv

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ATLANTIC CASUALTY INSURANCE COMPANY,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **ROBERT RAMIREZ, individually and** | § | **CIVIL ACTION NO. 3:07cv1297-K** |
| **d/b/a LBJ TRUCKING CO., INC.,** | § | |
| **LBJ TRUCKING CO., INC.,** | § | |
| **CLEM'S YE OLDE** | § | |
| **HOMESTEAD FARMS, LTD.,** | § | |
| **BETTYE CRIDER CLEM,** | § | |
| **CLARENCE TRUMAN CLEM,** | § | |
| **KELLY CLEM, and CLARENCE T.** | § | |
| **"CASEY" CLEM, JR.,** | § | |
| | § | |
| **Defendants.** | § | |

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**

TO THE HONORABLE U.S. DISTRICT JUDGE ED KINKEADE:

Atlantic Casualty responds to the Clem Defendants' Motion to Dismiss and respectfully

shows the Court as follows:

### I.  Introduction and Factual Background

Atlantic Casualty insured LBJ Trucking Co., Inc. under commercial general liability

policies.  Atlantic understands that Ramirez was an officer or director of LBJ.  The Clems hired

Briscoe Land Reclamation to bring in "clean fill material" to their real property on Parker Road

in Carrollton, Texas.  Ramirez and LBJ Trucking are alleged to have transported the fill material.

According to the Clems, the fill material was instead "foundry sand," which they characterize as

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**                    **Page 1**

environmentally unsuitable for their property, and they sued Ramirez, LBJ Trucking, and other alleged wrongdoers under federal pollution laws as well as under numerous state-law theories, including negligence.[1]  The Atlantic Casualty policies do not cover Ramirez and LBJ's allegedly wrongful acts because of pollution exclusions, a classification endorsement and a claims-in-process exclusion, all as pleaded in Atlantic Casualty's complaint.[2] Nor do they cover Ramirez acting individually before the inception of LBJ Trucking Co., Inc.

For the Clems' underlying lawsuit, Ramirez and LBJ Trucking demanded defense and indemnity coverage under the Atlantic Casualty policies.  Atlantic Casualty has been paying for their defense under a reservation of rights, which expressly reserved Atlantic Casualty's right to contest coverage for the above-stated reasons under the policies.  Atlantic Casualty then did what insurers often do under similar circumstances:  It seeks a declaration from this Court that it has no duty to defend or indemnify Ramirez or LBJ Trucking because of the policy provisions excluding coverage.  It also did something no more uncommon than sunshine in Dallas in July: It included as defendants the Clems, who are potential judgment creditors of Ramirez and LBJ Trucking.  The reasons for this inclusion are straight forward, common sense, and, important for present purposes, firmly grounded in law.

In addition to remediation of the alleged pollution, the Clems seek millions of dollars in damages from the underlying defendants, including Ramirez and LBJ Trucking.  Should the Clems recover, Ramirez and LBJ seek to pass that judgment on to Atlantic Casualty for it to pay

---

[1] Before filing their lawsuit (referred to herein as the "underlying" action or lawsuit), the Clems demanded several million dollars from LBJ Trucking and others for the alleged pollution complained of in the underlying lawsuit.

[2] As their name suggests, the pollution exclusions exclude coverage for incidents of pollution.  The classification endorsement addresses coverage for a stated type or classification of work, while the claims-in-process exclusion excludes coverage for events that occurred before the policy period.

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**                    **Page 2**

under the terms and limits of the policies.  More to the point of the Clems' motion to dismiss, if the Clems get a judgment against Ramirez, LBJ, or both, the Clems become judgment creditors of Ramirez/LBJ, which means they could sue Atlantic Casualty directly to recover on the underlying judgment.  So here is the point:  If Atlantic Casualty gets from this Court a declaratory judgment of no coverage against only Ramirez and LBJ Trucking, the Clems could then nonetheless seek recovery from Atlantic Casualty, claiming that they are not bound by the no-coverage declaration because they were not parties to the coverage action.  *Cf. El Naggar Fine Arts Furniture, Inc. v. Indian Harbor Ins. Co*., ---S.W.3d---, No. 01-05-01069-CV, 2007 WL 624535 (Tex. App.—[1st Dist.] Houston March 1, 2007, pet. denied) (holding that federal no-coverage judgment did not bar injured party's action, as insurer could have but did not join injured party as a party in insurer's federal declaratory judgment action against insured).[3]

The Clems are hardly coy about their present intentions on a post-judgment recovery from Atlantic:  They are not "*presently* seeking indemnity from Atlantic," they "seek no indemnity from Atlantic *at this time*," and "Atlantic's 'controversy' with *the Clem Defendants* [emphasis in original] . . . will only exist at such time that the Clem Defendants obtain a favorable judgment in the Underlying Lawsuit.  [T]he Clem Defendants fully expect to succeed in the Underlying Lawsuit . . . ."  (Clem Defs.' Mot. Dismiss at 2, 4 & 12) (emphasis added except as otherwise noted.)  Thus, although a no-coverage declaration against only Ramirez and LBJ might staunch the flow of attorney's fees that Atlantic is presently paying for their defense,

---

[3] "There is good reason for permitting the joinder of persons in Plaintiff's [*i.e.* a potential judgment creditor's] position by an insurer seeking declaratory relief.  If they were not joined they would not be bound by a favorable judgment of noncoverage and the insurers could be exposed to the risks of a multiplicity of litigation and inconsistent obligations." *Cross v. Occidental Fire & Cas. Co*., 347 F. Supp. 342, 344 (W.D. Okla. 1972).

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 3**

it will hardly solve the indemnity problem because Ramirez and LBJ are not seeking to recover indemnity on the policies—ultimately, the Clems are. And if they are not included in this action, Atlantic Casualty is faced with a do-over of this very action against the Clems, with the exact same issues if the Clems realize their expectation "fully . . . to succeed in the Underlying Lawsuit." Thus is the straight forward and common sense rationale, born of judicial economy and a desire for presently settled expectations, including those of the defendants, to include the Clems as parties defendant in this action.

## II.  Argument and Authorities

### a.        Atlantic's claims against the Clems are ripe.

The Clems allege that it is too early for the Court to address the coverage dispute as to them, claiming that the same reasons require dismissal both on jurisdictional grounds and grounds of failure to state a claim.[4]  Because the Clems have it wrong on their underlying rationale, both their 12(b)(1) and 12(b)(6) grounds fail. The federal Declaratory Judgment Act allows that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Although the Clems dispute subject matter jurisdiction, they do not dispute that the Court properly has subject matter jurisdiction based on diversity of citizenship. Instead, they complain of ripeness or justiciability and focus on the "actual controversy"

---

[4] The Clems recognize that since the Texas Supreme Court's decision in *Farmers Texas County Mutual Insurance Company v. Griffin*, 955 S.W.2d 81 (Tex. 1997), whether an insurer has a duty to indemnify is justiciable before trial or judgment in the underlying lawsuit. They therefore do not allege that the issue of indemnity is not ripe but rather that it is not ripe *as to them* since they do not yet have a judgment in the underlying lawsuit. As explained below, they are wrong.

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS                 Page 4**

requirement of the Declaratory Judgment Act.  While ripeness does implicate the case or controversy requirement of the Constitution's Article III and thus subject matter jurisdiction, the Clems are wrong that Atlantic Casualty's request for declaratory relief against them is not ripe.

Numerous times, the Clems make the unremarkable point that under Texas law, an injured party has no direct cause of action against the injuring party's insurance company.  This is a true statement of generally black letter law, which is irrelevant to the ripeness inquiry under the federal Declaratory Judgment Act.  True, Texas is not a direct action state.  *Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex. App.—Austin 2002, no pet.) (citing *Penny v. Powell*, 162 Tex. 497, 347 S.W.2d 601, 603 (1961)); *Nelms v. State Farm Mut. Auto. Ins. Co.*, 463 F.2d 1190, 1192 (5th Cir. 1972).  Under Texas law, a tort plaintiff generally has no standing to join a tortfeasor's liability insurer directly in the tort action.  *Jones*, 78 S.W.3d at 629.   The question, though, is not whether the Clems could have sued Atlantic Casualty directly in their action against Ramirez, LBJ, and others, but whether Atlantic Casualty's request for declaratory relief against the Clems as potential judgment creditors of Ramirez and LBJ Trucking constitutes an "actual controversy" under the federal Declaratory Judgment Act.

### 1. The U.S. Supreme Court answered the question in Atlantic's favor in 1941.

And the clear answer is that it *does* constitute an actual controversy.  In 1941, the United States Supreme Court considered whether Maryland Casualty Company's declaratory judgment coverage action against Joe Orteca, who was injured in a wreck with a Pacific Coal automobile, constituted an actual controversy.  Like Atlantic Casualty's action, there was an underlying case between Orteca and Pacific Coal, and Maryland Casualty sought declaratory relief in federal

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 5**

court on the issue of coverage.  Like the Clems, Orteca was a potential judgment creditor.  The Court concluded:  "That the complaint in the instant case presents such a[n actual] controversy is plain."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  The Supreme Court's rationale was the same as that supporting Atlantic Casualty's inclusion of the Clems in this action.  The Court noted a clear actual controversy between the insurance company and its insured, and said, "[i]f we held contrariwise as to Orteca because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal court . . . while the state court, in a supplemental proceeding by Orteca against petitioner [the insurance company], might conclude otherwise."  *Id.* at 274.  Atlantic Casualty is in the same position.  Were the Clems not a party to this action, this Court could hold that there is no coverage, and then the Clems could later claim that there was coverage and another court could so hold because they would not be bound by this Court's judgment.  *See El Naggar*, cited *supra* at 3 (holding that injured party not included in federal declaratory judgment action was not bound by no-coverage judgment against insured).

The Court noted that Orteca, like the Clems, was presently seeking a judgment against the insurance company's insured.  *Maryland Cas. Co.*, 312 U.S. at 273.  Orteca, like the Clems, was only a potential judgment creditor, having no present rights in the insurance policy.  Ohio law gave Orteca a right to proceed directly against the insurance company if he obtained a judgment against the insured.  *Id.*  Texas law is the same in this regard.  In Texas, the injured party may not proceed directly against the insurer until it has been established by judgment or settlement that the insured has a legal obligation to pay damages to the injured party.  *State Farm Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989).  With a substitution of names,

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**                    **Page 6**

*Maryland Casualty* would be Atlantic Casualty versus the Clems.  The United States Supreme Court found an actual controversy between a similarly situated insurance company and a similarly situated potential judgment creditor.  There is no reason the outcome in this case should be different, and the Clems' motion should be denied.[5]

### 2.    Other federal courts agree with Atlantic's view.

Other federal district courts in Texas that have considered the same issue before this Court have agreed with Atlantic Casualty's view that there is an actual controversy between parties situated as Atlantic and the Clems.  In *Century Surety Co. v. Hardscape Construction Specialties, Inc.*, No. 4:05-CV-285-Y, 2006 WL 1948063 (N.D. Tex. July 13, 2006), U.S. District Judge Terry Means considered the same issue, in which Hardscape's subcontractor defectively built a couple of swimming pools for Hillwood Residential Services' real estate development.  Century Surety sued insureds Hardscape, the subcontractor (Elite Concepts), and the potential judgment creditor, Hillwood, seeking a declaration of no coverage.  Hillwood claimed not to be a proper party, but Judge Means disagreed.  He noted that in Texas, a party injured by an insured is viewed as a third-party beneficiary of a liability insurance policy (citing *Ollis*, 768 S.W.2d at 723), and, citing a Fifth Circuit opinion by Judge Higginbotham, stated,

> A declaratory-judgment action brought by an insurer is binding upon a third-party beneficiary to a liability insurance policy if properly joined as a party to the declaratory–judgment action.

---

[5] The *Maryland Casualty* Court granted certiorari to resolve a conflict among the circuits.  *Maryland Cas. Co.*, 312 U.S. at 512 n.1.  The Court then cited a list of those cases, one of which is the Fifth Circuit's *Central Surety & Ins. Corp. v. Norris*, 103 F.2d 116 (5th Cir. 1939).  There, the insurer sued its insured and the injured parties for a no-coverage declaration.  The district court dismissed two of the injured parties.  The Fifth Circuit reversed, saying "[t]he interest of Ruddell and Rosser in the question the Insurance Corporation is trying to get adjudicated by a declaratory judgment is real and substantial though not immediate.  They ought to be retained as parties to be heard on it and to be bound by the result."  *Id.* at 117.  *Maryland Casualty* thus resolved the conflict on the side of those circuits including the Fifth Circuit, which supports the inclusion of the Clems as defendants in this action.

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT
THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 7**

*Century Surety*, 2006 WL 1948063, at *5 (citing *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 385 n.6 (5th Cir. 1997)).  Judge Means thus concluded that Hillwood was properly joined as a party and denied its motion for judgment.

U.S. District Judge Marcia Crone in the Eastern District held similarly.  In *National American Insurance Co. v. Breaux*, 368 F. Supp. 2d 604 (E.D. Tex. 2005), Hart Construction, which was insured by National American, had leased a "Bobcat Skidsteer" for use at an Office Depot job in Beaumont, Texas.  Hart employee Breaux ended up taking the equipment home with him to work on his own property.  While piling up brush with it, Breaux backed the Bobcat over a minor identified as "K.S.Y.," causing grave injuries that resulted in the child's death.  The child's parents, the Youngs, sued Breaux and others for the death.  In federal court, National American sought a declaration of no-coverage for the Youngs's claims against Breaux in the underlying action.  National Union sued Breaux and the Youngs.  Like the Clems here, the Youngs alleged that without a judgment in the underlying action, no justiciable controversy existed between them, as potential judgment creditors, and National American.

In *Dairyland County Mutual Insurance Company of Texas v. Childress*, 650 S.W.2d 770 (Tex. 1983), the insurance company had previously obtained a no-coverage declaration against its insured but had not included the injured party as a defendant.  The Texas Supreme Court determined that the insured and the injured party were not in privity with regard to a no-coverage declaratory judgment action brought solely against the insured.  As a third-party beneficiary of the liability insurance contract, the injured party had rights which could not be precluded by the prior action solely between the insured and the insurer.  *Id.*  at 774-76.

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT
THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 8**

In *Breaux*, the court recognized that a party injured by an insured is viewed as a third-party beneficiary of a liability policy even though he may not proceed directly against the insurer until receipt of a judgment against the insured or an agreement that the insured has an obligation to pay. *Breaux*, 368 F. Supp. 2d at 620. National American, though, unlike Dairyland County Mutual, had included the injured party in its declaratory judgment action. The *Breaux* court continued,

> [U]nder Texas law, a declaratory judgment action brought by an insurer is binding upon a third-party beneficiary to a liability insurance policy if properly joined as a party to such action.

*Id*. On this issue, the court concluded as follows:

> In this instance, because the Youngs derive their right, if any, to collect insurance proceeds directly from the rights of Breaux, they are deemed to be in privity by virtue of their shared legal interest. As such, under the Declaratory Judgment Act, the court may declare NAICO's rights and legal relations with respect to both Breaux and the Youngs.

*Id*. at 621. In the case before this Court, the facts are not materially different, and neither should be the result. *See Continental Cas. Co. v. West Machine & Tool, Inc.*, No. A 603CV447, 2004 WL 1445812, at *1 (E.D. Tex. June 22, 2004) (Guthrie, Mag. J.) (allowing underlying plaintiff to intervene in coverage action to defend against no-coverage position of insurance company vis-à-vis insured and noting underlying plaintiff's "compelling argument that he has an [sic] strong interest in the outcome of this lawsuit and in any decision as to whether Plaintiff must provide a defense and indemnification for Defendants in the underlying lawsuit . . . ."); *Standard Accident Ins. Co. v. Meadows*, 125 F.2d 422, 423-24 (5th Cir. 1942) (citations omitted):

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 9**

It has been repeatedly held in this circuit and elsewhere that whether an insurer is bound [by] an automobile insurance policy by a judgment against its insured, presents a controversy for declaratory judgment as between it, its insured and the plaintiff in a damage suit against its insured and it was plain error to dismiss the state court plaintiffs from the suit.

*Dairyland Ins. Co. v. Makeover*, 654 F.2d 1120, 1123 (5th Cir. 1981) (citations omitted):

It is decisive to our holding that Dairyland [the insurer] named the appellants [the potential judgment creditors] as defendants in its declaratory judgment action. In a declaratory judgment action brought by an insurer to determine coverage under a liability policy issued to the insured, third parties claiming liability in state tort suits against the insured have been held to be proper parties to the declaratory suit, even though their claims against the insurer was [sic] contingent upon recovery of a judgment against the insured.

*Cf. American States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir. 1998) (addressing, not dismissing for want of an actual controversy, appeal by injured parties of no-coverage judgment in insurer's declaratory judgment action against insureds and injured parties).

### 3.      Cases the Clems rely on are inapposite.

The Clems rely on a number of decisions that, under scrutiny, do not support their position, including Texas state cases.  In a diversity case, state law supplies the rule of decision for substantive issues.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  However, justiciability or ripeness under the federal Declaratory Judgment Act is a procedural matter decided under federal law.  *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3rd Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases.  While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law.")  The Supreme Court in *Maryland Casualty* understood the rule no differently, although it looked to state law to define the substantive rights between the parties.  Throughout

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT
THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS            Page 10**

their motion, the Clems refer both to federal cases and to Texas state cases to support their view of "actual controversy" under the federal Declaratory Judgment Act. As shown in this response, governing federal law holds that Atlantic Casualty's claims against the Clems are ripe. To the extent state law is relevant to define any substantive rights, it, too, supports ripeness under the federal act.

The Clems assert that the state of the law in Texas since 1997 has been in "flux" regarding the substantive rights of allegedly injured parties against the injuring party's insurer. To the contrary, there has been no flux in Texas's not being a direct action state in which the injured party may not assert a direct action to recover on the policy against the injuring party's insurer until judgment. But the federal Declaratory Judgment Act was not intended to provide such a direct cause of action. Instead, it is a procedural vehicle for determination at an earlier— albeit still ripe—stage of a controversy than such a direct claim:

> Many courts have recognized that applying the ripeness doctrine in the declaratory judgment context presents a unique challenge. *See, e.g., Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir. 1994) ("declaratory actions contemplate an 'ex ante determination of rights' that 'exists in some tension with traditional notions of ripeness'") (citations omitted).

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); *see United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) ("Declaratory judgments are typically sought before a completed 'injury-in-fact' has occurred . . . .") (citation omitted). The purpose of the Declaratory Judgment Act is to settle "actual controversies" *before* they ripen into violations of law or breach of some contractual duty. *Chevron USA, Inc. v. Traillour Oil Co*., 987 F.2d 1138, 1154 (5th Cir. 1993). As noted *supra* at 5, the Clems confuse the difference between the injured party suing the injuring party's insurer directly and the ripeness of the insurer seeking a no

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 11**

coverage declaration against the injured party.  The Clems' complaint that they could not yet sue Atlantic Casualty directly (*i.e.* for recovery of insurance proceeds) is of no moment.

Nor has there been flux in whether the issue of indemnity is ripe or justiciable before judgment in an underlying action.  In *Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997), the Texas Supreme Court squarely held that the issue of indemnity is justiciable before judgment against the insured in the underlying action.  The Clems say that the rights of tort plaintiffs against the tortfeasor's insurer have been in flux and "therefore" (Clems' Mot. Dismiss at 6) the Fort Worth Court of Appeals declined to determine whether a potential judgment creditor was a proper party to a declaratory judgment action between and insurer and its insured.  To the contrary, that court did not decline such a determination because of any alleged flux in the law, but instead, "[f]or purposes of this appeal, a determination of whether Walker was properly joined is irrelevant" because the outcome was the same either way. *State and County Mut. Fire Ins Co. v. Walker*, 228 S.W.2d 404, 412 (Tex. App.—Fort Worth 2007, no pet.).

Two other points are important about *Griffin*.  First, the Texas Supreme Court in that decision pointed out the following from its opinion in *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996):

> *Gandy* requires an insurer to either accept coverage or make a good faith effort to resolve coverage <u>before</u> adjudication of the plaintiff's claim, <u>and also suggests that the plaintiff may wish to participate in that litigation</u>.  *Gandy*, 925 S.W.2d at 714.

*Griffin*, 955 S.W.2d at 84 (emphasis added).  If the insurance company's resolution of coverage before adjudication of the underlying plaintiff's claim was not ripe for adjudication as against the

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 12**

plaintiff, the Court would hardly have invited such allegedly injured parties (like the Clems) "to participate in that litigation."

Second, the respondent in the *Griffin* case, Robert Griffin, <u>was the injured party</u>, who sought in an underlying lawsuit to recover from Farmers' insured, James Royal, III.   Like Atlantic Casualty here, Farmers had sued both its insured and the injured party seeking a declaration of no coverage.  Although this fact is obvious from the Supreme Court's opinion, the court of appeals' decision, which was reversed, states the fact explicitly:

> Farmers Texas County Mutual Insurance Company sued Robert Griffin and James Edward Royal, III seeking a declaratory judgment it had no duty to defend Royal in a separate suit, filed by Griffin, or to indemnify Royal under its policy of insurance for any damages awarded Griffin.

*Griffin v. Farmers Texas County Mut. Ins. Co.*, No. 09-95-202CV, 1996 WL 389232, at *1 (Tex. App.—Beaumont July 11, 1996), rev'd, 955 S.W.2d 81 (Tex. 1997).  The Texas Supreme Court did not dismiss Farmers' request for declaratory relief against Griffin for lack of a controversy, on justiciability or ripeness or other grounds.  It would hardly do to suggest, as the Clems must if they maintain their view here, that the Supreme Court overlooked that the insurer's claim against Griffin was not ripe and that the Court thus lacked jurisdiction.  The more likely result is that the Court meant exactly what it held—that indemnity is justiciable before determination of the underlying claim.  And it is ripe as to the insurer's declaratory judgment claim against the injured party.[6]  *Griffin* held that indemnity is justiciable when the same reasons that negate the duty to defend also negate the duty to indemnify.  That is the case here.

---

[6] The Court could not have been clearer as to what it was considering:  "Before determining whether Farmers has a duty <u>to indemnify *Griffin*</u> [*i.e.* the injured party], we must first address whether this duty is properly justiciable by declaratory judgment before the rendition of a judgment in the underlying suit."   *Griffin*, 955 S.W.2d at 83 (emphasis added).

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**                     **Page 13**

The Clems rely on four other decisions.  First, they point to *Feria v. CU Lloyd's of Tex.*,
No. 05-00-01245-CV, 2001 WL 1263666 (Tex. App.—Dallas Oct. 23, 2001, no pet.) (not
designated for publication).  *Feria* is inapposite for three reasons.  First, the issue there was
whether the underlying plaintiff's attempted intervention in the coverage action was proper under
Tex. R. Civ. P. 60.  This case has nothing to do with intervention or the Texas Rules of Civil
Procedure.  Second, following the denial of the plaintiff's plea in intervention, "CU Lloyd's filed
a motion to nonsuit its declaratory judgment action, and the trial court dismissed the lawsuit
without prejudice."  *Id.* at *1.  If the insurance company was no longer contesting coverage, then,
unlike here, there was no controversy regarding coverage into which to intervene.  Third, the
court notes that the issue in the coverage action (when it was pending) was whether CU Lloyd's
had a duty to defend its insured in the lawsuit brought by the intervening plaintiff.  The court
noted that the underlying plaintiff could not have sued the insurer to force it to defend its insured.
*Id.*, at *2.  In any event, the underlying plaintiff would have had no justiciable interest in the
defense of the insured; her interest in whether there was indemnity would have been justiciable,
but the court makes no mention of the duty to indemnify.  The *Feria* opinion does not support
the Clems.

They next rely on *Owens v. Allstate Insurance Co.*, 996 S.W.2d 207 (Tex. App.—Dallas
1998, pet. denied).  *Owens* was neither an action by an underlying plaintiff nor one by an insurer
for a declaration of no coverage.  Instead, it was an interpleader action by Allstate against
persons injured in a car wreck, none of whom, at least judging from the opinion, had yet sued
Allstate's insured, Jefferson, for personal injuries.  One of the injured, Owens, moved to dismiss
the interpleader action for lack of jurisdiction.  The court of appeals agreed, saying that Jefferson

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**        **Page 14**

was not legally obligated to pay anyone, that Allstate therefore owed Owens nothing and that the Texas interpleader rule (TEX. R. CIV. P. 43) allowed the joining of claimants against the interpleaded funds.  The court reasoned that Owens was not a claimant and the case should have been dismissed.  Although repeating that an injured party cannot sue the tortfeasor's insurer directly, the court did not mention *Griffin*, declaratory relief, or anything else that profits the Clems.

The Clems also misplace their reliance on two Northern District opinions.  The first is Judge Sanders's decision in *Standard Fire Insurance Co. v. Sassin*, 894 F. Supp. 1023 (N.D. Tex. 1995).  In that consolidated case, only one insurer, American Economy Insurance Company (AEIC), sought a declaration against both the insureds (the Sassins) and the injured parties (the Tripletts).  AEIC had dismissed its claims against the Sassins.  *Id*. at 1025.  Relying on Texas law, the court concluded that the Tripletts had no interest in the AEIC insurance policy unless and until judgment was entered in the underlying state court action against the Sassins.  *Id*. at 1027.  Judge Sanders's opinion does not advance the Clems' cause for two reasons.  First, the case was decided in 1995 and necessarily relied on pre-*Griffin* law.  Atlantic Casualty submits that if Judge Sanders had had the *Griffin* decision to consider, the outcome would have been different.  Second, although the case does not discuss this fact in connection with its holding, the insurer had dismissed its declaratory judgment action against its insureds, the Sassins.  If the insurer no longer disputed coverage of its insureds, then it is difficult to see how an actual controversy as to coverage existed between the insurer and the injured Tripletts.  In this case, though, Atlantic Casualty disputes coverage of LBJ Trucking and Ramirez and of any judgment

that might be awarded to the Clems, which post-*Griffin* decisions indicate constitutes an actual controversy for purposes of the federal Declaratory Judgment Act.

The Clems also give a nod toward Judge Godbey's opinion in *Bituminous Casualty Corp. v. Garcia*, 223 F.R.D. 308 (N.D. Tex. 2004) as "affirming the holding of *Sassin* to be that third-party claimants under Texas law have no cognizable interest in an insurance contract on which to bring suit." (Clems' Mot. Dismiss at 8.) *Garcia* was a case about intervention, and Judge Godbey in fact distinguished *Sassin*, noting that the insurer there had voluntarily dismissed its action against its insureds and continued only with its claim against the tort plaintiffs. *Garcia*, 223 F.R.D. at 311. In *Garcia*, the insurer had sued only the insured. The insured did not answer, and a default judgment was entered that Bituminous Casualty had no duty to defend or indemnify the insured in the underlying tort suit. Judge Godbey then allowed the injured party— the Clems of that underlying case—to intervene in the coverage action, noting that "Intervenors have an interest in the subject matter of this action sufficient to support their intervention." *Id*. at 311. And the court noted exactly what the intervenors intended by their intervention: "It is abundantly clear from Intervenors' motion that they intend to defend Bituminous' claim for declaratory judgment that it has no duty to defend or indemnify." *Id*. at 311 n.4. To the extent that *Garcia* "affirms" the holding of *Sassin*, as the Clems suggest, *Sassin*, as explained above, provides the Clems no support. In any event, the *Garcia* opinion supports the propriety of the underlying plaintiff being a party to the coverage action filed by the allegedly injuring party's

insurance company, and the Clems recognize as much.[7]  Atlantic's request for declaratory relief against the Clems is ripe, and their 12(b)(1) and 12(b)(6) motions should be denied.

> **b.** **The Court should not dismiss the action against the Clems as a matter of discretion.**

The Clems' parting salvo requests the Court to dismiss the action against them as a matter of the Court's discretion.  But practically, their request, which is mainly based on the fact that the contingency of a judgment in their favor in the underlying action remains, is an argument for discretionary dismissal of *all* declaratory judgment actions because some sort of contingency always inheres in the underlying facts.  That is the nature of declaratory relief.  *See Chevron USA, Inc.*, 987 F.2d at 1154 (declaratory relief settles controversies *before* they ripen into violations of law or breach of duty).

To aid a district court in determining whether to hear a declaratory judgment action, the Fifth Circuit devised the following:

> In *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), this court identified seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action.   These factors are:
>
> (1)  whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2)  whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3)  whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4)  whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

---

[7] "Two federal cases in the Northern District of Texas, *Bituminous Cas. Corp.* . . . and *Century Surety Co.* . . . seem to suggest that a potential judgment creditor may be a proper party to [a] declaratory judgment action between an insurer and its insured."  (Clems' Mot. Dismiss at 8 n.1.)

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT**
**THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 17**

(5)   whether the federal court is a convenient forum for the parties and witnesses;

(6)   whether retaining the lawsuit would serve the purposes of judicial economy;  and

(7)   whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003).

The first and seventh factors address whether parallel state court proceedings, which could address the same issues among the same parties, are pending.  That there are no such proceedings related to this action does not make those factors irrelevant.  Instead, it strongly counsels against dismissal.  The Tenth and Eleventh Circuits have stated that dismissing a declaratory judgment action when there is no pending parallel state proceeding is an abuse of discretion.  *Id*. at 393.  The Fifth Circuit declined to adopt such a per se rule, but instead believes that the absence of a pending parallel state proceeding "is a factor that weighs strongly against dismissal."  *Id*. at 394.

Based on the second factor, the Clems accuse Atlantic Casualty of filing suit in anticipation of a judgment in the underlying action and of "cut[ting] off a future suit by the Clem Defendants."  (Clems' Mot. Dismiss at 14.)  The Clems' second point pops like a soap bubble.  If coverage is determined in this action, what future suit might there be to be "cut off"?  The Clems are already suing the alleged wrongdoers.  If this Court determines with the Clems as parties that there is no coverage, they will hardly be able to file a future action against Atlantic to recover insurance proceeds.  By the same token, if the Court decides otherwise, Atlantic would not be

able to contest coverage in a future action, as long as the Clems are parties here.  Either way, there is no future litigation to cut off.

Their first point again finds its answer in the nature of declaratory relief, which is typically sought in anticipation of a contingency.  Atlantic could not put it better than the Fifth Circuit:

> A proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires.  The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court.

*Id*. at 397 (citation omitted).  The Fifth Circuit continued:

> Despite the fact that plaintiff may have predicted that there would be a related suit filed . . . (making the federal suit "anticipatory"), "without more, we cannot say that [the declaratory plaintiff's] action is an instance of forum-shopping instead of a reasonable assertion of its rights under the declaratory judgment statute and diversity jurisdiction."

*Id*. at 398 (quoting *United States Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)).  The *Sherwin-Williams* court also approvingly quoted the following:

> The Ninth Circuit similarly concluded that even if the insurer anticipated a state court declaratory judgment coverage action, "we know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage."

*Id*. (quoting *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

Based on factor three, the Clems also accuse Atlantic of "forum shopping."  The underlying action is based on, among other things, the federal Resource Conservation Recovery Act (RCRA), 42 U.S.C. § 6972, and venue is also predicated on RCRA because the alleged violations occurred in the Eastern District of Texas, in Carrollton, Texas.  This action is a

contract action with a different basis for venue.  As the Clems point out, the coverage action could not be consolidated into the underlying action anyway, because it is improper to inject the issue of insurance into the liability action.  Were this action pending elsewhere, the same law would apply.  Atlantic thus did not pre-emptively force a choice of law by filing in the Northern District of Texas.  *Cf. Sherwin-Williams*, 343 F.3d at 399 ("There is no evidence that Sherwin-Williams brought its declaratory judgment action in search of more favorable law.").  The Clems' complaints of forum shopping fall flat.  In filing this action, Atlantic merely resorted to its legitimate rights under applicable law:  "Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'"  *Id*. at 391.

Based on factor four, the Clems complain that Atlantic filed this action at a time in which they are "powerless to take any affirmative action."  (Clems' Mot. Dismiss at 15.)  They say that "during the time between the filing of a tort plaintiff's lawsuit and a favorable judgment or settlement, the tort plaintiff has no ability to seek relief against the insurer under the Texas Rules."  (*Id*. at 15.)  Above, Atlantic has already pointed out the Texas Supreme Court's invitation to injured parties to participate in a coverage determination.  S*ee supra* at 12-13 (citing *Gandy*, 925 S.W.2d at 714).  Atlantic has also discussed two cases in which injured parties were allowed to intervene in coverage actions, one by Judge Godbey and the other by Magistrate Judge Guthrie in the Eastern District.  As they should be, the Clems are a party to this action, and nothing prevents them from seeking whatever relief here that they deem appropriate.  Their alleged powerlessness to support their claim of inequity under the above-quoted *Trejo* factors is itself powerless.

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**                    **Page 20**

The Clems also claim that their being dismissed from this action somehow will increase the quantum of judicial economy.  If they are dismissed, the action against the insured remains, so the net increase to judicial economy would be zero.  Also, they seem to miss the irony of arguing that Atlantic tries to cut off a future action by them and claiming that their dismissal supports judicial economy.  To the contrary, they seem to contemplate two actions—this one without them and a future one in which, apparently, the same coverage issues are contested again against them.  Their view, of course, does not support economy but instead multiplies litigation, which is one of the things declaratory actions are supposed to prevent.  This Court can adjudicate the coverage issues regarding Atlantic's policies for all interested parties, including the Clems. That supports judicial economy.

Factor five asks whether the federal court is a convenient forum for the parties and witnesses.  Coverage actions are decided under the eight corners rule, where the court compares the allegations of the complaint to the language of the policy.  *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006).  They typically are decided on summary judgment, thus entailing no inconvenience to parties or witnesses.  All of the defendants reside just up the road in Carrollton, anyway.  Factor five supports retaining Atlantic's claims against the Clems.

### III.  Conclusion

Under federal law, the facts of this case present an actual controversy under the Declaratory Judgment Act between Atlantic and the Clems.  To the extent Texas law is necessary to define any substantive rights between those parties, it also supports that an actual controversy exists.  As a matter of discretion, this Court should not dismiss Atlantic's claims against the

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**          **Page 21**

Clems.  Such a dismissal would encourage piecemeal litigation, prevent certainty to the coverage dispute and strike against judicial economy and efficiency.  Atlantic respectfully requests that the Court deny the Clems' motion in its entirety.

WHEREFORE, Atlantic prays that the Court deny the Clems' motion to dismiss and further prays that the Court grant it general relief.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

By: _____
Camille Johnson, Attorney-in-Charge
State Bar No. 10686600
Gary N. Schumann
State Bar No. 17851930
6440 N. Central Expressway, Suite 107
Dallas, Texas  75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: camille@ssjmlaw.com

**ATTORNEYS FOR PLAINTIFF
ATLANTIC CASUALTY INSURANCE COMPANY**

Of counsel:

William A. Reece
State Bar No. 16672990
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: breece@ssjmlaw.com

**ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT
THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS**                **Page 22**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of October, 2007, I electronically filed the foregoing with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send notification of such filing to the following:

Abigail B. Moore / Vincent J Hess
LOCKE LIDDELL & SAPP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Email: abmoore@lockeliddell.com
Email: vhess@lockelord.com


Cody L. Towns
LYNN TILLOTSON & PINKER LLP
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
Email: ctowns@lynnllp.com


_____
William A. Reece

**<u>ATLANTIC CASUALTY'S RESPONSE, AND BRIEF IN SUPPORT</u>**
**<u>THEREOF, TO THE CLEM DEFENDANTS' MOTION TO DISMISS</u>**          **Page 23**