IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | |
| V. | § § | |
| ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, and CLARENCE T. "CASEY" CLEM, JR., | § § § § § § § § § § | CIVIL ACTION NO. 3:07-CV-1297-K |
| Defendants. | § § | |

## PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

I. Statement of the Case............................................................................................... 1

II. Summary of the Argument....................................................................................... 4

III. Argument and Authorities......................................................................................... 5

    A. No Duty to Defend or Indemnify Under the Total Pollution Exclusion............... 6

        1. The Atlantic Casualty Policies.................................................................. 7

        2 The Underlying Lawsuit Complaint ......................................................... 8

    B. No Duty to Defend or Indemnify Under the "Claims in Process" Exclusion........ 10

        1. The Atlantic Casualty Policies................................................................ 11

        2 The Underlying Lawsuit Complaint ....................................................... 12

    C. No Duty to Defend or Indemnify Under the Fortuitous Loss Doctrine............... 13

    D. No Duty to Defend Under the Duty to Defend Limitation ................................ 14

IV. Conclusion ............................................................................................................. 14

## TABLE OF AUTHORITIES

*Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659 (5th Cir. 2000) .......... 5

*Allen v. St. Paul Fire & Marine Ins. Co.*, 960 S.W.2d 909 (Tex. App.–Texarkana 1998, no pet.) .......... 9

*Alcolac Inc. v. California Union Ins. Co.*, 716 F. Supp. 1546 (D. Md. 1989) .......... 9

*Amoco Prod. Co. v. Hydroblast Corp.*, 90 F.Supp.2d 727 (N.D. Tex. 1999) .......... 10

*Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663 (Tex. 1987) .......... 5

*Bituminous Cas. Corp. v. Kenworthy Oil Co.*, 912 F. Supp. 238 (W.D. Tex. 1996) .......... 10

*E&L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272 (Tex. App.–Beaumont 1998, no pet.) .......... 9

*Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) .......... 10

*Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239 (5th Cir. 2000) .......... 13

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006) .......... 5

*Franklin v. Fugro-McClelland, Inc.*, 16 F. Supp.2d 732 (S. D. Tex. 1997) .......... 13

*King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex. 2002) .......... 5

*National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995) .......... 8

*National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139 (Tex. 1997) .......... 6

*Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex. 1984) .......... 13

*Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) .......... 9

*Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72 (Tex. App—Dallas 2001, pet. denied) .......... 13

*Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495 (Tex. App.—Houston [14th Dist.] 1995, no writ) .......... 13

*United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445 (5th Cir. 2007) .......... 10

*Williams Consolidated I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895
  (Tex. App.—Houston [14th Dist.] 2004, no pet.) ..........................................................................11

*Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565 (Tex. App.–San Antonio
  2002, pet. denied) ...........................................................................................................................9

# PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") files this Brief in support of its Motion for Summary Judgment in the above action, and respectfully shows the Court as follows:

## I.   Statement of the Case

This declaratory judgment action stems from an environmental contamination lawsuit filed on June 12, 2007 by Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem and Clarence T. "Casey" Clem, Jr. (collectively the "Underlying Lawsuit Plaintiffs") against Bill Briscoe, individually and d/b/a Briscoe Land Reclamation Project, and d/b/a Bill Briscoe Enterprises, Inc., Hensley Industries, Inc., Robert Ramirez, individually and d/b/a LBJ Trucking Co., Inc., and LBJ Trucking Co., Inc. (collectively the "Underlying Lawsuit Defendants"), styled and numbered Cause No. 4:07-CV-285-RAS-DDB, *Clem's Ye Olde Homestead Farms, Ltd., et al v. Briscoe, et al*, in the United States District Court for the Eastern District of Texas, Sherman Division (the "Underlying Lawsuit"). (App. 1-22)

According to the Complaint in the Underlying Lawsuit,[1] a parcel of land located at 1639 Parker Road in Carrollton, Texas ("the Clem property") has become a dumping site of solid municipal waste and foundry sand generated by Hensley Industries, Inc. ("Hensley") and transported by Robert Ramirez, individually and d/b/a LBJ Trucking, Co., Inc. ("Ramirez"), and LBJ Trucking Co., Inc.. (App. 1, 4, 19) The Underlying Lawsuit Plaintiffs, who are owners of

---

[1] Throughout its motion and brief, Atlantic Casualty treats the Underlying Lawsuit's purported factual and legal allegations as true solely for the determination of the duties to defend and/or indemnify in this insurance coverage action. Atlantic Casualty does not assume, however, that those factual and legal allegations are credible or legally sufficient. Atlantic Casualty expressly denies and disclaims that any discussion of the Underlying Plaintiffs' allegations within its motion and brief constitutes any admission or waiver in the underlying litigation or any other.

PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT – Page 1

the Clem property, allege that Bill Briscoe, individually and d/b/a Briscoe Land Reclamation Project and d/b/a Bill Briscoe Enterprises, Inc. ("Briscoe") engaged in the storage and disposal of solid waste, including foundry sand, that has contaminated the Clem property. (App. 4)

The Underlying Lawsuit Plaintiffs allege that in 2001, Briscoe began performing reclamation work on a 46-48 acre part of the Clem property, and contracted to bring in "clean fill material" as part of a project to raise certain lands out of the flood plain. (App. 4, 19) The first load of foundry sand, as opposed to clean fill material, was delivered to the Clem property by Ramirez on January 18, 2002. (App. 4) Ramirez was the transporter of the foundry sand from January of 2002 until at least October 17, 2002, when LBJ Trucking was incorporated. (App. 4-5) In general, Hensley generated the foundry sand and provided it to Ramirez and LBJ Trucking, who transported the material and other solid waste to the Clem property, and handled it and arranged for its disposal at the Clem property. (App. 5, 9) The Underlying Lawsuit Defendants, including LBJ Trucking, had continuous knowledge of the presence of solid waste and foundry sand that was being illegally disposed of at the Clem property. (App. 5)

The Underlying Lawsuit Plaintiffs allege that they were not aware that Briscoe was accepting, storing and disposing of foundry sand and other solid waste transported by Ramirez and LBJ Trucking to the Clem property. (App. 5) The Underlying Lawsuit Plaintiffs did not become aware until approximately April 2006 that foundry sand and other solid waste had been transported to and disposed of on the property, and such material continued to be transported to and disposed of at the property until at least May 2, 2006. (App. 5) The Underlying Lawsuit Defendants, including LBJ Trucking, concealed and failed to disclose to the Underlying Lawsuit Plaintiffs that the material being brought onto the Clem property was not clean fill, but was contaminated. (App. 10) Substantial quantities of solid waste and foundry sand remain at the

property, as none of it has been removed. (App. 5-6) The Underlying Lawsuit Defendants have dumped more than 10,000 cubic yards of solid waste and foundry sand at the Clem property. (App. 7)

LBJ Trucking was insured under commercial general liability ("CGL") policies numbered L057003403 and L057004262 issued by Atlantic Casualty effective April 27, 2004 to April 27, 2005 and April 28, 2005 to June 16, 2005, respectively. (App. 23-105) Atlantic Casualty understands that Robert Ramirez is an officer or director of LBJ Trucking. The Atlantic Casualty policies do not cover Ramirez acting individually or d/b/a LBJ Trucking before the inception of LBJ Trucking Co., Inc.[2] (App. 23, 46 and 62, 87)

Ramirez and LBJ Trucking have demanded defense and indemnity coverage for the allegations made against them in the Underlying Lawsuit under the Atlantic Casualty policies. Atlantic Casualty has been providing a defense for LBJ Trucking (including Ramirez as an officer and director of LBJ Trucking) in the Underlying Lawsuit under an express reservation of Atlantic Casualty's rights under the policy to contest coverage. Atlantic Casualty therefore refers to LBJ Trucking and Ramirez as an officer and director of LBJ Trucking collectively as "LBJ Trucking." The Underlying Lawsuit Plaintiffs have alleged causes of action against LBJ Trucking for violations of the federal Resource Conservation Recovery Act, violations of the Texas Health and Safety Code, and under Texas common law for nuisance, negligence, and trespass. (App. 6-10) The Underlying Lawsuit Plaintiffs seek damages, injunctive relief, civil penalties, punitive damages, costs, and attorney's fees. (App. 14-16)

---

[2] Under the policies' definition of "Who is an Insured," Section II.1.d., LBJ Trucking is an insured. In addition, when the insured is a corporation such as LBJ Trucking, "Your 'executive officers' and directors are insureds, but only with respect to the conduct of your business." (App. 46, 87) Thus, Robert Ramirez would be an insured in his capacity *as an officer and director* while conducting the business of LBJ Trucking after its incorporation. Robert Ramirez did not purchase any insurance coverage from Atlantic Casualty individually or when he was merely doing business as LBJ Trucking before its incorporation, and he is not an insured during that time, or in that capacity, under the Atlantic Casualty policies.

## II. Summary of the Argument

Atlantic Casualty has no duty to defend LBJ Trucking for the claims asserted against it in the Underlying Lawsuit because the plaintiffs' complaint does not state a cause of action or allege facts falling within the coverage terms of the Atlantic Casualty insurance policies. Atlantic Casualty submits as its summary judgment evidence the Complaint in the Underlying Lawsuit (App. 1-22) and the two CGL policies Atlantic Casualty issued to LBJ Trucking (App. 23-105).

Under the "eight corners" rule of Texas insurance law, in which the allegations in the Underlying Lawsuit are compared with the terms of the CGL policies, Atlantic Casualty has no duty to defend or indemnify LBJ Trucking (or any other defendant) in the Underlying Lawsuit for several reasons. Atlantic Casualty's policies contain a Total Pollution Exclusion endorsement providing that coverage is excluded for the discharge, dispersal or release of pollutants, which includes waste materials such as the municipal solid waste and foundry sand that LBJ Trucking allegedly transported to the Clem property. (App. 59, 100)

The Atlantic Casualty policies also contain a "Claims in Process" Exclusion which precludes coverage for all losses that occurred, or were in the process of occurring, prior to the inception of the policy, whether known or unknown. (App. 55, 96) According to the Underlying Lawsuit, Ramirez individually began transporting waste material to the Clem property on January 18, 2002. Ramirez subsequently incorporated LBJ Trucking on October 17, 2002, and LBJ Trucking transported waste material to the Clem property since that date, more than eighteen months before the inception or effective date of the first Atlantic Casualty policy, which is April 27, 2004. (App. 4-5) Therefore, Atlantic Casualty's policies expressly preclude coverage for the claims asserted by the plaintiffs in the Underlying Lawsuit. Likewise, under the

Texas common law "fortuitous loss" doctrine, coverage is precluded when the alleged injury began prior to the insurance coverage inception date. Finally, the policies have a Duty to Defend Limitation providing that Atlantic Casualty has no duty to defend any insured where there is no coverage under the policies.

### III.   Argument and Authorities

Texas law governs this diversity case, which is a dispute over contracts (insurance policies) requested, negotiated and delivered in Texas to a Texas resident. The Fifth Circuit reviews this Court's interpretation of an insurance policy *de novo*. *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 677 (5th Cir. 2000). Under Texas law, insurance policies are generally subject to the same rules of interpretation as other contracts. *Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000), *citing Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). Additionally, the Fifth Circuit reviews *de novo* this Court's determinations of state law. *Guaranty Nat'l v. Azrock*, 211 F.3d at 242.

Under the "eight corners" or complaint allegation rule, an insurer's duty to defend its insured "is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity" of the allegations made against the insured. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). The "eight corners" rule takes its name from the fact that only two documents are ordinarily relevant to the determination of an insurer's duty to defend – the four corners of the insurance policy, and the four corners of the third-party claimant's petition. *Id.*; *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). Facts outside the pleadings, even when easily ascertainable, are ordinarily not considered, and the allegations against the insured are liberally construed in favor

of coverage. *GuideOne* at 308; *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Under Texas law, an insurer's duty to defend and duty to indemnify are distinct and separate in scope. *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). The duty to indemnify is narrower, because the insurer may have a duty to defend but ultimately no duty to indemnify. *Id.*; *Guaranty Nat'l v. Azrock*, 211 F.3d at 243. When the petition does not allege facts within the scope of coverage, there is no duty to defend or indemnify. *Griffin*, 955 S.W.2d at 82.

Atlantic Casualty has no duty to defend LBJ Trucking for the claims asserted against it in the Underlying Lawsuit because the plaintiffs' complaint does not state a cause of action or allege facts falling within the coverage terms of the Atlantic Casualty insurance policies. All of the allegations made against LBJ Trucking are expressly excluded under the policies. Atlantic Casualty is entitled to summary judgment as a matter of law because its CGL policies do not provide coverage for, or require it to defend against, the plaintiffs' claims regarding LBJ Trucking in the Underlying Lawsuit. Under the eight corners analysis, the four corners of the Atlantic Casualty insurance policies are compared to the four corners of the third party plaintiffs' petition or complaint in the Underlying Lawsuit.

### A. No Duty to Defend or Indemnify Under the Total Pollution Exclusion

Each of the Atlantic Casualty CGL policies contains a Total Pollution Exclusion endorsement which clearly and expressly precludes coverage for all of the allegations asserted in the Underlying Lawsuit against LBJ Trucking.

### 1.  The Atlantic Casualty Policies

The Total Pollution Exclusion reads as follows and applies to preclude coverage for the Underlying Lawsuit allegations:

> *Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following.*
>
> *This insurance does not apply to:*
>
> *f. Pollution*
>
> *(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*
>
> *(2) Any loss, or expense arising out of any:*
>
>> *(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or*
>>
>> *(b) Claim or suit by or behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."*

(App. 59, 100)

The initial 2004-2005 policy defines "pollutants" as:

> *Any solid, liquid, gaseous or thermal <u>irritant or contaminant</u>, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and <u>waste</u>. Waste includes materials to be recycled, reconditioned or reclaimed.*

(App. 52)

The 2005-2006 renewal policy defines "pollutants" as follows:

> *"Pollutants" means solid, liquid, gaseous, or thermal irritant or contaminant <u>or</u> all material for which a Material Safety Data Sheet is required pursuant to federal, state or local laws, where ever discharged, dispersed, seeping, migrating or released, including onto or into the air or any air supply, water or any water supply or land, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, sewage; and associated smoke, vapor, soot, fumes from said substance. Waste includes materials to be recycled, reconditioned, or reclaimed.*

(App. 100)

### 2      The Underlying Lawsuit Complaint

The Underlying Lawsuit against LBJ Trucking is based *entirely* on allegations that it transported, handled, and arranged for disposal of foundry sand and other solid waste on the Clem property, which resulted in environmental contamination to the property. (App. 4-10) This waste material is clearly defined as a "pollutant" under each of the Atlantic Casualty policies. (App. 52, 100) The alleged transporting and releasing or disposing of pollutants is expressly precluded from coverage under the Total Pollution Exclusion. (App. 59, 100)

The exclusion in the Atlantic Casualty policy is a "total" pollution exclusion (also sometimes referred to in the case law as an "absolute" pollution exclusion), in which there is no coverage for injury or damage related to pollution *under any circumstances*.[3] More than a decade ago, the Texas Supreme Court construed an absolute or total pollution exclusion with language similar to the Atlantic Casualty policy exclusions in *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995). The Texas Supreme Court found the exclusion unambiguous and refused to permit extrinsic evidence or discovery to contradict the meaning of the plain language of the insurance policy:

---

[3] Some CGL policies have pollution exclusions which may provide coverage under certain specific exceptions. Cases construing those qualified pollution exclusions are distinguishable from the cases construing the "total" or "absolute" pollution exclusions, such as the exclusion in the Atlantic Casualty policies in this case.

**PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT – Page 8**

> In this case, the policies unequivocally deny coverage for damage resulting from pollutants, however the damage is caused. . . . Courts usually strive for uniformity in construing insurance provisions, especially where, as here, the contract provisions at issue are identical across the jurisdictions. Most courts which have examined the same or substantially similar absolute pollution exclusions have concluded that they are clear and unambiguous. "This pollution exclusion is just what it purports to be - absolute ..." *Alcolac [Inc. v. California Union Ins. Co.]*, 716 F. Supp. 1546, 1549 (D. Md. 1989). We agree. The language in this pollution exclusion is clear and susceptible of only one possible interpretation in this case. Because there are no latent or patent ambiguities in the policies, there are no fact issues that merit discovery. We conclude that the record is sufficiently developed to support the trial court's summary judgment in favor of the defendant insurance companies.

*National Union* at 522 (footnotes omitted). The Texas Supreme Court affirmed the summary judgment in favor of the insurers.

Since *National Union*, Texas courts have consistently concluded that such absolute or total pollution exclusions clearly and unambiguously preclude coverage for damage related to the release or dispersal of pollutants. *Allen v. St. Paul Fire & Marine Ins. Co.*, 960 S.W.2d 909, 912 (Tex. App.–Texarkana 1998, no pet.) (plaintiff's pleadings did not allege facts separate from contamination, and because "contaminants" were included in the policies' absolute pollution exclusions, all of the plaintiffs' claims were excluded under the policies; the insurer had no duty to defend); *E&L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272, 277-278 (Tex. App.–Beaumont 1998, no pet.) (plaintiff claimed damages from contaminated water, which fell under the unambiguous language of the absolute pollution exclusion; no coverage or duty to defend); *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 340 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) (total pollution exclusion was unambiguous; no duty to defend or indemnify); *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573-74 (Tex. App.–San Antonio 2002, pet. denied) (same).

The Fifth Circuit has recently construed a pollution exclusion identical to the Atlantic Casualty policies' Total Pollution Exclusion in *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 448 (5th Cir. 2007). The Fifth Circuit affirmed the district court's granting of summary judgment in favor of the insurer on the basis that the pollution exclusion precluded coverage or a defense in a lawsuit brought by workers injured while removing petroleum-byproduct sludge. The Fifth Circuit held:

> if a claim alleges that injury arose at least in part from a pollutant, coverage is denied. *See, e.g., Amoco Prod. Co. v. Hydroblast Corp.*, 90 F.Supp.2d 727, 732-33 (N.D. Tex. 1999) (allegation of pollutant-related injury sufficient to trigger pollution exclusion clause); *Bituminous Cas. Corp. v. Kenworthy Oil Co.*, 912 F. Supp. 238, 241 (W.D. Tex. 1996) (same).

*United Nat'l Ins. Co.*, 497 F.3d at 449.

In this case, the Underlying Lawsuit Plaintiffs claim that their injury (contamination of the Clem property) arose entirely from the transporting and disposal of pollutants on their land, therefore Atlantic Casualty is not required to defend or indemnify LBJ Trucking (or any other insured or defendant) in the Underlying Lawsuit. When the petition or complaint does not allege facts within the scope of coverage, there is no duty to defend or indemnify. *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

### B. No Duty to Defend or Indemnify Under the "Claims in Process" Exclusion

Additionally, Atlantic Casualty is entitled to summary judgment on a separate and independent basis from the policies' Total Pollution Exclusion. Each of the Atlantic Casualty policies issued to LBJ Trucking contains a "Claims in Process" Exclusion that excludes coverage for "bodily injury" and "property damage" under Coverage A of the CGL policy.

### 1. The Atlantic Casualty Policies

The "Claims in Process" exclusion reads as follows:

> *Paragraphs b (3), c. and d. under Insuring Agreement of Section I – Coverage A- Bodily Injury and Property Damage Liability are deleted. The following is added to 2. Exclusions under Section I – Coverage A – Bodily Injury and Property Damage Liability:*
>
> *1. any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown:*
>
> > *a. which first occurred prior to the inception date of this policy; or*
> >
> > *b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy.*
>
> *2. any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.*
>
> *We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.*

(App. 55, 96) The exclusion clearly and unambiguously precludes coverage for all losses that occurred, or were in the process of occurring, prior to the inception of the policy, whether known or unknown. The "Claims in Process" exclusion provides for coverage only if an "occurrence" happened during the policy period, and contractually negates any claim that coverage may be triggered when an occurrence happened *before* the policy period but the damage had not yet been discovered, or manifested until some time during the policy period.[4]

---

[4] This case, and the Claims in Process exclusion, differs from the "Prior Incident(s) and Prior Construction Defects Exclusion" discussed in the mold case *Williams Consolidated I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895 (Tex. App.—Houston [14th Dist.] 2007, no pet.). In *Williams*, the petition did not allege when damage from the mold began, unlike the Complaint in this case, which specifies that LBJ Trucking first began delivering solid waste and foundry sand to the Clem property upon its incorporation on October 17, 2002. (App. 4-5)

**PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT – Page 11**

### 2  The Underlying Lawsuit Complaint

According to the Underlying Lawsuit, LBJ Trucking's alleged environmental contamination of the Clem property (by transporting and releasing foundry sand and other solid waste, as opposed to clean fill dirt) first occurred when it was incorporated on October 17, 2002.[5] (App. 4-5) This was *more than eighteen months* before the inception date of the first Atlantic Casualty policy on April 27, 2004. (App. 23) The alleged environmental contamination continued to occur afterward with every subsequent load of solid waste and foundry sand that LBJ Trucking transported to the Clem property. (App. 5)

The allegations against LBJ Trucking in the Underlying Lawsuit are not covered under the Atlantic Casualty policies because of the Claims in Process Exclusion. Under Claims in Process Exclusion sections 1.a. and 1.b. quoted above, the policies expressly exclude coverage for any loss or claim for property damage, whether known or unknown, "which first occurred prior to the inception date of this policy" or are "alleged to be in the process of occurring as of the inception date of this policy." (App. 55, 96) Therefore, under the plain language of the policies, which is susceptible of only one reasonable construction, there is no coverage for, and Atlantic Casualty is not required to defend against, the claims regarding LBJ Trucking in the Underlying Lawsuit. When the petition or complaint does not allege facts within the scope of coverage, there is no duty to defend or indemnify. *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

The "Claims in Process" exclusion applies to both the duty to defend and the duty to indemnify. In addition to precluding coverage, the exclusion expressly negates any duty to defend. If insurance policy terms are susceptible of only one reasonable construction, they will

---

[5] As discussed above, the Underlying Plaintiffs allege that Ramirez individually had already been delivering waste and foundry sand to the Clem property for several months, since January 18, 2002, before he incorporated LBJ Trucking on October 17, 2002. (App. 4-5)

**PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT** – Page 12

be enforced as written. *Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 242 (5th Cir. 2000), citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). Atlantic Casualty is entitled to summary judgment on this issue as a matter of law.

### C.   No Duty to Defend or Indemnify Under the Fortuitous Loss Doctrine

Even if the Atlantic Casualty policies did not contain the "Claims in Process" exclusion, coverage for the claims against LBJ Trucking in the Underlying Lawsuit would still be precluded under the common law "fortuitous loss" or "fortuity" doctrine. Under Texas insurance law, fortuity is an inherent element in all risk insurance policies. *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14th Dist.] 1995, no writ). The doctrine incorporates the "known loss" and "loss in progress" principles, which focus on the proposition that "insurance coverage is precluded where the insured is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased." *Id.*

The "loss in progress" principle was enshrined in the "Claims in Process" exclusion of the Atlantic Casualty policies. When, as in this case, the alleged injury began prior to the insurance coverage inception date, coverage is precluded under the fortuitous loss doctrine. *Two Pesos*, 901 S.W.2d at 502, *Franklin v. Fugro-McClelland, Inc.*, 16 F.Supp.2d 732, 735 (S. D. Tex. 1997); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 76-77 (Tex. App—Dallas 2001, pet. denied). The Underlying Lawsuit alleges that the Underlying Lawsuit Defendants, including LBJ Trucking, had "<u>*continuous knowledge*</u>" of the presence of solid waste and foundry sand that was being illegally disposed of at the Clem property. (App. 5)  LBJ Trucking's repeated transportation and dispersal of solid waste and foundry sand to the Clem property detailed at length above was an ongoing progressive loss and known loss before the first Atlantic Casualty

policy's effective or inception date, which precludes coverage under the Atlantic Casualty policies.

### D. No Duty to Defend Under the Duty to Defend Limitation

Finally, Atlantic Casualty has no duty to defend LBJ Trucking in the Underlying Lawsuit because of an additional policy provision. Under the Duty to Defend Limitation, the CGL policies simply provide:

> Where there is no coverage under this policy, there is no duty to defend any insured.

(App. 57, 98)

Atlantic Casualty has demonstrated that the Total Pollution Exclusion and the Claims in Process Exclusion in its CGL policies, and the common law fortuitous loss doctrine, independently preclude coverage for and a defense against the plaintiffs' claims in the Underlying Lawsuit against LBJ Trucking. When the Court enforces the insurance policy terms as written, as it is required to do under Texas law, Atlantic Casualty is entitled to summary judgment as a matter of law that it has no duty to defend LBJ Trucking on an additional basis as well, under the Duty to Defend Limitation.

### V. Conclusion

Atlantic Casualty has demonstrated that under the governing "eight corners" rule, as a matter of law Atlantic Casualty has no duty to defend or indemnify LBJ Trucking or Robert Ramirez, or any other insured or defendant for the claims asserted by the Underlying Plaintiffs in the Underlying Lawsuit. No genuine issues of material fact exist which would preclude summary judgment in favor of Atlantic Casualty.

WHEREFORE, Atlantic Casualty prays that the Court grant in all respects its Motion for Summary Judgment, declare that Atlantic Casualty has no duty to defend or indemnify LBJ

Trucking or Robert Ramirez, or any other insured or defendant for the claims asserted by the Underlying Plaintiffs in the Underlying Lawsuit, and award Atlantic Casualty its costs of court, reimbursement for its defense costs, and for all additional relief to which it may be entitled.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

By: /s/ Camille Johnson

Camille Johnson, Attorney-in-Charge
State Bar No. 10686600
Gary N. Schumann
State Bar No. 17851930
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: camille@ssjmlaw.com

**ATTORNEYS FOR PLAINTIFF
ATLANTIC CASUALTY INSURANCE COMPANY**

Of counsel:

William A. Reece
State Bar No. 16672990
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: breece@ssjmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2007, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the CM/ECF system, and I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*Camille Johnson*
Camille Johnson