IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | Civil Action No. |
| vs. | § § § | 3:07-CV1297-K |
| ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, and CLARENCE T. "CASEY" CLEM, Jr., | § § § § § § § § | |
| Defendants. | § | |

## CLEM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST THEM

Atlantic Casualty's Response and Brief in Support Thereof (the "Response") does not refute any of the Clem Defendants' arguments that jurisdiction does not exist over the Clem Defendants. Likewise, the Response fails to defeat the Clem Defendants' arguments in support of their request that the Court decline to exercise its jurisdiction over them in this case.

### I. INTRODUCTION

Atlantic repeatedly states that a justiciable controversy exists, but fails to explain the post-*Griffin* affirmation of the holding in *Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1028 (N.D. Tex. 1995) – that potential judgment creditors in Texas have no legally cognizable interest in an insurance contract upon which to bring suit against the alleged tortfeasor's insurer. *Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 311 (N.D. Tex. 2004).

Under the Federal Declaratory Judgment Act, the substantive legal relationship between the tortfeasor's insurer and a potential judgment creditor must be maintained no matter which party brings suit. *Sassin*, 894 F. Supp. at 1028. The substantive relationship between Atlantic and the Clem Defendants simply cannot be maintained if, on the one hand, the Clem Defendants have no legally cognizable interest in the insurance contract sufficient to sue Atlantic regarding the duty to indemnify the LBJ Defendants, yet, on the other hand, Atlantic can immediately sue the Clem Defendants upon notice of the Underlying Lawsuit. This dichotomy treats a potential judgment creditor differently based upon who brings suit. This is not permissible under the Federal Declaratory Judgment Act. *Id*.

Moreover, the balance of factors weighs strongly in favor of the Court declining to exercise its jurisdiction. Although Atlantic addresses some of the Clem Defendants' arguments in support of the Court declining to exercise jurisdiction, Atlantic completely ignores two of the most significant factors: the number of other potential declaratory judgment actions that might be brought against the Clem Defendants arising out of the allegations in the Underlying Lawsuit, and the potentially substantial cost of this litigation to the Clem Defendants, whom Atlantic admittedly named as defendants only to bind them to any judgment.[1]

For the reasons stated herein, and in the Clem Defendants' Motion to Dismiss, this Court should dismiss the Clem Defendants from this litigation under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6), and/or the Court should decline jurisdiction over the Clem Defendants in this action.

---

[1] For example, on October 22, 2007, only eight days after filing its response to the Clem Defendants' motion to dismiss, Atlantic filed a motion for summary judgment. Should the Clem Defendants have to respond on the merits, they will face substantial cost in making arguments on two insurance contracts to which they are strangers.

**CLEM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFF'S CLAIMS AGAINST THEM** **– PAGE** 2

## II. ARGUMENT AND AUTHORITIES

### A. This Court Should Dismiss Atlantic's Claims Against the Clem Defendants Because No Justiciable Controversy Exists Between Atlantic and the Clem Defendants Under the Federal Declaratory Judgment Act.

Despite the tenor of Atlantic's Response, the Clem Defendants have presented substantial authority that no present justiciable controversy exists in this case.

### 1. The Clem Defendants have shown that no justiciable controversy exists.

Under post-*Griffin* Texas state law, the Clem Defendants may not sue Atlantic for a coverage determination on the insurance contracts between Atlantic and the LBJ Defendants until the liability of the LBJ Defendants is finally determined.  Tex. R. Civ. P. 51(b); *Feria v. CU Lloyd's of Texas*, No. 05-00-01245-CV, 2001 WL 1263666, at *1 (Tex. App.—Dallas 2001, no pet.) (not designated for publication) (post-*Griffin* case);  *Owens v. Allstate Ins. Co.*, 996 S.W.2d 207, 208 (Tex. App.—Dallas 1998, pet. denied) (same); *Sassin*, 894 F. Supp. at 1027; *Bituminous Cas. Corp.*, 223 F.R.D. at 311.  Atlantic does not refute this statement, but instead baldly asserts that the point is "unremarkable."  (Resp. 5.)

Atlantic also fails to refute that Texas state law defining the substantive rights of potential judgment creditors vis-à-vis a tortfeasor's insurer is presently in flux.  (Mot. 6-9.)  Instead, Atlantic skirts these issues by responding that there is no flux in "Texas's not being a direct action state," and by relying on federal authority holding a justiciable controversy to exist between insurers and potential judgment creditors.  (Resp. 11.)  To paraphrase Atlantic's position, the question is not whether the ***Clem Defendants***, as potential judgment creditors, could have sued Atlantic for a coverage determination in the Underlying Lawsuit; the real question is whether ***Atlantic*** could sue the Clem Defendants, as potential judgment creditors, for a coverage

determination regarding the Underlying Lawsuit. (*See* Resp. 5.) Atlantic suggests that a justiciable controversy would exist only under the second circumstance.

Atlantic claims that the Clem Defendants "confuse the difference between the injured party suing the injuring party's insurer directly [for a determination of coverage] and the ripeness of the insurer seeking a no coverage declaration against the injured party." (Resp. 11-12.) However, as described herein, this is a hollow distinction. Maintaining the substantive relationships between the parties under state law is mandatory under the Federal Declaratory Judgment Act. *Sassin*, 894 F. Supp. at 1028. To adopt Atlantic's position, the Clem Defendants would only have substantive rights under the policy between Atlantic and the LBJ Defendants before a final determination in the Underlying Lawsuit *if* Atlantic sued them for a coverage determination. Otherwise, their substantive rights under the policy would only arise, if at all, if liability was finally determined against the LBJ Defendants. The Federal Declaratory Judgment Act does not condone such a dichotomy. *Id*. A controversy that only runs one way cannot be said to be substantial.

2. **The Concerns of *Maryland Casualty Company* Are Not Present Here.**

While Atlantic relies heavily upon the Supreme Court's decision in *Maryland Casualty Company v. Pacific Coal & Oil Co.*, Resp. 5-7, there is no precise test for determining whether a case or controversy exists. *Sassin*, 894 F. Supp. at 1026. Instead, "[i]n each case, the court must determine whether the facts alleged show that there is a ***substantial*** controversy, between parties having ***adverse legal interests***, of ***sufficient immediacy and reality*** to warrant the issuance of a declaratory judgment." *Id*. (emphasis added). The facts here are distinguishable from the facts of the *Maryland Casualty* case. Under the facts here, there is no actual controversy.

For example, as Atlantic states in the Response, "*if* the Clem[ Defendants] get a judgment against Ramirez, LBJ, or both, . . . they *could* sue Atlantic Casualty directly to recover on the underlying judgment." (Resp. 3 (emphasis added).)  While Atlantic claims the Clem Defendants are not coy about their intentions to seek recovery from Atlantic, the simple fact is that the Clem Defendants do not know if they obtain a judgment against the LBJ Defendants whether they will seek recovery from Atlantic.

Although the Clem Defendants certainly do not intend to waive their right to do so, discovery in the Underlying Lawsuit is at the initial stages.  The Clem Defendants are seeking discovery related to, among other things, which insurance policies might cover the relevant periods of time for the conduct alleged in the Underlying Lawsuit.  Moreover, discovery will reveal more about when the dumping occurred and the types of materials that were dumped on the Clem Defendants' property.  The uncertainty regarding the actual factual determinations in the Underlying Lawsuit, such as determinations of when the harm occurred, what materials were dumped, and what insurance policies, if any, were in effect for the various defendants, strongly suggests that the Clem Defendants have no substantial controversy with Atlantic at this time.  Indeed, any such controversy, to the extent it might exist in the future, is not of sufficient immediacy and reality to warrant including the Clem Defendants in a coverage action for a policy to which the Clem Defendants are strangers, and to which they have no present legally cognizable interest under Texas state law.

Moreover, the policy concern in the *Maryland Casualty* case, which is cited prominently by Atlantic in its Response, is not present in this case.  In Maryland Casualty, "the emphasis on the rights of the parties under state law was accompanied by a policy concern . . . that an insurer might be subjected to contradictory [insurance] policy interpretations if it were not allowed to

join the insured and the state court plaintiff in a single forum." *Sassin*, 894 F. Supp. at 1026. However, that concern is not relevant here.

The Clem Defendants are not the only potential judgment creditors in the Underlying Lawsuit, yet the Clem Defendants are the only potential judgment creditors that Atlantic named in this action. On August 13, 2007, Defendant Hensley Industries, Inc. filed a cross-claim against one of the LBJ Defendants, LBJ Trucking Co., Inc. ("LBJ") in the Underlying Lawsuit.[2] LBJ filed its answer to the cross-claim on August 30, 2007, nearly two months ago. Therefore, whether the Clem Defendants remain in this action or are dismissed, Atlantic will potentially be subject to contradictory insurance contract interpretations because it has failed to name all of the potential judgment creditors. Atlantic's suit is not only a premature attempt at a preemptive strike against the Clem Defendants, it is an incomplete attempt that belies Atlantic's stated purpose in including the Clem Defendants in this litigation.

### 3. Atlantic's Cases Are Distinguishable.

Additionally, none of the cases upon which Atlantic relies address the court's reasoning in *Sassin*, which relies upon substantive state law and requires the tort relationship between the parties to be maintained in determining whether an actual controversy exists. The *Century Surety* case cited by Atlantic is a summary judgment case; it also does not discuss the Article III standard or the dichotomy in the relationship between the insurer and the potential judgment creditor. *Century Surety Co. v. Hardscape Construction Specialties, Inc.*, No. 4:05-CV-285-Y, 2006 WL 1948063 (N.D. Tex. 2006). In the *Breaux* case, another summary judgment case, the potential judgment creditors apparently first sued the insurer in the underlying lawsuit,

---

[2] These pleadings were filed in the Underlying Lawsuit in the United States District Court for the Eastern District of Texas, Sherman Division. In deciding a Rule 12 motion, the Court may take judicial notice of relevant public records. *See, e.g., Zahn v. TransAmerica Corp.*, 162 F.2d 36, 48 n.20 (3d Cir. 1947); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *In re Shopko Securities Litig.*, C.A. No. 01-C-1034, 2002 WL 32003318, at *2 (E.D. Wis. 2002).

**CLEM DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S CLAIMS AGAINST THEM – PAGE 6**

essentially intervening in the dispute between the insurer and its insured, prior to the insurer moving for summary judgment in that case regarding the coverage issues. *National American Ins. Co. v. Breaux*, 368 F. Supp. 2d 604, 608-09 (E.D. Tex. 2005). Only after suing the insurer did the potential judgment creditors apparently argue they were not proper parties to the coverage action. *Id.*

The other cases cited by Atlantic are also distinguishable on similar grounds to those already stated herein.

Atlantic also inartfully attempts to explain away the post-*Griffin* affirmation of the holding in *Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1028 (N.D. Tex. 1995), that potential judgment creditors have no cognizable interest in an insurance contract upon which to bring suit. *See Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 311 (N.D. Tex. 2004). Although Atlantic asserts that the *Bituminous* case supports its position that the Clem Defendants are proper parties and that a justiciable controversy exists, the court in *Bituminous* did not determine that an actual controversy existed between the potential judgment creditors and the insurer.

The *Bituminous* court instead based its decision to allow the potential judgment creditors to intervene in that action based on Fed. R. Civ. P. 24, allowing parties to intervene if they have an interest sufficient to support intervention, a standard lower than the requirement of an actual Article III case or controversy. *Bituminous Cas. Corp.*, 223 F.R.D. at 311. Under Rule 24, intervenors need not independently possess Article III standing. *Id.* In fact, the *Bituminous* court did not find that the potential judgment creditors had independent Article III standing. *Id.* Instead, the court allowed the potential judgment creditors to intervene based on the existing controversy between the insurer and its insured. *Id.*

Here, the Clem Defendants are not attempting to intervene in the coverage action. Atlantic instead named the Clem Defendants as defendants in its declaratory judgment action against its insured. Therefore, Atlantic must demonstrate that an Article III case or controversy independently exists between itself and the Clem Defendants. In this regard, Atlantic bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1991). It has failed to meet this burden.

Although Atlantic asserts that including the Clem Defendants in this action as potential judgment creditors is "no more uncommon than sunshine in July in Dallas," Resp. 2, even in July in Dallas the sun sets every single night. Simply because a court may determine that a potential judgment creditor sometimes has an actual case or controversy with a tortfeasor's insurer does not mean this is always the case. The facts of each case must instead be examined to determine whether a case or controversy exists. As set forth herein, there is no ***substantial*** controversy, between parties having ***adverse legal interests***, of ***sufficient immediacy and reality*** to warrant a finding of an actual controversy here. The Clem Defendants should, therefore, be dismissed from this action pursuant to Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter jurisdiction to hear the dispute. For the same reasons, the Clem Defendants should be dismissed pursuant to Rule 12(b)(6) because Atlantic has failed to state a claim against the Clem Defendants upon which relief can be granted.

### B. This Court Should Exercise Its Discretion to Decline to Hear Atlantic's Declaratory Judgment Action Against the Clem Defendants.

Atlantic contends that the Clem Defendants' request that the Court decline jurisdiction over them as a matter of discretion is an argument based mainly on the contingency of judgment in the Underlying Lawsuit. While this is certainly one factor, it is only one – and Atlantic has

failed to address two of the Clem Defendants' most significant arguments in support of their request that the Court decline to exercise its jurisdiction.

First, if Atlantic's asserted claims against the Clem Defendants are allowed to proceed, the Clem Defendants would be subject to being named as potential judgment creditors in a number of additional "coverage" lawsuits. The Underlying Lawsuit involves multiple defendants. Moreover, the alleged conduct in the Underlying Lawsuit occurred over a span of years, only two of which are implicated by the Atlantic policies at issue in the instant suit.

Judicial economy would not be served by permitting this action to proceed against the Clem Defendants, only to have several other later coverage actions name the Clem Defendants as potential judgment creditors. Judicial economy would be better served by dismissing the Clem Defendants from this litigation so that, should the Clem Defendants succeed in the Underlying Action, any later coverage determination could proceed against the appropriate insurers.

Second, it is inequitable to impose the potentially substantial court costs and attorney's fees of this coverage action on the Clem Defendants solely because they are potential judgment creditors. The Clem Defendants' only "wrongdoing" justifying the imposition of these costs seems to be naming as defendants in the Underlying Lawsuit parties that have purchased insurance. Requiring the potential judgment creditors to incur expenses in a second lawsuit regarding a contingent insurance dispute is hardly convenient for the Clem Defendants.

The Clem Defendants, therefore, request this Court to exercise its discretion to decline jurisdiction of the case over them.

### III.   CONCLUSION

For the reasons set forth above, the Clem Defendants' motion to dismiss should be granted and Atlantic's claims against the Clem Defendants should be dismissed in their entirety.

Respectfully submitted,

 /s/ Abigail B. Moore
Vincent J. Hess
  Texas State Bar. No. 09549417
  vhess@lockelord.com
Abigail B. Moore
  Texas State Bar No. 24037133
  abmoore@lockelord.com
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000 (telephone)
(214) 740-8800 (telecopy)

**ATTORNEYS FOR DEFENDANTS CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, AND CLARENCE T. "CASEY" CLEM, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the court's electronic filing system, on this 29th day of October 2007 on the following counsel of record:

| | |
|---|---|
| Camille Johnson | Cody L. Towns |
| Gary N. Schumann | Lynn Tillotson & Pinker LLP |
| William A. Reece | 750 N. St. Paul Street, Suite 1400 |
| Savrick, Schumann, Johnson, McGarr, Kaminski & Shirley, L.L.P. | Dallas, Texas 75201 |
| 6440 N. Central Expressway, Suite 107 | |
| Dallas, Texas 75206 | |

 /s/ Abigail B. Moore
  Abigail B. Moore