IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | |
| ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, and CLARENCE T. "CASEY" CLEM, JR., | § § § § § § § § § § | CIVIL ACTION NO. 3:07-CV-1297-O |
| Defendants. | § § | |

**ATLANTIC CASUALTY'S REPLY TO THE LBJ DEFENDANTS'
RESPONSE TO ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE REED O'CONNOR, U.S. DISTRICT JUDGE:

Atlantic Casualty replies to the LBJ Defendants' response to Atlantic's motion for summary judgment and respectfully shows the Court as follows:

LBJ and Ramirez make no headway toward answering Atlantic's arguments and evidence. Instead, they impermissibly focus on extrinsic evidence, speculate about undeveloped facts in the underlying action, and fail to respond to the application of the policies' Total Pollution Exclusion and Claims in Process Exclusion. In the final analysis, Atlantic is entitled to summary judgment, which the Court should grant.

**ATLANTIC'S REPLY TO LBJ'S RESPONSE TO
ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**                                                                 Page 1

To determine coverage, a court considers only the underlying complaint and the allegedly applicable insurance policy, an analysis known as the eight-corners rule because it involves only the "four corners" of the underlying complaint with the "four corners" of the policy. *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005) (applying Texas law); *see also GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). The underlying complaint's allegations must be taken as true. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004); *GuideOne*, 197 S.W.3d at 308. As a general matter, the eight-corners rule forbids reliance on evidence outside of, or extrinsic to, the complaint and insurance policy. *National Fire Ins. Co. v. Entertainment Specialty Ins. Servs., Inc.*, 485 F. Supp. 2d 737, 741 (N.D. Tex. 2007) (Lynn, J.) citing *GuideOne*, 197 S.W.3d at 308.

The LBJ Defendants' response regarding the Claims in Process Exclusion and the Total Pollution Exclusion improperly focuses on extrinsic evidence. They refer, for instance, to invoices for transport, reports of test results and deposition testimony from the underlying lawsuit. All of this is extrinsic to the underlying complaint and the policies and thus may not be considered. LBJ tries to use such extrinsic evidence to prove that the foundry sand was not an "irritant or contaminant" (Resp. at 4) but instead was clean sand, and to show when certain transportation events occurred. (Resp. at 3.) Despite the LBJ Defendants' reliance on extrinsic evidence, facts developed in the process of litigation do not affect the duty to defend. *Northfield Ins. Co.*, 363 F.3d at 528.

At one point, LBJ attempts to invoke an exception to the prohibition of extrinsic evidence, (1) "when it is initially impossible to discern whether coverage is potentially implicated," and (2) "when the extrinsic evidence goes solely to a fundamental issue of coverage

which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co.*, 363 F.3d at 528. The Supreme Court of Texas recently addressed the extrinsic evidence issue thus:

> Although this Court has never expressly recognized an exception to the eight-corners rule, other courts have. Generally, these courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim.

*GuideOne*, 197 S.W.3d at 308 (footnote omitted). The LBJ Defendants' extrinsic evidence fails the courts' analyses in *Northfield* and *GuideOne*.

First, it is not initially impossible to discern whether coverage is potentially implicated. As Atlantic Casualty shows in its motion for summary judgment and brief in support, the underlying complaint as compared with the policy clearly indicates that coverage is excluded by the Total Pollution Exclusion and by the Claims in Process Exclusion. Further, LBJ tries to use extrinsic evidence to *disprove* the allegations of the complaint, which fails the second part of the test, that extrinsic evidence might be used only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim. For instance, LBJ claims that the Total Pollution Exclusion does not apply because LBJ only transported clean fill material. (Resp. at 4.) But whether the material was clean or a contaminant is the whole dispute of the underlying lawsuit, and in *GuideOne*, the Supreme Court of Texas specifically *rejected* an exception to the eight-corners rule that would allow consideration of extrinsic facts relevant both to the merits and to coverage. *See GuideOne*, 197 S.W.3d at 309. LBJ's purported evidence directly contradicts the underlying complaint, which complains of the dumping of "foundry sand,

*as opposed to* clean fill material . . . ." (Pl.'s App. at 004, Orig. Compl. ¶ 22; emphasis added.) In their response, LBJ says:

> In the Clem lawsuit, the plaintiffs have claimed their "homestead farm" was "contaminated," but in reality, the Clem plaintiffs have only made this claim because contaminated fill would warrant higher payments to them than the uncontaminated fill that LBJ Trucking transported to their land.

(Resp. at 4.) Thus, LBJ recognizes that the pleadings allege coverage-precluding contamination, but they disagree with what the pleadings allege and offer evidence to contradict the complaint. They may not use extrinsic evidence to contradict the pleadings.[1]

LBJ continues to rely on extrinsic evidence in its response to the Total Pollution Exclusion. That response is that the Clems' pleaded facts are wrong because LBJ was really only transporting clean—rather than contaminated—sand. Rather than relying on the underlying complaint and policy for the coverage analysis, LBJ attempts to rely on extrinsic evidence going directly to the merits of the underlying action. As shown above, this they may not do. Similarly, LBJ claims that it was only transporting clean *sand*. (See Resp. at 5.) This further reliance on extrinsic evidence flatly contradicts the Clems' allegations that Ramirez and LBJ transported "*solid waste* and foundry sand." (*See, e.g.*, app. at 0004, ¶¶ 17 & 18; emphasis added.)

---

[1] For instance, the Texas Supreme Court noted:

> The extrinsic evidence in [*International Serv. Ins. Co. v. Boll*, 392 S.W.2d 158, 160 (Tex. Civ. App.—Houston 1965, writ ref'd n.r.e.)], however, went strictly to the coverage issue. It did not contradict any allegation in the third-party claimant's pleadings material to the merits of that underlying claim. In contrast, the extrinsic evidence here concerning Evans' employment directly contradicts the plaintiff's allegations that the Church employed Evans during the relevant coverage period, an allegation material, at least in part, to the merits of the third-party claim. Under the eight-corners rule, the allegation's truth was not a matter for debate in a declaratory judgment action between insurer and insured.

*GuideOne*, 197 S.W.3d at 311.

**ATLANTIC'S REPLY TO LBJ'S RESPONSE TO**
**ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**                                      Page 4

LBJ's only other argument against application of the Total Pollution Exclusion is to allege speculatively, without support and in contradiction of the complaint, that the "Clem plaintiffs have only made this claim [*i.e.* that their "homestead farm" was "contaminated"] because contaminated fill would warrant higher payments to them than the uncontaminated fill that LBJ Trucking transported to their land." (Resp. at 4.) LBJ then further speculates that the intention of the Total Pollution Exclusion is to exclude coverage for dumping of pollutants that cause bodily injury or property damage; "it is not intended to exclude claims for additional payments for legal transport to a certified reclamation site." (Resp. at 4.) To begin with, LBJ may not rewrite the plain meaning of the policy with speculative, unsupported parol evidence about the "real" intention of an exclusion that LBJ did not write. LBJ's assertions again contradict the underlying complaint, which does not seek "additional payments for legal transport," but instead is a full-blown environmental pollution lawsuit under RCRA, complaining, among other things, that the solid wastes transported by LBJ continue "to be present in the environment, are uncovered and are subject to storm water discharges, and continue to present an imminent and substantial endangerment to individuals and the environment." (App. at 0006.) This is a far cry from merely seeking additional payments for legal transport.

Other than impermissibly directly contradicting the Clems' merits allegations, LBJ goes no way toward showing how or why the Total Pollution Exclusion does not preclude coverage. Atlantic, in its motion, brief and supporting evidence explains just how that exclusion applies to preclude coverage. The underlying action is an environmental pollution case. Atlantic did not insure against environmental pollution, and LBJ did not pay premiums for Atlantic to insure

**ATLANTIC'S REPLY TO LBJ'S RESPONSE TO
ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**                                    Page 5

against such perils.  Because of the Total Pollution Exclusion, the Atlantic policies do not provide coverage for the Clems' claims.

LBJ's assault on the Claims in Process Exclusion is also thwarted by its reliance on extrinsic evidence.  For instance, LBJ notes that the "on-going discovery" in the underlying action has not shown "which truckloads, if any, contained the unsatisfactory fill material."  (Resp. at 3.)  As Atlantic notes above, facts developed in the litigation are not pertinent to the eight-corners analysis.  LBJ then tries to leverage its "on-going discovery" argument into a claim that "[u]ntil such time [*i.e.*, determination of which truckloads contained what materials], each truckload of sand . . . constitutes an 'occurrence' under the Policy . . . ."  (Resp. at 3.)  Again, LBJ contradicts the underlying complaint, which does not distinguish among truckloads.  LBJ instead asks the Court to read unpleaded facts—that some truckloads contained contaminants while others did not—into the complaint.  However, in the eight-corners analysis, a Court may not read facts into the pleadings, may not look outside the pleadings, and may not "imagine factual scenarios which might trigger coverage."  *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997).  LBJ admits it does not know what the underlying discovery will show.  Consequently, LBJ offers, "[u]ntil such time" as they figure it out, the Court should assume multiple occurrences.  This is nothing more than an invitation to imagine factual scenarios that might trigger coverage in addition to being reliance on extrinsic evidence.

In any event, the Court need turn no further than the policies' definition of "occurrence" to discover why LBJ's argument fails.  Both policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ATLANTIC'S REPLY TO LBJ'S RESPONSE TO**
**ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**                                    Page 6

(App. at 51, ¶ 13 & 92, ¶ 13.) Because "occurrence" means "repeated exposure," the occurrence, if any, took place as pleaded—on January 18, 2002. (App. at 0004-0005, ¶ 22; Orig. Compl.) And that date pre-dates the first Atlantic policy by over two years. Language in the Claims in Process Exclusion also supports that LBJ's factually imagined theory of "occurrence" falls flat. As shown in Atlantic's brief in support of its motion for summary judgment, the Claims in Process Exclusion excludes coverage for "loss" that "first occurred prior to the inception date of this policy; or which is alleged to be, in the process of occurring as of the inception date of this policy." (App. at 55 & 96; Exclusion—Claims in Process.) Even if LBJ's view of occurrence had merit, the plain language of the exclusion diffuses it, because the underlying complaint alleges facts showing that the alleged loss first occurred or was in the process of occurring as of the inception date of the policies.

Finally on this issue, the pleaded facts giving rise to the Clems' alleged damages do not even constitute an "occurrence" under the policies:

> The policies issued by Bituminous to Kenworthy define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions". The damages to the Holt property are not "accidental" but are the natural and probable consequences of oil and gas production activities. "[C]overage does not exist for inevitable results which predictably and necessarily emanate from deliberate actions." *Meridian Oil Production, Inc., v. Hartford Accident and Indemnity Company*, 27 F.3d 150, 152 (5th Cir. 1994).

*Bituminous Cas. Corp. v. Kenworthy Oil Co.*, 912 238, 241 (W.D. Tex. 1996). Atlantic's policies contain the same definition of "occurrence" as Bituminous Casualty's. Atlantic submits that the Clems' alleged damages resulted from the natural and probable consequences of LBJ and Ramirez's dumping activities. And regardless, those activities are pleaded to have occurred with full knowledge, and are thus not pleaded to be accidental: "Briscoe, the Briscoe entities,

**ATLANTIC'S REPLY TO LBJ'S RESPONSE TO**
**ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**                                            **Page 7**

Hensley, Ramirez and LBJ Trucking have had continuous, knowledge of the presence of solid waste and foundry sand that was illegally disposed of at the Clem property for some time." (App. at 005.) The Claims in Process Exclusion precludes coverage, and in any event, the complaint does not allege an "occurrence" within the meaning of the policies.

LBJ and Ramirez also allege that Atlantic must defend against the "counterclaims" asserted in the underlying lawsuit and that Atlantic's motion for summary judgment must therefore be denied. Underlying Defendant Hensley Industries filed counterclaims against the Clems and cross-claims against certain of the other defendants. To begin with, Hensley's cross-claims do not include Ramirez, and thus even if LBJ and Ramirez's argument had merit, it would not as to Ramirez. Second, Atlantic's motion seeks summary judgment as to claims asserted *by the Underlying Plaintiffs—i.e.*, the Clems, not Hensley Industries. (*See* Atlantic's Mot. Summ. J., conclusion/prayer at 2-3.) Thus, even if LBJ's argument had merit, it would not foreclose granting Atlantic's motion as to all claims by the Underlying Plaintiffs, just as requested in the motion.

Third, LBJ gets its eight-corners analysis regarding Hensley's cross-claims wrong. LBJ states:

> In the Clem Lawsuit, Hensley Industries has filed counterclaims against the other defendants, including LBJ Trucking, for negligence and negligence per se for "failing to monitor" defendant Briscoe Enterprises' operation of the landfill on the Clem property to ensure it had the "proper permits." *See* Hensley Counterclaim, at ¶¶ 89-90. Hensley Claims it has incurred expenses which could have been avoided if the counter-defendants "notified Hensley and appropriately monitored [Briscoe's] activities" on the Clem property. *Id*. ¶ 90.

(Resp. at 6.) LBJ claims that Hensley's claim falls within coverage. Not so.

**ATLANTIC'S REPLY TO LBJ'S RESPONSE TO**
**ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**                                      Page 8

First, paragraphs 89 and 90 to which LBJ refers are Hensley's *counterclaim* against *the Clems*. (App. Further Supp. at 17.)[2] LBJ is not sued for negligence or negligence per se, and Hensley seeks the quoted damages from the Clems, not LBJ. Hensley does assert a cross-claim against LBJ for contribution and indemnity and for a declaration that it its entitled to recover costs and expenses should the Texas Commission on Environmental Quality (TCEQ) issue a remediation order or should Hensley voluntarily take removal or remedial action with the TCEQ's approval. (*Id.* at 18, ¶ 94.) In the eight-corners analysis, the Court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged. *National Union Fire Ins. Co.*, 939 S.W.2d at 141. Thus, what Hensley calls its claims—whether contribution, declaratory judgment, or otherwise—does not matter. The factual allegations of both Hensley's cross-claim against LBJ and of the Clems' underlying complaint are that LBJ contaminated the Clems' real property with foundry sand and other solid waste—that is the pleaded factual origin of damages. Hensley's cross-claim for contribution and indemnity is completely derivative of the Clems' factual allegations,[3] and Hensley's cross-claim for declaratory relief rests solely on the same factual allegations—that LBJ contaminated the Clems' property with foundry sand. Thus, there is no coverage for any claims in the underlying action— the Clems' or Hensley's—and the Court should grant summary judgment to Atlantic on all such claims.

WHEREFORE, Atlantic requests that the Court grant summary judgment as requested in its motion for summary judgment, as well as on all claims against LBJ and Ramirez in the underlying action, and further prays for general relief.

---

[2] Atlantic has included Hensley's cross-claims in the Appendix in Further Support of Atlantic's Motion for Summary Judgment, which appendix is filed with this reply.

[3] That is, if the Clems are right, LBJ and not Hensley, is responsible to the Clems for some or all of the damage.

**ATLANTIC'S REPLY TO LBJ'S RESPONSE TO**
**ATLANTIC'S MOTION FOR SUMMARY JUDGMENT**                                         Page 9

        Respectfully submitted,

        SAVRICK, SCHUMANN, JOHNSON, MCGARR,
        KAMINSKI & SHIRLEY, L.L.P.

By: _____
        Camille Johnson
        State Bar No. 10686600
        William A. Reece
        State Bar No. 16672990
        6440 N. Central Expwy., Suite 107
        Dallas, Texas 75206
        Phone: (214) 368-1515
        Fax: (214) 292-9647

        **ATTORNEYS FOR ATLANTIC CASUALTY
        INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 12th day of December, 2007, I electronically filed the foregoing response with the Clerk of Court for the U.S. District Court for the Northern District of Texas using the CM/ECF system, which will send notification of such filing to counsel of record.

_____
        William A. Reece