**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ATLANTIC CASUALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:07-CV-1297-O** |
| | § | |
| **ROBERT RAMIREZ, individually and** | § | |
| **d/b/a/ LBJ TRUCKING CO., INC.,** | § | |
| **LBJ TRUCKING CO., INC., CLEM'S** | § | |
| **YE OLDE HOMESTEAD FARMS, LTD.,** | § | |
| **BETTYE CRIDER CLEM, CLARENCE** | § | |
| **TRUMAN CLEM, KELLY CLEM, and** | § | |
| **CLARENCE T. "CASEY" CLEM, Jr.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's Order (doc. 36), "Clem Defendants' Motion to Dismiss Plaintiff Atlantic Casualty Insurance Company's Claims Against Them and Brief in Support" (doc. 15) has been referred to the United States Magistrate Judge for recommendation. A response was filed on October 14, 2007 (doc. 16), and a reply was filed on October 29, 2007 (doc. 20).

## BACKGROUND

On July 25, 2007, Plaintiff Atlantic Casualty Insurance Company ("Atlantic") brought this action against Defendants Robert Ramirez ("Ramirez") and LBJ Trucking Co., Inc. ("LBJ Trucking") (collectively, the "LBJ Defendants"), and Defendants Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem, and Clarence T. "Casey" Clem, Jr. (collectively, the "Clem Defendants"). (Pl.'s Compl. at 1.) Atlantic seeks a declaratory judgment concerning certain commercial general liability insurance policies between Atlantic and

1

the LBJ Defendants (the "Policies").

Atlantic insured LBJ Trucking, of which Ramirez is an officer or director, under commercial general liability policies. (Pl.'s Resp. to Def.'s Mot. Dismiss at 1.) The Clem Defendants hired Briscoe Land Reclamation to bring "clean fill material" to their land on Parker Road in Carrollton, Texas. (*Id.*) The LBJ Defendants allegedly transported the fill material to the Clem Defendants' land. (*Id.*) The Clem Defendants claim that the fill material was "foundry sand," which is allegedly unsuitable for the property. (*Id.*) As a result, the Clem Defendants sued the LBJ Defendants and others under federal pollution laws and state-law theories, including negligence ("Underlying Lawsuit"). (*Id.*)

Atlantic claims that the Policies do not cover the LBJ Defendants' wrongful actions because the Policies contain (1) a pollution exclusion provision, which excludes coverage for incidents of pollution, (2) a classification endorsement, which addresses coverage for a stated type or classification of work, and (3) a claims-in-process exclusion, which excludes coverage for events that occur before the policy period began. (*Id.* at 2.) Atlantic also claims that the Policies do not cover Ramirez acting individually before LBJ Trucking was formed. (*Id.*)

Ramirez and LBJ Trucking demanded defense and indemnity coverage under the Policies for the Underlying Lawsuit. (*Id.*) Atlantic has been paying the LBJ Defendants' defense in the Underlying Lawsuit under a reservation of rights, which reserved Atlantic's rights to challenge the coverage for the reasons previously listed. (*Id.*) Atlantic filed this lawsuit seeking a declaration from the Court that it does not have the duty to defend or indemnify the LBJ Defendants because their conduct was excluded under the Policies. (*Id.*) Because the Clem Defendants would be judgment creditors of the LBJ Defendants if the Underlying Lawsuit was decided in their favor,

Atlantic included them as defendants in this case, so they would be also bound by the decision. (*Id.* at 2–3.) The Clem Defendants filed a motion to dismiss Atlantic's claims against them for lack of jurisdiction, failure to state a claim, and/or in the Court's discretionary power to decline jurisdiction over a declaratory judgment action. The Clem Defendants argue that no actual controversy exists between the Clem Defendants and Atlantic and that they are not proper parties to this litigation. (Clem Def.'s Mot. Dismiss at 4.)

## STANDARD OF REVIEW

The Clem Defendants argue that Atlantic's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks jurisdiction over the matter. Federal courts are courts of limited jurisdiction. *See Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court must have statutory or constitutional powers to adjudicate a claim. *Id. See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).

A 12(b)(1) motion should only be granted if the plaintiff cannot prove "any set of facts in support of his claim . . . [that] would entitle him to relief." *Home Builders Assoc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In deciding whether subject matter jurisdiction exists, the court can "weight the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dept. of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947)). The Court can base its decision regarding jurisdiction on the complaint alone, the complaint supplemented by undisputed facts, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* (citing *Robinson v. TCI/US West Commc'ns., Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)). In other words, there

is no presumption of the truthfulness of the plaintiff's allegations when deciding a 12(b)(1) motion. *Id.*

The Clem Defendants also argue that Atlantic's claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should first consider the Rule 12(b)(1) motion in order to prevent the court from dismissing the case with prejudice without jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Both Defendant's Rule 12(b)(1) and Rule 12(b)(6) motions are based on the allegation that there is no case or controversy between the Clem Defendants and Atlantic. The determination of whether a case or controversy exists is jurisdictional. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937). Accordingly, the Court will consider whether the Clem Defendants' Rule 12(b)(1) motion to dismiss for want of jurisdiction should be granted.

## ANALYSIS

### I.

Federal courts are limited by Article III of the United States Constitution to hearing only "cases" and "controversies." *Shields v. Norton*, 289 F.3d 832, 834–35 (5th Cir. 2002). The case or controversy must also be ripe for decision. *Id.* at 835. The Declaratory Judgment Act provides: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2006). The Declaratory Judgment Act, therefore, recognizes and respects the constitutional limitation that federal courts only have jurisdiction over "cases" and "controversies." *Aetna*, 300

U.S. at 240. The Supreme Court in *Aetna Life* recognized that the "operation of the Declaratory Judgment Act is procedural only." *Id.* Therefore, in a declaratory judgment action based on diversity, "federal law governs whether a justiciable controversy exits within the purview of the Declaratory Judgment Act, 28 U.S.C. § 2201." *Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1025–26 (N.D. Tex. 1995).

A controversy in the constitutional sense is one that is appropriate for judicial determination. *Aetna Life*, 300 U.S. at 240. Even a declaratory judgment action, must be ripe for decision; it may not be premature or speculative. *Shields*, 289 F.3d at 835. To determine whether a case or controversy exits, the court must determine "whether the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (citing *Aetna*, 300 U.S. at 239–42).

## II.

The Clem Defendants claim that the Court lacks jurisdiction in this declaratory judgment action because no "actual controversy" exists between them and Atlantic. The Supreme Court granted certiorari on a case from the Sixth Circuit in order to resolve the conflict among the Circuit Courts of Appeals to determine whether in a declaratory judgment action brought by an insurance company against its insured and an injured party seeking a liability determination against the insured in a state court action constitutes an 'actual controversy' withing the meaning of the Declaratory Judgment Act. *See Maryland Casualty*, 312 U.S. at 272. Maryland Casualty Co. ("Maryland Casualty") had issued a conventional liability policy to its insured, Pacific Coal and Oil Co. ("Pacific Coal"). *Id.* at 271. As part of that policy, Maryland Casualty agreed to indemnify Pacific

Coal for any sums Pacific Coal might be required to pay third parties for injuries covered under the policy, and to defend Pacific Coal in any lawsuit brought as a result of these third party injuries. During the policy period, an employee of the insured was involved in a automobile accident with Joe Orteca ("Orteca"). *Id.* Orteca brought an action in an Ohio state court against Pacific Coal to recover damages for injuries resulting from the collision. *Id.* Before obtaining a judgment in this underlying lawsuit, Maryland Casualty brought a declaratory judgment action against Pacific Coal and Orteca. *Id.* Maryland Casualty sought a determination that it was not liable to defend or indemnify Pacific Coal because the wrongful conduct was not covered by the policy. *Id.* at 272. Orteca sought to have the complaint against him dismissed, claiming that it did not state a cause of action. *Id.*

The Supreme Court found that the facts alleged satisfied the test for determining that an 'actual controversy' exists because the injured party was (1) currently seeking a judgment against the insured, which the insured claims is covered by the policy, and (2) because Ohio law gives the injured party a statutory right to proceed against the insurer by supplemental process and action *if* the injured party obtains a final judgment against the insured, which the insured does not satisfy within thirty days. *Id.* at 273. The Supreme Court also noted that the injured party was able to perform conditions of the policy issued to the insured to prevent the policy from lapsing for the failure to perform such conditions. *Id.* The Supreme Court expressed concern that arriving at the opposite decision would result in possible contradictory interpretations of the insurance policy coverage in state and federal court. *Id.* at 274.

In arriving at this decision and attempting to resolve the split among the Circuit Courts of Appeal, the Supreme Court affirmed previous Fifth Circuit cases. *See id.* at 271 n. 1. For example,

in *Central Surety & Ins. Corp. v. Norris*, 103 F.2d 116 (5th Cir. 1939), the Fifth Circuit reversed the lower court's decision dismissing from a declaratory judgment action the injured parties who had brought suit against the insured in state court. *Central Surety*, 103 F.2d at 116. Like the Supreme Court in *Maryland Casualty*, the Fifth Circuit also determined that "it would be very inconvenient if the federal court should, these plaintiffs not being parties, decide that the policy does not apply, and the [insurance company] should not defend the actions and the plaintiffs should recover and then the State court should decide the policy does apply." *Id.* at 117. The Fifth Circuit, therefore, held that the injured parties, who are plaintiffs in state court litigation against the insured, had a "real and substantial though not immediate" interest in the question of whether the insurance company has a duty to indemnify the insured. *Id.* Accordingly, the injured parties were determined to be proper parties to the declaratory judgment action.

Shortly after the Supreme Court's decision in *Maryland Casualty*, the Fifth Circuit was again presented with a case in which the insurer sought a declaration against the insured and the injured party as to whether the injuries claimed to have been received were within the coverage of the insurance policy. *Standard Accident Insurance Company v. Meadows*, 125 F.2d 422 (5th Cir. 1942). In *Meadows*, the Fifth Circuit stated that "[i]t has been repeatedly held in this circuit and elsewhere that whether an insurer is bound [on] an automobile insurance policy by a judgment against its insured, presents a controversy for declaratory judgment as between it, its insured and the plaintiff in a damage suit against its insured." *Id.* at 423–24. As a result, the Fifth Circuit held that the dismissal of the state court plaintiffs from the declaratory judgment suit was plain error. *Id.* at 424.

In the present case, Atlantic has brought suit against both the LBJ Defendants and the Clem Defendants. Similar to *Maryland Casualty*, the Clem Defendants are currently seeking a judgment

against the LBJ Defendants, which the LBJ Defendants claim is covered by the Policies. Texas law also allows the Clem Defendants to proceed directly against Atlantic if the Clem Defendants obtain a judgment against the LBJ defendants, which is not satisfied. These facts were also present in *Meadows*, which held that in circumstances such as these an actual controversy exists between the insurer, insured, and injured party. Therefore, under similar facts, the United States Supreme Court and Fifth Circuit have both found that the facts alleged show that there is a substantial controversy between party with adverse interest of sufficient immediacy to warrant the issuance of a declaratory judgment.

## III.

Since the Fifth Circuit's opinion in *Meadows*, the Fifth Circuit has continued to affirm its decision that an injured party who has sued an insured, but not yet obtained judgment in a state court, is a proper party to a declaratory judgment action brought by the insurer in federal court.[1] Despite the Supreme Court and Fifth Circuit holdings, the Clem Defendants argue that they are not proper defendants in this case because final judgment has not been entered in the Underlying Lawsuit and because permitting the action to proceed "impermissibly alters the substantive relationship between the parties." (Clem Def.'s Mot Dismiss at 2.)

---

1. *See e.g.*, *Dairyland Insurance Co. v. Makover*, 654 F.2d 1120 (5th Cir. 1981). *Dairyland* dealt with the issue of whether potential judgment creditors in state court have standing to appeal the judicial declaration that the insurance policy does not cover the alleged insured. *Id.* at 1123. However, in determining that the potential judgment creditor has the right to appeal, the Fifth Circuit stated that "[i]t is decisive to our holding that Dairyland named the [injured parties] as defendants in its declaratory judgment action." *Id.* The Fifth Circuit continued "[i]n a declaratory judgment action brought by an insurer to determine coverage under a liability policy issued to the insured, third parties claiming liability in state tort suits against the insured have been held to be proper parties to the declaratory suit, even though their claim against the insurer was contingent upon recovery of a judgment against the insured. *Id.*

8

The Clem Defendants, in making this argument, rely primarily upon *Standard Fire Insurance Company v. Sassin*, 894 F. Supp. 1023 (N.D. Tex. 1995). In *Sassin*, two insurers, Standard Fire Insurance Company ("Standard Fire") and American Economy Insurance Company ("AEIC") brought a declaratory judgment action seeking a determination that they had no obligation to defend or indemnify the insureds, John Sassin and Betty Sue Goolsby Sassin (collectively, "the Sassins"), with regard to an underlying state court suit. *Sassin*, 894 F. Supp. at 1024. Standard Fire brought this action only against the Sassins, while AEIC sought a declaration as to both the Sassins and the plaintiffs in the underlying suit, known as "the Triplett Defendants." *Id.* The Triplett Defendants filed a motion to dismiss AEIC's claims and AEIC filed a motion for summary judgment. *Id.* Subsequently, AEIC dismissed its claims against the Sassins, leaving AEIC's only remaining claim its declaratory judgment action against the Triplett Defendants. *Id.* at 1025.

In *Sassin*, the question before the court was whether a controversy existed between the injured and the insurer. *Id.* AEIC argued that the Triplett Defendants' state court suit against the Sassins creates a justiciable controversy between the Triplett Defendants and AEIC. *Id.* In other words, AEIC claimed that the Triplett Defendants derived an interest in the declaratory judgment action from the underlying suit; thus, an actual controversy existed between AEIC and the Triplett Defendants. *Id.* To determine if the underlying suit creates an justiciable controversy between AEIC and the Triplett Defendants, it is necessary to consider the substantive rights of the parties in the underlying suit under state law. *Id.* at 1026 ("Consistent with *Maryland Casualty*, courts faced with declaratory judgment actions involving insurers and tort plaintiffs have acknowledge that state law, by defining the substantive rights of the parties, plays a large role in determining whether a case or controversy exists.") Therefore, because "substantive law governing the rights of the parties is

relevant to the Court's analysis," the court considered Texas substantive law to determine the rights of the parties in the underlying suit. *Id.*

Under Texas law, the *Sassin* court found that "unless and until judgment is entered against the Sassins in the state court suit, the Triplett Defendants will have no legally cognizable interest in the insurance contract between AEIC and the Sassins." *Id.* at 1027. In support of the court's conclusion, it noted that the Triplett Defendants are not parties to the insurance contract. *Id.* Texas law only allows non-parties to enforce an insurance contract if the non-party is a legally intended beneficiary of the contract. *Id.* However, the court noted that, in Texas, a person injured by the insured cannot recover from the insurer until a judgment is obtained against the insured. *Id.* Therefore, Texas law prohibits a plaintiff from bring a tort suit directly against the insurer. *Id.* As a result, the *Sassin* court noted that it would be unlikely to allow the plaintiff to bypass this state court prohibition and bring a declaratory judgment action in federal court to determine an insurer's duty to defend or indemnify the insured. *Id.* at 1027 n. 5. The injured party, therefore, does not derive any rights against the insurer in the underlying suit until judgment is obtained against the insured. *See id.* at 1027. Without deriving rights against the insurer from the underlying suit, the *Sassin* court held that no controversy existed between the insurer and the injured party. *Id.* at 1028. The insurer, therefore, could not bring a declaratory judgment action solely against the injured. *See id.*

The Clem Defendants contend that *Bituminous Casualty Corp. v. Garcia*, 223 F.R.D. 308 (N.D. Tex. 2004) affirms the courts holding in *Sassin* that potential judgment creditors in Texas have no legally cognizable interest in an insurance contract upon which to bring suit against the alleged tortfeasor's insurer. (Clem Def.'s Reply Support Mot. Dismiss at 1.) While the *Bituminous* court

acknowledges this as the holding of *Sassin*, it limits the holding to the facts presented in *Sassin*. *Btiuminous*, 223 F.R.D. at 311. The court, in *Bituminous*, recognizes that the insurer in *Sassin* voluntarily dismissed the insured. *Id.* As a result, the *Sassin* court had to determine if the underlying suit created a justiciable case or controversy between the insurer and the injured individual. *See id.* The *Bituminous* court found that because the insured was properly joined to the declaratory action, a case or controversy existed between the insurer and the insured. *Id.* The *Bituminous* court suggested that the injured party derived its rights in the declaratory judgment action from the insured, but concluded that because the injured party was seeking to intervene, it was not necessary to independently establish a case or controversy. *Id.* Accordingly, *Bituminous* distinguishes *Sassin* from cases where the insurer has joined the insured as a party to the declaratory judgment action. *Id.*

The present case is distinguishable from *Sassin*. Unlike *Sassin*, the insured in this case is properly joined as a party to the declaratory judgment action. Because the insured is joined as a party to this action, the question is not whether the injured party derives an interest in the declaratory judgment action from the underlying lawsuit, but rather whether the injured party derives any interest in the declaratory judgment action from the insured that is sufficient to create a justiciable controversy.

It is clear that in this case an actual controversy exists between Atlantic and the LBJ Defendants. The Court, therefore, must decide if the Clem Defendants derive an interest in that controversy from the LBJ Defendants. Courts have determined that in cases where both the insured and injured are joined as defendants in a declaratory judgment action by the insurer, the injured does derive such an interest. For example, in *National American Insurance Company v. Breaux*, 368 F.

Supp. 2d 604 (E.D. Tex. 2005), National American, the insurer, sought a declaratory judgment that it had no duty to defend or indemnify Breaux, the insured, for claims asserted against him by the Youngs, who are the plaintiffs in an underlying state suit. *Nat'l Am.*, 368 F. Supp. 2d at 607. The Youngs claimed that they were not proper parties to the declaratory judgment action because they are not in contractual privity with the insurer and because without a judgment in the underlying suit, no justiciable controversy exists between them and the insurer. *Id.*

The court in the Eastern District of Texas looked to Texas law to determine the substantive relationship between the injured and the insured. *Id.* at 620. The court found that, "in Texas, a party injured by an insured is viewed as a third-party beneficiary of a liability insurance policy." *Id.* (citing *State Farm County Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989)). As recognized in *Sassin*, the injured party cannot proceed directly against the insurer until judgment is entered against the insured. *Id.* However, because the insured is a party to the declaratory judgment action, it is irrelevant that the injured party cannot proceed directly against the insurer because the injured party derives his rights from the insured and not from the underlying litigation.

In *National American*, the Court found that privity existed between the insured and the injured party, through which the injured party derived an interest in the declaratory judgment action. *Id.* at 620–21. "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Id.* at 621 (quoting *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971)). In *National American*, "because the Youngs derive their right, *if any*, to collect insurance proceeds directly from the rights of the Breaux, they are deemed to be in privity by virtue of their shared legal interest." *Id.* (emphasis added). Therefore, it does not matter that the underlying judgment has not

yet been decided. Privity still exists through which the injured derives an interest in the declaratory judgment action. As a result, the court concluded that it may declare the "insurer's rights and legal relations with respect to both Breaux and the Youngs . . . due to the derivative nature of their right to recovery." *Id.* Therefore, the Youngs were found to be proper parties.

The Northern District of Texas has also adopted this approach. In *Century Surety Company v. Hardscape Construction Specialties, Inc.*, No. 4:05-CV-285-Y, 2006 WL 1948063 (N.D. Tex. July 13, 2006), Century Surety, the insurer, filed a declaratory judgment action against Hillwood, the injured, and Hardscape and Elite, the insured, seeking a determination that Century Surety has no duty to defend or to indemnify Hardscape or Elite in the action brought by Hillwood. *Century Surety*, 2006 WL 1948063, at *1. Similar to *National American*, *Century Surety* concluded that "because Hillwood derives its rights, if any, to collect insurance proceeds directly from the rights of Hardscape and Elite, Hillwood is deemed to be in privity by virtue of its shared legal interest." *Id.* at 5. Hillwood was therefore determined to be a proper party to the declaratory judgment action due to the derivative nature of its right to recovery. *Id.*

The same is true in the present case. Because the Clem Defendants were injured by the LBJ Defendants, Texas law considers them to be third-party beneficiaries. It does not matter that the Clem Defendants, as third-party beneficiaries, cannot initiate a lawsuit against Atlantic until they have obtained a judgment against the LBJ Defendants, because they do not derive their interest in the present litigation from the Underlying Lawsuit. Unlike *Sassin*, the insured is properly joined as a party to the declaratory judgment action. The Clem Defendants derive their right, if any, to collect insurance proceeds directly from the rights of the LBJ Defendants. Due to their shared legal interest, under Texas law, they are deemed to be in privity. Because both the LBJ Defendants and the Clem

Defendants are properly joined as parties in this declaratory judgment action, any declaration by the Court is binding on both parties. *Nat'l Am.*, 368 F. Supp. 2d at 620–21 ("Nevertheless, under Texas Law, a declaratory judgment action brought by an insurer is binding upon a third-party beneficiary to a liability insurance policy if properly joined as a party to such action").

The Clem Defendants also rely heavily on *Feria v. CU Lloyd's of Texas*, No. 05-00-01245-CV, 2001 WL 1263666 (Tex. App. - Dallas Oct. 23, 2001). In *Feria*, Feria, who was injured by the insured, sought to intervene in a declaratory judgment lawsuit brought by the insurer against the insured to determine the insurer's duty to defend the insured in an underlying suit brought by Feria. *Id.* at *1. The Texas Court of Appeals concluded that Feria does not have an interest in whether the insurer defends the insured in the underlying litigation. *Id.* at *2. She has no contractual rights under the insurance policy, and she cannot sue the insurer directly to force it to defend the insured. *Id.*

*Feria* is clearly distinguishable from the present case. While Atlantic seeks a declaration that it has no duty to defend the LBJ Defendants, it is also seeking a declaration that is has no duty to indemnify them. As discussed above, it is in the duty to indemnify that the Clem Defendants are interested.[2] The Clem Defendants derive this interest from the LBJ Defendants. Feria does not derive any interest in the duty to defend from the insured. Therefore, the Clem Defendant's reliance on *Feria* is misplaced.

## IV.

---

2. The Texas Supreme Court has held that the issue of indemnity is justiciable in a declaratory judgment action prior to the liability determination in the underlying suit. *Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 83–84 (Tex. 1997). Therefore, the Texas Supreme Court allowed a declaratory judgment action to proceed against both the insured and the injured party. *Id.*

Policy also supports the decision to allow a declaratory judgment action to proceed against an insured and an injured party to determine whether the wrongful conduct is covered under the insurance policy. The Fifth Circuit held, in *Ranger Insurance Company v. United Housing of New Mexico, Inc.*, 488 F.2d 682 (5th Cir. 1974), that the failure to join parties seeking damages for injuries caused by an insured in a declaratory judgment action seeking a determination that the policy does not provide coverage warrants dismissal of the action. *Ranger*, 488 F.2d at 684. In arriving at this decision, the Fifth Circuit found that the party injured by the insured would be prejudiced if he was not joined as a party to the declaratory judgment action. *Id.* at 683. If the injured party received judgment against the insured in the underlying suit, the injured party "would have to contend with the *stare decisis* effect of [the declaratory judgment], or [the injured party] might be forced to litigate its effect [in] the direct action." *Id.* Additionally, as stated above, the Supreme Court in *Maryland Casualty* and the Fifth Circuit in *Central Surety* found that if the party injured by the insured was determine to not be a proper party in the declaratory judgment action, then the risk existed that different courts would reach contradictory decisions regarding the coverage of the insurance policy. *Maryland Casualty*, 312 U.S. at 274; *Central Surety*, 103 F.2d at 116–17.

For these reasons, the Court concludes that an actual controversy, as required by Article III of the United States Constitution, exists between Atlantic, the LBJ Defendants, and the Clem Defendants. Because an actual controversy exits, the Court finds that Atlantic has proven that jurisdiction exits in this case. The Clem Defendants are proper parties to this declaratory judgment action and will be bound by the Court's declaration.

**V.**

The Clem Defendants also argue that the Court should exercise its discretionary power to decline jurisdiction over this declaratory judgment action. (Clem Def.'s Mot. Dismiss at 13.) A court can decline to exercise its declaratory judgment jurisdiction. *Pacific Employers Ins. Co. v. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) ("[I]t is a matter for the district court's sound discretion whether to decide a declaratory judgment action."). Although a district court may not dismiss requests for declaratory relief "on the basis of whim or personal disinclination," certain factors may warrant dismissal. *Sassin*, 894 F. Supp. at 1028 (citing *Travelers Ins. Co. v. Lousiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)). The Fifth Circuit has found that:

[I]n *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), this court identified seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action. These factors are:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003).

In the present case, the Underlying Lawsuit involves whether the LBJ Defendants are liable

for wrongful actions committed against the Clem Defendants. The issue of whether Atlantic has a duty to defend the LBJ Defendants or to indemnify them for their wrongful actions is not involved in the Underlying Lawsuit. Therefore, the issue before this Court on declaratory judgment will not be litigated in the Underlying Lawsuit. The First Circuit, in *Maryland Casualty Co. v. United Corporation*, 111 F.2d 443 (1st Cir. 1940) held that where the issue of whether the insurer had any obligation to defend or to indemnify the insured is not at issue in the underlying suit, "the application of an insurer for a declaratory judgment cannot be denied as a matter of discretion." *United Corp.*, 111 F.2d at 446 (citing *Maryland Casualty Co. v. Consumers Finance Service, Inc.*, 101 F.2d 514, 516 (3d 1938)). In *Sherwin-Williams*, the Fifth Circuit declined to adopt a *per se* rule requiring the district court to hear a declaratory judgment action where there is no pending parallel proceeding. *Sherwin-Williams*, 343 F.3d at 394. However, the Fifth Circuit stated that "[t]he absense of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action." *Id.* The Fifth Circuit went on to note that the absence of related pending litigation "is a factor that weighs strongly against dismissal." *Id.*

Moreover, while Atlantic may have anticipated a future lawsuit brought by the Clem Defendants, this does not require the court to dismiss the action. As Atlantic correctly points out, "A proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires. The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court." *Id.* at 397. Moreover, the Texas Supreme Court affirmed its prior decision in *State Farm Fire & Casualty Company v. Gandy*, 925 S.W.2d 696 (Tex. 1996), which held that insurers have a duty to resolve coverage disputes before judgment is rendered in the

underlying suit. *Griffin*, 955 S.W.2d at 84. Thus, under Texas law, Atlantic is required to make a good faith effort to resolve coverage disputes before judgment is rendered in the underlying suit. Accordingly, Atlantic had other motivation behind bringing this declaratory judgment action separate from its anticipation that the Clem Defendants may initiate litigation in the future.

There is also no evidence that the Clem Defendants are engaged in forum shopping. The Fifth Circuit has noted that "[d]espite the fact that plaintiff may have predicted that there would be a related suit filed . . . (making the federal suit "anticipatory"), 'without more, we cannot say that the [declaratory plaintiff's] action is an instance of forum-shopping instead of a reasonable assertion of its rights under the declaratory judgment statute and diversity jurisdiction.'" *Sherwin-Williams*, 343 F.3d at 398 (quoting *U.S. Ins. Co. V. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)). There is no indication that Atlantic filed this suit in search of more favorable law. Instead, Atlantic is exercising its own rights under the Declaratory Judgment Act.

The Clem Defendants argue that by allowing Atlantic to proceed with this action, "the Clem Defendants are powerless to take any affirmative action, [and] Atlantic gains control of the litigation, determin[es] when the declaratory action is filed, where it is filed, what scope of declaration is sought, and other matters particularly in the purview of a plaintiff." (Clem Def.'s Mot. Dismiss at 15.) The Court does not find it inequitable to allow the declaratory plaintiff to gain precedence in time or to change forums under the circumstances of this case. As previously stated, Atlantic properly filed this declaratory judgment action. The Clem Defendants derive an interest in this litigation from the insured. Because the Clem Defendants are properly joined as parties to this litigation, they have the right to participate fully in a coverage determination. The Clem Defendants also argue that multiple insurers are involved in the Underlying Lawsuit, which may

result in multiple actions for declaratory judgments.  While this may be true, given that insurers have a duty under Texas law to resolve coverage disputes, and the additional reasons behind allowing these actions to proceed against both the insured and the injured party, the Court finds that the possible inequities are insufficient for the Court to decline to exercise jurisdiction over this matter.

The Clem Defendants also claim that judicial economy would be best served by declining jurisdiction over this matter.  This argument in unpersuasive.  As discussed above, judicial economy is best achieved by exercising jurisdiction in this matter.  Should the court decline to exercise its jurisdiction over the Clem Defendants in this case, the Clem Defendants would not be bound by the decision the Court makes regarding the duty to indemnify.  This issue would have to be re-litigated in another court should the Clem Defendants prevail in the Underlying Lawsuit.  This could result in contradictory interpretations of the Policies.  Therefore, judicial economy is best served by exercising jurisdiction.

It is undisputed that the Northern District of Texas is a convenient forum.  The witnesses and parties reside in Carrollton, Texas.  Therefore, this factor weighs against declining to exercise jurisdiction.

Finally, the Court is not being asked to construe a state judicial decree involving the same parties and entered by the court before whom the underlying suit between the same parties is pending.  There is no judicial decree involved in this case, and Atlantic is not a party to the Underlying Lawsuit.  Accordingly, this factor also weighs in favor of exercising jurisdiction in this case.

## CONCLUSION

This case presents an actual controversy, as required by the United States Constitution.  The

Clem Defendants are proper parties to this declaratory judgment action.  Jurisdiction is, therefore, proper and Atlantic states a claim for a declaratory judgment.  There is not a sufficient basis for the Court to decline to exercise jurisdiction in this case.  For these reasons, the Court recommends that the District Court **DENY** the Clem Defendants' Motion to Dismiss.

       **SO ORDERED.**  May 12, 2008.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).