**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ATLANTIC CASUALTY INSURANCE COMPANY,** | § § § | |
| **Plaintiff,** | § | |
| **v.** | § § | **Civil Action No. 3:07-CV-1297-O** |
| | | **ECF** |
| **ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, and CLARENCE T. "CASEY" CLEM, JR.,** | § § § § § § § § § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's Order (doc. 36), Plaintiff Atlantic Casualty Insurance Company's ("Atlantic") Motion for Summary Judgment (doc. 17) has been referred to the United States Magistrate Judge for hearing, if necessary, and recommendation. Defendants Robert Ramirez and LBJ Trucking, Co., Inc. (collectively the "LBJ Defendants") filed a response on November 27, 2007 (doc. 24). Atlantic replied to this response on December 12, 2007 (doc. 27). Atlantic also filed Objections to and Motion to Strike the LBJ Defendant's Summary Judgment Evidence (doc. 29), which is also before this Court. The LBJ Defendants responded to this motion on January 11, 2008 (doc.32) and Atlantic replied on January 17, 2008 (doc. 33).

After being granted a continuance, Defendants Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem, and Clarence T. "Casey" Clem, Jr. (collectively the "Clem Defendants") filed their response on June 13, 2008 (doc. 46). This response

was amended on July 9, 2008 (doc. 51) after being granted leave by the Court. On July 24, 2008, Atlantic replied to this amended response (doc. 24).

After considering the arguments, this Court recommends that the District Court **GRANT** Atlantic's motion for summary judgment.

## BACKGROUND

On July 25, 2007, Atlantic brought this action against the LBJ and Clem Defendants. (Pl.'s Compl. at 1.) Atlantic seeks a declaratory judgment concerning certain commercial general liability insurance policies between Atlantic and the LBJ Defendants (the "Policies").

Atlantic insured LBJ Trucking, of which Ramirez is an officer or director, under commercial general liability policies. (Pl.'s Br. Support Mot. Summ. J. at 3.) The Clem Defendants hired Briscoe Land Reclamation to bring "clean fill material" to their land on Parker Road in Carrollton, Texas. (*Id.* at 2.) The LBJ Defendants allegedly transported the fill material to the Clem Defendants' land. (*Id.*) The Clem Defendants claim that the fill material was "solid waste (as defined under federal law and Texas law . . .), including without limitation foundry sand and other foundry refuse . . . as well as brush, trees, wood grindings (sometimes referred to as mulch or compost), other woody materials, and construction and demolition debris." (Clem Def.'s Fourth Amend. Compl. at 1.) The Clem Defendants allege that these materials "present an imminent and substantial endangerment to individuals and the environment." (*Id.* at 9.) As a result, the Clem Defendants sued the LBJ Defendants and others for violations of the federal Resource Conservation Recovery Act ("RCRA"), violations of the Texas Health and Safety Code, and under Texas common

law for nuisance, negligence, and trespass. ("Underlying Lawsuit").[1] (*See generally id.*) The Clem Defendants seek damages, injunctive relief, civil penalties, punitive damages, costs, and attorney's fees. (*Id.* at 23.)

The LBJ Defendants demanded defense and indemnity coverage under the Policies for the Underlying Lawsuit. (Pl.'s Br. Support Mot. Summ. J. at 3.) Atlantic has been paying the LBJ Defendants' defense in the Underlying Lawsuit under a reservation of rights, which reserved Atlantic's rights to challenge the coverage. (*Id.*) Atlantic filed this lawsuit seeking a declaration from the Court that it does not have the duty to defend or indemnify the LBJ Defendants because their conduct was excluded under the Policies. (*Id.*) Atlantic now moves for summary judgment.

## STANDARD OF REVIEW

The Court should only grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court views the facts in the light most favorable to the non-moving party. *Whittaker v. BellSouth Telecomm., Inc.*, 206 F.3d 532, 534 (5th Cir. 2000). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the non-movant bears the burden of proof at trial, the summary judgment movant may satisfy his burden by pointing

---

1. *Clem's Ye Olde Homestead Farms, Ltd., et al. v. Briscoe, et al*, No. 4:07-CV-285-RAS-DDB (E.D. Tex.), filed June 12, 2007.

to the absence of evidence supporting the non-movant's case. *Whittaker*, 206 F.3d at 534. At this point, the non-movant must show that summary judgment is not appropriate by going beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* Mere conclusory allegations or denials unsupported by specific facts are not enough. *Id.* There must be evidence giving rise to reasonable inferences that support the non-moving party's position. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). The material facts in this case are not disputed.

## ANALYSIS

Atlantic seeks summary judgment on its claim that it does not have a duty to defend or to indemnify the LBJ Defendants against claims brought by the Clem Defendants in the Underlying Lawsuit. Atlantic argues that the Policies do not cover the LBJ Defendants' wrongful actions because the Policies contain both a pollution exclusion provision, which excludes coverage for incidents of pollution, and a claims-in-process exclusion, which excludes coverage for events that occur before the policy period began. (Pl.'s Br. Support Mot. Summ. J. at 4.) Atlantic also claims that the Texas common law "fortuitous loss" doctrine, which precludes coverage when the alleged injury began prior to the insurance coverage inception date, prohibits Atlantic's duty to defend or to indemnify. (*Id.* at 5.)

"Texas follows the 'eight corners' rule of insurance contract interpretation. The insurer's duty to defend is determined by the underlying plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *Noble Energy Inc. v. Bituminous Casualty Co.*, 529 F.3d 642, No. 07-20354, 2008 U.S. App. LEXIS 11757, at *7 (5th Cir. June 2, 2008) (citing *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 448 (5th Cir.

2007), amended on rehearing by No. 06-20335, 2008 U.S. App. LEXIS 8720, 2008 WL 1799963 (5th Cir. Apr. 22, 2008). The insurer has a duty to defend when the facts alleged in the pleadings potentially fall within the scope of coverage. *Id.* All doubt is resolved in favor of coverage. *Id.* However, if the complaint in the underlying suit does not allege facts within the scope of coverage, the insurer is not required to defend a suit brought against the insured. *Clarendon Am. Ins. Co. v. Bay, Inc.*, 10 F. Supp. 2d 736, 740 (S.D. Tex. 1998). The initial burden is on the insured to show that coverage exists. *Noble Energy*, 2008 U.S. App. LEXIS 11757, at *7. Once this has been shown, the burden shifts to the insurer to show the applicability of a policy exclusion. *Id.*

Under Texas law, the rules of interpretation and construction applicable to contracts generally also control insurance policies. *Id.* The Court is limited to the language of the policy when it is unambiguous. *See id.* at 8 (*Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). In other words, extrinsic evidence cannot be presented when the policy language can be given a definite or certain legal meaning. *See id.* (citing *Nat'l Union*, 907 S.W.2d at 520). However, extrinsic evidence can be considered when the language of the policy is subject to two or more reasonable interpretations. *See id.* (citing *Nat'l Union*, 907 S.W.2d at 520). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* (citing *Nat'l Union*, 907 S.W.2d at 520).

An ambiguity can either be "patent" or "latent." *Nat'l Union*, 907 S.W.2d at 520. A patent ambiguity exists on the fact of the contract. *Id.* (citing *Universal home Builders, Inc. v. Farmer*, 375 S.W.2d 737, 742 (Tex. Civ. App. - Tyler 1964, no writ). "A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an

ambiguity appears by reason of some collateral matter. *Id.* (citing *Murphy v. Dilworth*, 151 S.W.2d 1004 (Tex. 1941)). If an ambiguity exists, it must be evident when the contract is read in the context of the surrounding circumstances. *Id.* at 521. In other words, parol evidence cannot be admitted to create an ambiguity. *Id.* Therefore, to determine a latent ambiguity the court applies the facts alleged in the complaint to the insurance policy. *See id.*

## A. Pollution Exclusion

On its face, the language of the policy is clear and is, therefore, not patently ambiguous. The pollution exclusion provision states:

> *Exclusion f. under Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability is replaced by the following.*
>
> *This insurance does not apply to:*
>
> *f. Pollution*
>
> *(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.*
>
> *(2) Any loss, or expense arising out of any:*
>
> > *(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or*
> >
> > *(b) Claim or suit by or behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."*

(Pl.'s Br. In Support Mot. Summ. J. at App. 59, 100.) The initial 2004-2005 policy defines "pollutants" as:

> *Any solid, liquid, gaseous or thermal irritant or contaminant, including smoke,*

> *vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.*

(*Id.* at App. 52.) The 2005-2006 renewal policy defines "pollutants" as:

> *"Pollutants" means solid, liquid, gaseous, or thermal irritant or contaminant or all material for which a Material Safety Data Sheet is required pursuant to federal, state or local laws, where ever discharged, dispersed, seeping, migrating or released, including onto or into the air or any air supply, water or any water supply or land, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, sewage; and associated smoke, vapor, soot, fumes from said substance. Waste includes materials to be recycled, reconditioned, or reclaimed.*

(*Id.* at App. 100.)

When construing insurance policy provisions that are identical across jurisdictions, courts usually strive for uniformity. *Nat'l Union*, 907 S.W.2d at 522. The language of the absolute pollution exclusion at issue has been examined by numerous courts. *See e.g.*, *Noble Energy*, 2008 U.S. App. LEXIS 11757, at *9. Of these courts, including those in Texas and the Fifth Circuit, the majority have concluded that such language is clear and unambiguous on its face. *Id.* at 522. *See also*, *Noble Energy*, 2008 U.S. App. LEXIS 11757, at *9 ("Texas courts have consistently held similar pollution exclusions to be unambiguous. Like those courts, we hold the pollution exclusion here at issue to be unambiguous."); *Hydro Tank*, 497 F.3d at 448. The Court finds that this pollution exclusion is not patently ambiguous. The pollutant exclusion precludes all coverage of any liability caused by pollutants. *See Constitution State Insurance Co. v. Iso-Tex, Inc.*, 61 F.3d 405, 409 (5th Cir. 1995).

Because this provision is not patently ambiguous, the Court considers whether a latent ambiguity exists. The Clem Defendants make two arguments as to why latent ambiguities exist in the pollution exclusion. First, they claim that the materials do not qualify as pollutants. They next

argue that the direct deposit of these materials is not included in the pollution exclusion because it prohibits coverage only for damages "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" (Clem Def.'s Amend. Resp. at App. 27.)

### 1. Materials as Pollutants

Neither Texas nor Fifth Circuit courts have specifically determined whether the solid waste and other substances at issue are pollutants, but these courts have analyzed other materials under similar pollutant exclusions. For example, the Fifth Circuit recently found that Basic Sediment and Water, which was characterized as unwanted waste material in the underlying complaint, to indisputably meet a similar policy definition of pollutant. *Noble Energy*, 2008 U.S. App. LEXIS 11757, at *11. The Fifth Circuit held that "[i]n the policy's pollution exclusion, 'waste' is plainly identified as constituting a pollutant." *Id.* at *16.

Under this reasoning, the materials in the Underlying Lawsuit would also constitute pollution. The Clem Defendants classified the materials at issue as "solid waste (as defined under federal law and Texas law . . .), including without limitation foundry sand and other foundry refuse . . . as well as brush, trees, wood grindings (sometimes referred to as mulch or compost), other woody materials, and construction and demolition debris." (Clem Def.'s Fourth Amend Compl. at 1.)[2] The Clem Defendants allege that this material presences an imminent and substantial endangerment to individuals and the environment. (*Id.* at 9.) Because of this, the Clem Defendants brought this Underlying Lawsuit to clean up the property. (*Id.* at 1.)

---

2. The Clem Defendants have amended their complaint in the Underlying Lawsuit several times. The Fourth Amended Complaint is currently the live pleading; therefore, the Court uses the allegations alleged in that complaint.

The Court cannot question the validity of these claims. The Clem Defendants admit that these materials qualify as waste, but argue that not all waste is a pollutant. They instead claim that waste must also be an irritant or contaminant in order to qualify as a pollutant under the policy.[3] Even if the courts accepts the Clem Defendants' argument that the term waste is somehow limited to only include waste that is also an irritant or contaminant, the solid waste and other substances are contaminants under the plain meaning of the word. A contaminant is defined as something that contaminates. AMERICAN HERITAGE COLLEGE DICTIONARY 309 (Benjamin W. Fortson, et al. eds., Houghton-Mifflin Co. 4th ed. 2002). To contaminate is to make impure or unclean by contact or mixture. *Id.* The Clem Defendants allege that the solid waste and other materials made their land unclean. The purpose of the Underlying Lawsuit is to "clean up the homestead farm of the Clem family." (Clem Def.'s Fourth Amend. Compl. at 1.) Therefore, under the plain definition, the allegations made by the Clem Defendants fall squarely into the pollution exclusion. Not only are the materials at issue waste, they are also contaminants. Therefore, reading the policy in light of the facts surrounding the Fourth Amended Complaint in the Underlying Lawsuit, the Court finds that the materials at issue are properly classified as pollutants under the policy. The Clem Defendants describe these materials as waste that has made the land unclean by placing individuals in imminent and substantial dangers. Accordingly, no ambiguity exits when applying this pollution exclusion

---

3. The court has considered the cases cited to by the Clem Defendants in their brief. In support of their argument, the Clem Defendants point the court to cases from various jurisdictions arguing that the Court should find this policy latently ambiguous. The court recognizes that a split has developed among courts as to when an ambiguity exists in the policy as related to specific facts. Because these cases are not binding on this court, the court finds that they are not persuasive. Instead, the court follows the Texas and Fifth Circuit cases, which hold that similar pollution exclusions do not have patent or latent ambiguities when the complaint alleges facts that are included in the policy.

to the facts alleged in the Underlying Lawsuit Complaint.

Moreover, any evidence submitted to show that the waste material was not an irritant or contaminant is not admissible. While the Clem Defendants did not offer any reasoning as to why these materials are not contaminants in spite of their allegations that they made the land unsuitable, the LBJ Defendants did. The LBJ Defendants, in their response, submitted evidence challenging whether the materials classify as a contaminant. Extrinsic evidence is only admissible when "it is initially impossible to discern whether coverage is potentially implicated," and "when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co.*, 363 F.3d at 528. Not only is there no ambiguity that would make it impossible to determine if coverage is implicated, but allowing evidence to determine if the waste is also an irritant or contaminant would call into question the Clem Defendants' allegations that the materials made the land unsuitable. Accordingly, this evidence is not admissible and must be stricken.

### 2. The Materials Did Discharge, Disperse, Seep, Migrate, Release, or Escape

The Clem Defendants also argue that the pollution exclusions is not applicable because the damages occurred by the direct deposit of the waste and other materials on the property. (Clem Def.'s Amend. Resp. at App. 27.) According to the Clem Defendants, the direct deposit of materials is not included in the pollution exclusion, which prohibits coverage for damages "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" (*Id.*) In support of this argument, the Clem Defendants rely on *Clarendon American Insurance Company v. Bay*, 10 F. Supp. 2d 736 (S.D. Tex. 1998). In *Clarendon*, the plaintiffs in the underlying lawsuit alleged in their complaint that they

were injured through prolonged exposure of their skin to cement, by breathing the fumes, and through substances entering their bodies through their skin, eyes, and lungs. *Clarendon*, 10 F. Supp. 2d at 738. The pollution exclusion in *Claredon* was nearly identical to the present case. The underlying lawsuit plaintiffs in *Claredon* also argued that the damages did not occurred from the "discharge, dispersal, . . . migration, release or escape of pollutants. . . ." *Id.* at 744. The court found this exclusion unambiguous as applied to the majority of the underlying plaintiffs' claims. *Id.* For example, the *Clarendon* court found that injuries suffered "as a result of contacting and inhaling the toxic ingredients, dust, and particulate" were included in the terms of the pollution exclusion. *Id.* The court, however, found that an ambiguity existed when the exclusion was applied to the underlying plaintiffs' claims that "they often exposed different portions of their bodies to the wet cement," and "contact wet cement." *Id.* The Clem Defendants likewise argue that an ambiguity exists in this case because the LBJ Defendants directly deposited the materials into the land. The Clem Defendants claim that the damages were caused by the mere presence of the materials, which were directly placed in the property. They argue that the court in *Claredon* held that it is ambiguous as to whether injuries such as these, which result from direct contact with the pollutant are included in the this provision.

This argument, however, is misplaced. The *Clarendon* court did not find that all injuries resulting from direct contact are ambiguous under this provision. Instead, the court found that it was unable to determine from the underlying pleadings whether the "injury caused by such contact or exposure occurred when the plaintiffs' skin touched the wet cement and concrete while the cement and its ingredients were in the cement's intended container or location." *Clarendon*, at 744. The court in *Claredon* stated that if the injuries occurred while the pollutant was in its intended container

or location, the injuries did not stem from the "discharge, dispersal, seepage, migration, release or escape of pollutants." *Id.* As a result, the court found a latent ambiguity. *Id.*

The distinction, therefore, is not whether the injury was caused by direct contact, but rather whether the injury was caused by a pollutant in its intended container or location. *See id.* The *Claredon* court found no ambiguity when the injury was caused by contact with a pollutant outside its intended container or location. *See id.* The damages alleged by the Clem Defendants were caused by the LBJ Defendants transporting and dumping the pollutant into the Clem Defendants' property. The pollutant was, therefore, not in a secured container or location when it caused harm to individuals and to the environment. The Court finds that it is unambiguous that the injuries alleged in the Underlying Complaint were, therefore, caused by the "discharge, dispersal, seepage, migration, release or escape of pollutants.

**B. Duty to Defend Counter-Claims**

In their response, the LBJ Defendants argue that even if the Court found that the Policies do not cover LBJ Defendants for the Clem Defendants' claims, Atlantic would still have a duty to defend the LBJ Defendants against counterclaims asserted by Hensley Industries ("Hensley"), another defendant in the Underlying Lawsuit. (LBJ Def.'s Resp. at 5.) In Atlantic's complaint, it seeks "a declaration from this Court that it has no duty to defend or indemnify Robert Ramirez or LBJ Trucking or any other insured of Defendant for the claims asserted by the *Underlying Plaintiffs* in the Underlying Lawsuit." (Pl.'s Compl. at 8, 20.) There is nothing in Atlantic's complaint asking for any decision regarding any cross or counterclaims in the Underlying Lawsuit. As a result, Atlantic's duty to defend or to indemnify the LBJ Defendants as to any claims other than those brought by the Clem Defendants are not properly before this Court, and the Court makes no

determination on those claims.

## C. Duty To Indemnify

The duties to defend and to indemnify are separate. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). "Unlike the duty to defend, which is based on the allegations in the petition, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit." *Evanston Ins. Co. v. Adkins,* No. 3:05-CV-2068-L, 2006 WL 2848054, at *3 (N.D. Tex. 2006) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997). There may be an initial duty of the insurer to defend the insured, but it may later be determined that the insurer has no duty to indemnify. *Farmers Tex.*, 955 S.W.2d at 82. However, if there is no duty to defend, there is also no duty to indemnify. *Id.* Thus, because the Court finds that there is no duty to defend, it also finds that there is no duty to indemnify.

## CONCLUSION

The Court finds that the pollution exclusion in the policy is both patently and latently unambiguous. Because the pollution exclusion is unambiguous Atlantic's Objections to and Motion to Strike LJB's Summary Judgment Evidence (doc. 29) is **GRANTED.** After considering only the Clem Defendant's pleadings and the policy provisions, the Court finds that Atlantic has no duty to defend or to indemnify the LBJ Defendants against the Clem Defenants' claims in the Underlying Lawsuit. In light of this finding, the Court need not consider Atlantic's arguments that it has no duty to defend or indemnify under the claims in process exclusion or under the Texas common law "fortuitous loss" doctrine. Therefore, the Court recommends that the District Court **GRANT**

Atlantic's Motion for Summary Judgment (doc. 17).

**SO ORDERED.**  August 5, 2008.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).