IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| vs. | § § § | |
| ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, CLARENCE T. "CASEY" CLEM, JR., ET AL. | § § § § § § § § § § § | Civil Action No.  3:07-CV-1297-O |
| Defendants. | | |

CLEMS' MOTION TO DISMISS CLAIMS AGAINST THEM
IN ATLANTIC CASUALTY'S FIRST AMENDED
COMPLAINT SEEKING DECLARATORY JUDGMENT, AND BRIEF IN SUPPORT

Vincent J. Hess
Texas State Bar. No. 09549417
vhess@lockelord.com
Abigail B. Moore
Texas State Bar No. 24037133
abmoore@lockelord.com
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000 (telephone)
(214) 740-8800 (telecopy)

*Attorneys for Defendants Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem,
Clarence Truman Clem, Kelly Clem, and Clarence T. "Casey" Clem, Jr.*

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ......................................................................................................2

II.    FACTUAL BACKGROUND .....................................................................................3

III.   ARGUMENTS AND AUTHORITIES.......................................................................5

     A.      The Declaratory Judgment Action Against the Clems Should Be Dismissed Under Rule 12(b)(1) Because No Actual Present Controversy Exists. ...................5

          1.      Standard Under Fed. R. Civ. P. 12(b)(1). .....................................................5

          2.      Atlantic Has Failed to Meet Its Burden to Establish That Subject Matter Jurisdiction Exists Over the Clem Defendants.................................6

          3.      Atlantic has failed to meet its burden to show that there is no possible set of facts in the Underlying Lawsuit under which Atlantic would ever have a duty to indemnify.....................................................................11

     B.      The Claims Against the Clems Should Be Dismissed Under Rule 12(b)(6) Because Atlantic Has Failed to State A Claim Upon Which Relief Can Be Granted. ..............................................................................................................14

          1.      Standard Under Fed. R. Civ. P. 12(b)(6). ...................................................14

          2.      Because the Clems Are Not Proper Parties, Atlantic Has Failed to Provide Allegations That Raise a Right to Relief Above the Speculative Level.......................................................................................14

     C.      Finally, the Declaratory Judgment Action Against the Clems Should Be Dismissed Under the Court's Discretionary Power to Decline Jurisdiction Over a Particular Declaratory Judgment Action.....................................................16

          1.      Standard to Decline Jurisdiction Over Declaratory Judgment Claim Based on Discretion. ..................................................................................16

          2.      Several Factors Support the Court's Exercise of Its Discretionary Power to Decline Jurisdiction. ....................................................................17

IV.   CONCLUSION AND PRAYER FOR RELIEF .................................................20

## **TABLE OF AUTHORITIES**

Page(s)

### **Federal Cases**

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937) ...............................................................................................................6

*Armstrong v. Harris,*
    Civ. A. No. 3:01-CV-1722L, 2002 WL 31245377 (N.D. Tex. 2002) ..............................15

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) .......................................................................................................14

*Bituminous Cas. Corp. v. Garcia,*
    223 F.R.D. 308 (N.D. Tex. 2004).........................................................................................9

*Campbell v. City of San Antonio,*
    43 F.3d 973, 975 (5th Cir. 1995) .......................................................................................15

*Century Surety Co. v. Hardscape Constr. Specialties, Inc.,*
    Civ. A. 4:05-CV-285, 2006 WL 1948063 (N.D. Tex. 2006) (not published) ....................8

*Den Norske Stats Oljeselskap As v. HeereMac Vof,*
    241 F.3d 420 (5th Cir.), *cert. denied,* 122 S. Ct. 1059 (2002) ...........................................6

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,*
    No. 08-50042, 2008 WL 2955568, at *1 n.6 (5th Cir. Aug. 4, 2008) ...............................12

*Home Builders Assoc., Inc. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998) ............................................................................................5

*Hunt v. State Farm Mut. Auto. Ins. Co.,*
    655 F. Supp. 284 (D. Nev. 1987) ........................................................................................7

*Kokkonen v. Guardian Life Ins. Co.,*
    511 U.S. 375 (1991) .............................................................................................................6

*MacMillan-Bloedel, Inc. v. Firemen's Fund Ins. Co.,*
    558 F. Supp. 596 (S.D. Ala. 1983) .................................................................................7, 11

*Maryland Cas. Co.. Pacific Coal & Oil Co.*,
   312 U.S. 270 (1941) ............................................................................................................7

*Mercantile Nat'l Bank v. Bradford Trust Co.*,
   850 F.2d 215 (5th Cir. 1988) .........................................................................................19

*Mission Ins. Co. v. Puritan Fashions Corp.*,
   706 F.2d 599 (5th Cir. 1983) .........................................................................................16

*Northfield Ins. Co. v. Loving Home Care, Inc.*,
   363 F.3d 523, 536 (5th Cir. 2004) .................................................................................12

*Orix Credit Alliance, Inc. v. Wolfe*,
   212 F.3d 891 (5th Cir. 2000) .........................................................................................15

*Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*,
   751 F.2d 801 (5th Cir. 1985) .........................................................................................16

*Rowan Cos., Inc. v. Griffin*,
   876 F.2d 26 (5th Cir. 1989) ...........................................................................................16

*Standard Fire Ins. Co. v. Sassin*,
   894 F. Supp. 1023 (N.D. Tex. 1985) .............................4, 5, 6, 7, 8, 10, 11, 16, 17, 18, 20

*Stockman v. Federal Election Comm'n*,
   138 F.3d 144 (5th Cir. 1998) .........................................................................................6

*Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*,
   996 F.2d 774 (5th Cir. 1993) .........................................................................................17

*United Transp. Union v. Foster*,
   205 F.3d 851 (5th Cir. 2000) .........................................................................................15

*Veldhoen v. United States Coast Guard*,
   35 F.3d 222 (5th Cir. 1994) .............................................................................................6

*Vermont Mut. Ins. Co. v. Everette*,
   875 F. Supp. 1181 (E.D. Va. 1995) .................................................................................7

*Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlvankia, L.L.P.*,
   267 F. Supp. 2d 601, 626 (E.D. Tex. 2003).....................................................................11

*Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991) .................................................6

## State Cases

*Allstate Ins. Co. v .Watson,*
   876 S.W.2d 145 (Tex. 1994) .............................................................................8

*Cain v. Rust Indus. Cleaning Servs.,*
   969 S.W.2d 464 (Tex. App.-Texarkana 1998, pet. denied)................................13

*Farmers Texas Co. Mut. Ins. Co. v. Griffin,*
   955 S.W.2d 81 (Tex. 1997) ..........................................................................8, 9

*Feria v. CU Lloyd's of Texas,*
   No. 05-00-01245-CV, 2001 WL 1263666 (Tex. App.—Dallas 2001,
   no pet.) ........................................................................................4, 9, 10, 11, 18

*Foust v. Ranger Ins. Co.,*
   *975 S.W.2d 329* (Tex. App.-San Antonio 1998, pet. denied) .....................11, 12

*Gracida v. Tagle,*
   946 S.W.2d 504 (Tex. App.-Corpus Christi 1997, orig. proceeding) ...........8, 15

*Montgomery Cty. v. Fuqua,*
   22 S.W.3d 662 (Tex. App.-Beaumont 2000, pet. denied) ................................13

*Owens v. Allstate Ins. Co.,*
   996 S.W.2d 207 (Tex. App.-Dallas 1998, pet. denied) ......................................9

*Pentagon Enters. v. Southwestern Bell Tel. Co.,*
   540 S.W.2d 477 (Tex. App.—Houston [14[th] Dist.] 1976, writ ref'd n.r.e.) .....................13

*Richardson v. State Farm Lloyd's Ins.,*
   Case No. 2-04-072-CV, 2007 WL 1018651 (Tex. App.-Fort Worth 2007, pet.
   denied) .........................................................................................................8, 9

*Russell v. Hartford Cas. Ins. Co.,*
   548 S.W.2d 737 (Tex. Civ. App.-Austin 1977, writ ref'd n.r.e.).........................8

*State and County Mut. Fire Ins. Co. v. Walker,*
   228 S.W.3d 404 (Tex. App.—Fort Worth 2007, no pet.) ..................................7

*Wilen v. Falkenstein,*
   191 S.W.3d 791 (Tex. App.—Fort Worth 2006, pet. denied) ...........................13

## Constitution

U.S. Const. Art. III, § 2..........................................................................................................................5

## Statutes And Rules

Fed. R. Civ. P. 12(b)(1).................................................................................................2, 3, 5, 14, 20

Fed. R. Civ. P. 12(b)(6)............................................................................................2, 3, 14, 15, 20

Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 .............................................................2

Tex. R. Civ. P. 51.................................................................................................................................7

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and this Court's discretionary powers to dismiss declaratory judgment claims, Defendants Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem, and Clarence T. "Casey" Clem, Jr. (collectively, the "Clems") file Clems' Motion to Dismiss Claims Against Them in Atlantic Casualty's First Amended Complaint Seeking Declaratory Judgment, and would respectfully show the Court as follows:[1]

## I.
## INTRODUCTION

Plaintiff Atlantic Casualty Insurance Company ("Atlantic") files this suit to resolve a coverage dispute with its insureds, Robert Ramirez and LBJ Trucking Co., Inc. (together, the "LBJ Defendants"). Atlantic also names as defendants the Clems, Hensley Industries, Inc., Paradigm Engineering, LLC, Gracombs, LLC, Leigh Anne Prins, Bill Briscoe, and Janet Briscoe (collectively, the "Potential Judgment-Creditor Defendants"), attempting to obtain a preemptive ruling against non-parties to the insurance contract who are not judgment-creditors of the LBJ Defendants and who are not presently seeking indemnity from Atlantic. Atlantic concedes that it sues the Potential Judgment-Creditor Defendants only so that they "will be bound by any decision rendered in this declaratory judgment action with respect to coverage under the Atlantic Casualty policies." (Amended Compl. ¶¶ 36-37.)

---

[1] The Clems previously filed a Motion to Dismiss Plaintiff Atlantic Casualty Insurance Company's Original Claims Against Them, and fully briefed their arguments with respect thereto in their Motion to Dismiss (Doc. 15), Reply in Support of Their Motion to Dismiss Plaintiff's Claims Against Them (Doc. 20), Objections to the Findings, Conclusion and Recommendation of the United States Magistrate Judge (Doc. 41), and Reply in Support of Clems Defendants' Objections to the Findings, Conclusion and Recommendation of the United States Magistrate Judge (Doc. 49). The Clems herein incorporate by reference all of the previous briefing and authorities thereto, and renew all such arguments in their entirety with respect to Atlantic Casualty Insurance Company's First Amended Complaint. This Motion to Dismiss does not raise any grounds that are not already raised in the prior briefing. The Clems are filing this Motion to Dismiss out of an abundance of caution given that Atlantic has filed a First Amended Complaint.

The Court should grant the Clems' Motion to Dismiss because no ripe, justiciable controversy exists between the Clems and Atlantic and because permitting such an action to proceed impermissibly alters the substantive relationship between those parties. Therefore, subject matter jurisdiction is lacking. Pursuant to FED. R. CIV. P. 12(b)(1), Atlantic's claims against the Clems should be dismissed.

The Clems are also not proper parties to this coverage lawsuit for the same reasons. Consequently, pursuant to FED. R. CIV. P. 12(b)(6), Atlantic's claims against the Clems should be dismissed.

Moreover, the Court should exercise its discretion to decline jurisdiction over the Clems because of the inequity of permitting such an action to proceed when the Clems cannot institute a declaratory judgment to bind Atlantic regarding coverage under the Policies. The Clems otherwise would be forced to expend costs and attorney's fees to respond to a dispute in which they have no legally cognizable interest, and in which they may never have an interest.

## II.
## FACTUAL BACKGROUND

Atlantic filed this lawsuit asking the Court to interpret certain commercial general liability insurance policies between Atlantic and the LBJ Defendants (the "Policies"). Atlantic has provided only one reason for naming the Clems in this lawsuit: the Clems are potential judgment-creditors in ongoing litigation in the Eastern District of Texas against the LBJ Defendants, as well as other defendants (the "Underlying Lawsuit"). (Amended Compl. ¶ 36.) That case, filed on June 12, 2007, is styled and numbered *Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem and Clarence T. "Casey" Clem, Jr. v. Bill Briscoe, individually and d/b/a Briscoe Land Reclamation Project, and d/b/a Bill Briscoe Enterprises, Inc., Hensley Industries, Inc., Robert Ramirez, individually and d/b/a LBJ*

*Trucking Co., Inc., and LBJ Trucking Co., Inc.*, Cause No. 4:07-CV-00285, in the United States District Court for the Eastern District of Texas, Sherman Division. The live pleading in the Underlying Lawsuit is the Fourth Amended Complaint. Discovery is ongoing in the Underlying Lawsuit.

Atlantic seeks a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, that it has no duty to defend or indemnify the LBJ Defendants or any other insured or Defendant for the claims in the Underlying Lawsuit. (*Id.* ¶ 39.) The Clems are neither parties nor expressly named third-party beneficiaries to the Policies. To the contrary, they are strangers to the Policies between Atlantic and the LBJ Defendants. Additionally, because the Underlying Lawsuit is ongoing, the Clems are only *potential* judgment creditors of the LBJ Defendants. The Clems seek no indemnity from Atlantic at this time. Indeed, the Clems have no legally cognizable interest in the Policies between Atlantic and the LBJ Defendants. *See Standard Fire Ins. Co. v. Sassin*, 894 F. Supp. 1023, 1027 (N.D. Tex. 1995); *see also Feria v. CU Lloyd's of Texas*, No. 05-00-01245-CV, 2001 WL 1263666, at *1 (Tex. App.—Dallas 2001, no pet.) (not designated for publication).

Atlantic admits it named the Clems as parties in the instant litigation so that they "will be bound by any decision rendered in this declaratory judgment action with respect to coverage." (Amended Compl. ¶ 36.) Atlantic does not, however, allege any present controversy against the Clems sufficient to confer jurisdiction on this Court.

**III.**
**ARGUMENTS AND AUTHORITIES**

A.     **THE DECLARATORY JUDGMENT ACTION AGAINST THE CLEMS SHOULD BE DISMISSED UNDER RULE 12(b)(1) BECAUSE NO ACTUAL PRESENT CONTROVERSY EXISTS.**

No actual present controversy exists between the Clems and Atlantic, nor are the Clems proper parties to this action.  The Clems are not parties to the insurance contracts, third-party beneficiaries, or judgment creditors.  They have no legally cognizable interest in the Policies. *See Sassin*, 894 F. Supp. at 1027.  Moreover, no facts have been determined in the Underlying Lawsuit.  Instead, discovery is ongoing.

Additionally, federal law requires that the substantive relationship between an insurer and a tort plaintiff be maintained regardless of which party brings a federal declaratory judgment action. *Id.* at 1028.  Here, however, Atlantic has sued the Clems for "declaratory judgment" even though the Clems likely could not have sought a declaratory judgment against Atlantic under substantive state law, nor could they have intervened in the declaratory judgment action had Atlantic named only the LBJ Defendants.

Because there is no present "actual controversy," because the facts in the Underlying Lawsuit have not been finally determined, and because the Clems have no likely reciprocal right to seek declaratory judgment against Plaintiff, Atlantic's claims against the Clems should be dismissed under Rule 12(b)(1).

1.     **Standard Under Fed. R. Civ. P. 12(b)(1).**

A claim must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *See Home Builders Assoc., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  As courts of limited jurisdiction, federal courts lack the power to adjudicate claims absent jurisdiction

conferred by statute. *See, e.g., Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). The United States Constitution limits the exercise of the judicial power to cases and controversies. U.S. CONST. art. III, § 2; *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). Therefore, a federal court cannot have subject matter jurisdiction unless there is an actual controversy between the parties to the litigation. *Haworth*, 300 U.S. at 239-41 ("[t]he 'case or controversy' requirement is jurisdictional"); *Sassin*, 894 F. Supp. at 1026.

Here the burden of establishing subject matter jurisdiction rests on Atlantic, as the party invoking jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1991). In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate: (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 122 S. Ct. 1059 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). In making such a decision, all uncontroverted allegations in the complaint must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### 2. Atlantic Has Failed to Meet Its Burden to Establish That Subject Matter Jurisdiction Exists Over the Clem Defendants.

Atlantic has failed to meet its burden to show that an actual, present controversy exists between itself and the Clems. Under federal law, an actual controversy exists if there is: (1) a substantial controversy; (2) between parties having adverse legal interests; (3) *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937) (emphasis added); *Sassin*, 894 F. Supp. at 1026. Plaintiff is not able to meet any of these elements.

In determining whether an insurer's declaratory judgment action against a tort plaintiff presents a "case or controversy" sufficient to confer jurisdiction, the United States Supreme Court has indicated that courts should examine whether applicable state law affords the tort plaintiff rights against the insurance company. *Maryland Cas. Co. Pacific Coal & Oil Co.*, 312 U.S. 270, 273-74 (1941). District courts have applied *Maryland Casualty* in declaratory judgment cases involving insurers and tort plaintiffs such that "state law, by defining the substantive rights of the parties, plays a large role in determining whether a case or controversy exists." *Sassin*, 894 F. Supp. at 1026; *see also Vermont Mut. Ins. Co. v. Everette*, 875 F. Supp. 1181, 1185-86 (E.D. Va. 1995); *Hunt v. State Farm Mut. Auto. Ins. Co.*, 655 F. Supp. 284, 286-87 (D. Nev. 1987); and *MacMillan-Bloedel, Inc. v. Firemen's Fund Ins. Co.*, 558 F. Supp. 596, 598 (S.D. Ala. 1983).

Since 1997, however, Texas law has been in a state of flux regarding the substantive rights of tort plaintiffs against insurers. *See, e.g., State and County Mut. Fire Ins. Co. v. Walker*, 228 S.W.3d 404, 411 (Tex. App.—Fort Worth 2007, no pet.). Therefore, the Fort Worth Court of Appeals recently declined to determine whether a potential judgment creditor was a proper party to a declaratory judgment action between an insurer and its insured. *Id.* That court noted that while, historically, injured parties had not been considered proper parties, recent Texas Supreme Court decisions suggest they might now be, even though the Texas Supreme Court has not expressly so held. *Id.* The Texas Rules of Civil Procedure still indicate that a potential judgment creditor may not sue the wrongdoer's insurer until liability is established by judgment or agreement. TEX. R. CIV. P. 51(b) (specifically stating that joinder of a liability or indemnity insurance company to a tort claim is not permitted unless the insurer is by statute or contract directly liable to the tort plaintiff).

Under Texas law prior to 1997, it was well-established that, unless and until judgment was entered against an insured, a tort plaintiff that was neither a party to an insurance contract nor the legally intended third-party beneficiary had no legally cognizable interest in the insurance contract. *See, e.g., Sassin*, 894 F. Supp. at 1027 (interpreting Texas law); *Gracida v. Tagle*, 946 S.W.2d 504, 507 (Tex. App.—Corpus Christi 1997, orig. proceeding) (a plaintiff has no contractual rights under an insurance policy until she obtains a judgment against the insured); *Allstate Ins. Co. v .Watson*, 876 S.W.2d 145, 149 (Tex. 1994) (a third-party claimant has no contract and no legal relationship with the insurer); *Russell v. Hartford Cas. Ins. Co.*, 548 S.W.2d 737, 741 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.) (Texas law bars plaintiff from bringing a tort suit directly against a tortfeasor's insurance company).

In 1997, however, the Texas Supreme Court determined that the duty to indemnify is justiciable before liability is determined in underlying litigation by a tort plaintiff when: (1) the insurer has no duty to defend; and (2) ***the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify***. *Farmers Texas Co. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis added). Based on that decision, at least one court has determined that a potential judgment creditor may sue an insurer prior to a final determination of liability. *See Richardson v. State Farm Lloyd's Ins.*, Case No. 2-04-00072-CV, 2007 WL 1018651, at *5 (Tex. App.—Fort Worth 2007, pet. denied) (not reported) (permitting a potential judgment creditor to maintain a declaratory judgment action against the insurer).[2]   However, that court still made clear that it must consider the threshold issue of

---

[2] Two federal cases in the Northern District of Texas, *Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308 (N.D. Tex. 2004) and *Century Surety Co. v. Hardscape Constr. Specialties, Inc.*, Civ. A. 4:05-CV-285, 2006 WL 1948063 (N.D. Tex. 2006) (not published) seem to suggest that a potential judgment creditor may be a proper party to a declaratory judgment action between an insurer and its insured. However, the court's subject matter jurisdiction in those cases does not appear to have been at issue.   Additionally, the issues presented in those cases are

whether there could ever be any set of facts that could arise under which coverage under the insurance policies might exist before a potential judgment creditor is permitted to sue an insurer on coverage. *Id*. at * 4-6.

Other courts have refused to allow a potential judgment creditor to sue an insurer or to intervene in a declaratory judgment action between an insurer and its insured prior to a final determination regarding liability. *Feria*, 2001 WL 1263666, at *1 (declining to extend *Griffin* to permit a potential judgment creditor to intervene in a declaratory judgment action between an insurer and its insured because the potential judgment creditor could not have brought the action in his own name); *Owens v. Allstate Ins. Co.*, 996 S.W.2d 207, 208 (Tex. App.—Dallas 1998, pet. denied) (an injured third party simply cannot sue the tortfeasor's liability insurer directly until the tortfeasor's liability has been finally determined); *see also Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 311 (N.D. Tex. 2004) (affirming the holding of *Sassin* to be that third-party claimants under Texas law have no cognizable interest in an insurance contract on which to bring suit).

Importantly, the *Griffin* case did not involve a challenge to the jurisdiction of the court, as is at issue in this case. *Griffin*, 955 S.W.2d at 84; *see also Richardson*, 2007 WL 1018651, at *5. The Clems submit that, in light of the authority in the Texas Rules of Civil Procedure, the fact that the facts in the Underlying Lawsuit have not been finally determined, and under the better-reasoned substantive Texas law defining the rights of tort plaintiffs against insurers, the Clems, as only potential judgment creditors: (1) have no legal right at this time to attempt to enforce any insurance contract between Plaintiff and the LBJ Defendants; and (2) cannot intervene in any

---

distinguishable from the issue in this case. To the extent that the Court believes that the issues in those cases, and any other similar cases, are similar to those here, the Clems submit that the better-reasoned cases under substantive Texas law, which applies to inform the decision of whether a case or controversy exists, are as set forth in the argument herein.

coverage dispute between Plaintiff and the LBJ Defendants. *See, e.g., Feria*, 2001 WL 1263666 at *1. As a Texas court of appeals has made clear:

> A [tort-]claimant has no contractual rights under an insurance policy until she obtains a judgment against the insured. A third-party claimant has no contract with the insurer, has not paid any premiums, and has no legal relationship with the insurer. An injured third party simply cannot sue the tortfeasor's liability insurance company directly until the tortfeasor's liability has been finally determined by agreement or judgment.

*Feria*, 2001 WL 1263666 at *1.

This difference between the rights of an insurer and those of a tort plaintiff serves as a critical distinction in deciding whether a federal declaratory judgment action may be maintained. *Sassin*, 894 F. Supp. at 1028. "[T]he substantive relationship between the insurer and the tort plaintiff should be maintained *regardless of which party brings a declaratory judgment action*." *Id.* (emphasis added). Thus, if a tort plaintiff would not be entitled to sue the insurer for declaratory judgment under applicable state law, the insurer's declaratory judgment claim should be dismissed under Rule 12(b)(1). *See id.* Because Texas law does not afford the Clems the right to sue Atlantic before a judgment is reached in the Underlying Lawsuit, Atlantic should not be able to bring a declaratory judgment claim against the Clems at this time. *Id.*

Indeed, under these circumstances, Atlantic cannot meet its burden to show an actual , present controversy exists under federal law sufficient to confer jurisdiction on an Article III court. First, if an actual, present controversy exists between an insurer and tort plaintiff before judgment in the Underlying Suit (which the Clems deny), the controversy does not rise to a "substantial" level if one party is completely barred from bringing a declaratory judgment action under substantive state law. *See, e.g., Sassin*, 894 F. Supp. at 1028. Second, the insurer and potential judgment creditor cannot be said to have "adverse legal interests," when as set forth

above, the potential creditor has no legally cognizable interest unless and until the facts and the underlying liability are determined. *See id.* Finally, where the underlying litigation is ongoing, the risk of an adverse judgment against the insured is too remote to be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in federal court. *See id.* In fact, "the Fifth Circuit has admonished the district courts against sitting in judgment of questions which may never in fact come to pass." *MacMillan-Bloedel*, 558 F. Supp. at 599.

In this case, judgment in favor of the LBJ Defendants in the Underlying Lawsuit would render unnecessary a declaratory judgment regarding Atlantic's rights **as to the Clems**. Therefore, Atlantic has not met its burden to show an actual, present controversy sufficient to confer subject matter jurisdiction on this Court. The Court should dismiss Atlantic's declaratory judgment action against the Clems pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### 3. Atlantic has failed to meet its burden to show that there is no possible set of facts in the Underlying Lawsuit under which Atlantic would ever have a duty to indemnify.

*Griffin* did not overrule the longstanding rule of law in Texas that suits by a potential judgment creditor against an insurer to establish the duty to indemnify an insured defendant, who may never be found liable to the potential judgment creditor, constitute prohibited advisory suits. *Foust v. Ranger Ins. Co.*, 975 S.W.2d 329, 331-32 n.2 (Tex. App.—San Antonio 1998, pet. denied) (noting that *Griffin* did not overrule *Firemen's Ins. Co. of Newark v. Burch*, 442 S.W.2d 331, 331-33 (Tex. 1968), which found such suits to be advisory); *see also Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlvankia, L.L.P.*, 267 F. Supp. 2d 601, 626 (E.D. Tex. 2003); *Feria v. CU Lloyd's of Texas*, No. 05-00-01245-CV, 2001 WL 1263666 (Tex. App.—Dallas Oct. 23, 2001, no pet.) (not designated for publication). Instead, *Griffin* carved out a very limited

exception to the general rule. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, No. 08-50042, 2008 WL 2955568, at *1 n.6 (5th Cir. Aug. 4, 2008) (slip op.); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 536 (5th Cir. 2004). The general rule remains that an attempt to declare the liability of an insurance company relating to damages that might be assessed against the insured in an underlying case seeks an advisory opinion, and such an advisory opinion is beyond the power and jurisdiction of a Texas court to render. *Foust*, 975 S.W.2d at 331-32 n.2.

The Fifth Circuit recently affirmed that any decision on the duty to indemnify before the conclusion of the underlying lawsuit is premature unless the live complaint **precludes** a situation where the evidence at trial could implicate the insured's conduct and the policy's coverage. *Gore Design*, 2008 WL 2955568, at * 1 n.6. Therefore, regardless of whether allegations were raised in the Fourth Amended Complaint that, if true, would give rise to a duty to defend, a court must consider whether the live pleading itself actually forecloses the possibility that evidence could ever arise in the lawsuit that would give rise to the insurer's duty to indemnify. *See id.* at n.6; *see also Northfield Ins. Co.*, 363 F.3d at 536.

To overcome this general rule, Atlantic bears the burden to show that there is no possible set of facts that could be determined in the Underlying Lawsuit that would implicate coverage under the Policies. Atlantic has not, and cannot, do so.

For example, regardless of how the Fourth Amended Complaint categorizes the foundry sand, other foundry refuse, brush, trees, wood grindings, mulch, compost, woody materials, construction debris, and demolition debris, a determination need not be made in the Underlying Lawsuit that such materials are waste or "Solid Waste" in order to find that the LBJ Defendants' deposit of such materials on the Clems' land gives rise to liability for common law trespass,

negligent trespass, negligence, or nuisance. Moreover, based on the causes of action in the Underlying Lawsuit, it is possible that an express determination that one or more of these materials are not "Solid Waste" could be made, and the LBJ Defendants still be determined to be liable on one or more causes of action. In other words, the nucleus of operative facts do not necessarily show that all of the alleged damages arise from "pollutants."

Similarly, whether these materials constitute either an irritant or a contaminant under Atlantic's policies is also an issue to be decided in the Underlying Lawsuit. A determination in the Underlying Lawsuit need not be made that the foundry sand, other foundry refuse, brush, trees, wood grindings, mulch, compost, woody materials, construction debris, and demolition debris are "an imminent and substantial endangerment to individuals and the environment" to find the LBJ Defendants liable to the Clems.

Common law trespass, negligent trespass, negligence, or nuisance are potentially covered causes of action under the insuring language of the policies. For these common law causes of action, there need only be an injury to the right of possession, or substantial interference with the use or enjoyment of the Clems' land arising from the LBJ Defendants' deposit of these materials. *See, e.g., Cain v. Rust Indus. Cleaning Servs.*, 969 S.W.2d 464, 470 (Tex. App.—Texarkana 1998, pet. denied) (trespass to real property is defined as unauthorized entry upon the land of another); *Pentagon Enters. v. Southwestern Bell Tel. Co.*, 540 S.W.2d 477, 478 (Tex. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (essence of an action for trespass to real property is injury to the right of possession); *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied); *Montgomery Cty. v. Fuqua*, 22 S.W.3d 662, 668 (Tex. App.—Beaumont 2000, pet. denied). Such factual findings are not precluded by the Fourth Amended Complaint. To find the LBJ Defendants liable for these state law claims there need not be a

determination that the materials wrongfully deposited by the LBJ Defendants are "waste," "irritants," or "contaminants," as those terms are used in Atlantic's policies. In other words, at a minimum the possibility exists that evidence in the Underlying Lawsuit could give rise to a duty to indemnify. Therefore, no present, actual controversy on the duty to indemnify exists between the Clems and Atlantic.

**B.      THE CLAIMS AGAINST THE CLEMS SHOULD BE DISMISSED UNDER RULE 12(b)(6) BECAUSE ATLANTIC HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

For the same reasons that dismissal under Rule 12(b)(1) is appropriate, the Clems are not proper parties to the coverage dispute between Atlantic and the LBJ Defendants. Therefore, Atlantic's claims against the Clems should also be dismissed under Rule 12(b)(6) because Atlantic has failed to state a claim upon which relief can be granted.

**1.      Standard Under Fed. R. Civ. P. 12(b)(6).**

A motion under Rule 12(b)(6) should be granted if a plaintiff has failed to provide the "grounds" of his "entitle[ment] to relief" through allegations that raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). In other words, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must meet the threshold requirement of possessing enough heft to "sho[w] that the pleader is entitled to relief." *Id.* In determining whether dismissal should be granted, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

**2.      Because the Clems Are Not Proper Parties, Atlantic Has Failed to Provide Allegations That Raise a Right to Relief Above the Speculative Level.**

For the same reasons that the Court lacks subject matter jurisdiction, the Clems are not proper parties to this litigation. *See, e.g., Armstrong v. Harris*, Civ. A. No. 3:01-CV-1722L, 2002 WL 31245377, *3 n.2 (N.D. Tex. 2002) (not designated for publication). Where a party is not a proper party to a lawsuit, dismissal under Rule 12(b)(6) is appropriate because there is no set of facts that can be alleged upon which relief can be granted. *Id.*

Atlantic's allegations in support of the request for declaratory judgment against the Clems do not possess enough heft to show any actual controversy. This threshold requirement is necessary for the Clems to be a proper party to the litigation and for Atlantic to show entitlement to relief. *See, e.g., Twombly*, 127 S. Ct. at 1964-65. Even taking all of the allegations in the First Amended Complaint as true, Atlantic cannot overcome the fact that the Clems are simply *potential* judgment creditors, having no legal rights under the Policies prior to any actual judgment or agreed liability against the LBJ Defendants. *See, e.g., Gracida*, 946 S.W.2d at 507. Indeed, the facts in the Underlying Lawsuit have not been finally determined. The Clems are not presently looking to Atlantic for any indemnity because there is no judgment against Atlantic's insureds that could be indemnified.

Any legal rights that the Clems have under the Policies are solely derivative of their success in the Underlying Lawsuit. As the Fifth Circuit has explained, speculative, hypothetical controversies are not ripe for a declaratory judgment. *See, e.g., Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (deeming as unripe a declaratory judgment action that sought to bar the filing of a broad class of "unasserted, unthreatened, and unknown claims"); *United Transp. Union v. Foster*, 205 F.3d 851, 857-58 (5th Cir. 2000) (determining that a pre-enforcement declaratory challenge to a state railroad law rested upon "a mountain of conjecture and speculation," because the necessary events giving rise to the operation of the challenged

statute had not yet occurred). Atlantic's "controversy" with *the Clems* (as opposed to the LBJ Defendants) will only exist at such time that the facts in the Underlying Lawsuit are finally determined and the Clems obtain a judgment in the Underlying Lawsuit that implicates coverage under the Policies. Although the Clems fully expect to succeed in the Underlying Lawsuit, nonetheless this is simply insufficient at this time to rise to the level of an actual controversy with Atlantic.

Even assuming that all the First Amended Complaint's allegations are true, they do not rise above a speculative level any present right to relief *against the Clems*, as required by *Twombly. See* 127 S. Ct. at 1964-65. Accordingly, Atlantic has failed to state a claim against the Clems upon which relief can be granted, and dismissal should be granted pursuant to Rule 12(b)(6).

**C.     FINALLY, THE DECLARATORY JUDGMENT ACTION AGAINST THE CLEMS SHOULD BE DISMISSED UNDER THE COURT'S DISCRETIONARY POWER TO DECLINE JURISDICTION OVER A PARTICULAR DECLARATORY JUDGMENT ACTION.**

Independently, the Court should exercise its discretion to decline jurisdiction over Atlantic's claims against the Clems because of the uncertainty regarding whether there will ever be any dispute between the Clems and Atlantic, Atlantic's attempt to gain advantage through a pre-emptive strike, forcing the Clems to incur costs and fees, and the inequity in allowing Atlantic to seek declaratory judgment at a time when the Clems may have no such reciprocal right. *See Sassin*, 894 F. Supp. at 1028.

**1.     Standard to Decline Jurisdiction Over Declaratory Judgment Claim Based on Discretion.**

"'[I]t is a matter for the district court's sound discretion whether to decide a declaratory judgment action.'" *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804

(5th Cir. 1985) (quoting *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983)). Although a district court may not dismiss requests for declaratory relief "on the basis of whim or personal disinclination," certain factors may warrant dismissal. *See Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993) (quoting *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989)). In considering whether to dismiss a declaratory judgment action, a district court considers:

(1)     whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2)     whether the plaintiff filed suit in anticipation of a lawsuit filed by defendant;

(3)     whether the plaintiff engaged in forum shopping in bringing the suit;

(4)     whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or change forums exist;

(5)     whether the federal court is a convenient forum for the parties and witnesses; and

(6)     whether retaining the lawsuit in federal court would serve the purposes of judicial economy.

*Travelers*, 996 F.2d at 778 (citations omitted). Other factors may also be considered by a district court in deciding not to exercise jurisdiction over a declaratory judgment claim. *See, e.g., Sassin*, 894 F. Supp. at 1028 (explaining that the list of factors that may be considered is not exhaustive).

## 2.     Several Factors Support the Court's Exercise of Its Discretionary Power to Decline Jurisdiction.

Independent of the grounds for dismissal under Rules 12(b)(1) and (6), the Court should exercise its discretion to decline Atlantic's declaratory judgment claims against the Clems. It would be inequitable to allow Atlantic's declaratory judgment action to proceed when the Clems

have no right to sue Atlantic for declaratory relief, no right to bind Atlantic regarding coverage under the Policies, and no present rights as a judgment creditor.

One factor to consider is whether the plaintiff filed suit in anticipation of a lawsuit filed by defendant. *Sassin*, 894 F. Supp. at 1028. Here, Atlantic filed suit in anticipation of a possible judgment in the Underlying Lawsuit. By seeking an advisory ruling against the Clems about its duty to indemnify, Atlantic seeks to cut off a future suit by the Clems before the facts in the Underlying Lawsuit have ever been decided.

Another factor to consider is whether the plaintiff engaged in forum shopping in bringing the suit. *Id.* When the Clems had the right to bring suit – *i.e.*, against the LBJ Defendants and others – they filed suit in the appropriate venue, the United States District Court for the Eastern District of Texas, Sherman Division. Under the Texas Rules of Civil Procedure, the Clems had no right to include Atlantic as a defendant in the Underlying Lawsuit or to file their own declaratory judgment action against Atlantic in the Eastern District. *See Feria*, 2001 WL 1263666 at *1. Among other reasons, this is because there is at least one set of possible facts that could be determined in the Underlying Lawsuit for which Atlantic's coverage could be implicated. Despite the pending Underlying Lawsuit, Atlantic chose to file this pre-emptive declaratory judgment action in the Northern District of Texas.

The Court also should consider whether there are possible inequities in allowing the declaratory plaintiff to gain precedence in time or change forums. *Sassin*, 894 F. Supp. at 1028. Atlantic has gained precedence in time by exploiting an inequality in rights: during the time between the filing of a tort plaintiff's lawsuit and a favorable judgment or settlement, the tort plaintiff has no ability to seek relief against the insurer under the Texas Rules. By acting during the time that the Clems are powerless to take any affirmative action, Atlantic gains control of the

litigation, determining when the declaratory action is filed, where it is filed, what scope of declaration is sought, and other matters particularly in the purview of a plaintiff.

Permitting such a declaratory judgment action to proceed allows insurers, as a matter of course, to force tort plaintiffs to spend costs and attorney's fees to defend against an action on an insurance contract to which the tort plaintiffs are strangers. Moreover, should the finally determined facts in the Underlying Lawsuit fail to implicate coverage, *no dispute would ever arise*. Even if a tort plaintiff is successful in the declaratory judgment action, it is unclear whether the Federal Declaratory Judgment Act permits recovery of the tort plaintiff's costs and fees where, as here, the tort plaintiff is not a party to the policy and has no present right to enforce the policy as a third-party beneficiary. *See Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 216 (5th Cir. 1988) (stating that "attorney's fees are recoverable . . . only where they are recoverable under non-declaratory judgment circumstances."). By forcing the tort plaintiff to litigate in two lawsuits – and in this case, in two fora – the insurer can increase settlement pressure in both the Underlying Lawsuit and the coverage action by making the tort plaintiff expend costs and fees that it may never recover, even if successful.

The inequities multiply in situations where, as here, there are multiple defendants in the Underlying Lawsuit, and the allegations in the Underlying Lawsuit complain of acts that took place over a period of years. As a result, multiple insurance policies might be implicated. The Clems as tort plaintiffs in the Underlying Lawsuit face the untenable position of being sued by each potential insurer of each defendant in the Underlying Lawsuit, despite the absence of any actual ripe dispute with any of the insurers. Such a situation would be inequitable and counterproductive to the interests of justice.

Finally, the Court should consider whether the declaratory judgment action serves the purposes of judicial economy. Requiring the Clems to participate in this lawsuit does not serve the purposes of judicial economy. Deciding the claim against them – *i.e.*, whether Atlantic will, at some point in the future, owe the Clems any obligations through indemnification – erodes the principle that district courts should not adjudicate theoretical questions that may never actually present themselves. *See Sassin*, 894 F. Supp. at 1028. The facts in the Underlying Lawsuit are still being adjudicated. Even if the Court still will face the dispute between Atlantic and the LBJ Defendants, it does not serve judicial economy for the Court clerks to process an additional set of filings from the Clems, for the Court to face an additional set of briefing, or for the progress of the lawsuit to be burdened with necessary motions particular to the Clems (such as this motion).

The factors to be considered in deciding whether to dismiss a declaratory judgment action favor dismissal. Regardless of whether the Court agrees that dismissal is appropriate under Rule 12(b)(1) or 12(b)(6), the Court should decline to exercise its declaratory judgment jurisdiction over the claim against the Clems. *Id.*

## IV.
## CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, the Clems' motion to dismiss should be granted and Atlantic's claims against the Clems should be dismissed in their entirety.

Respectfully submitted,

/s/ Vincent J. Hess
Vincent J. Hess
  Texas State Bar. No. 09549417
  vhess@lockelord.com
Abigail B. Moore
  Texas State Bar No. 24037133
  abmoore@lockelord.com
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
(214) 740-8000 (telephone)
(214) 740-8800 (telecopy)

**ATTORNEYS FOR DEFENDANTS
CLEM'S YE OLDE HOMESTEAD FARMS,
LTD., BETTYE CRIDER CLEM, CLARENCE
TRUMAN CLEM, KELLY CLEM, AND
CLARENCE T. "CASEY" CLEM, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the

court's electronic filing system, on this 29th day of September 2008 on the following counsel of

record:

Camille Johnson
Gary N. Schumann
Savrick, Schumann, Johnson, McGarr, Kaminski & Shirley, L.L.P.
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206

Cody L. Towns
Rodriguez Ghorayeb & Gersch, LLP
1700 Pacific Avenue, Suite 3850
Dallas, Texas 75201

/s/ Abigail B. Moore
Abigail B. Moore