IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | |
| ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLY CLEM, and CLARENCE T. "CASEY" CLEM, JR., | § § § § § § § § § § § | CIVIL ACTION NO. 3:07-CV-1297-O |
| Defendants. | § | |

**ATLANTIC CASUALTY'S RESPONSE
TO HENSLEY INDUSTRIES' MOTION TO DISMISS**

TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities .......................................................................................................ii, iii

I.     Introduction ................................................................................................................1

II.    Factual Background ...................................................................................................1

III.   Argument and Authorities..........................................................................................3

       A.     Judge Stickney has already decided these issues in Atlantic's favor.......................3

       B.     Supreme Court precedent supports the inclusion of Hensley in this section...........4

       C.     Other Federal courts agree with Atlantic's view ......................................................5

       D.     The Court should not dismiss Atlantic's claims as a matter of discretion.............10

IV.    Conclusion ................................................................................................................14

## TABLE OF AUTHORITIES

10B Charles A. Wright, et al., *Federal Practice and Procedure* § 2757, at 476 (1984) .............. 10

*National American Insurance Co. v. Breaux*, 368 F. Supp. 2d 604 (E.D. Tex. 2005) ............... 6, 7

*Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2nd Cir. 1992) ..................... 10

*Central Surety & Ins. Corp. v. Norris,* 103 F.2d 116 (5th Cir. 1939) .............................................. 5

*Century Surety Co. v. Hardscape Construction Specialties, Inc.*,
No. 4:05-CV-285-Y, 2006 WL 1948063 (N.D. Tex. July 13, 2006) ............................................. 6

*Cf. American States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir. 1998) ............................................ 8

*Continental Cas. Co. v. West Machine & Tool, Inc.*, No. A 603CV447, 2004
WL 1445812, at *1 (E.D. Tex. June 22, 2004) .............................................................................. 7

*Cross v. Occidental Fire & Cas. Co.*, 347 F. Supp. 342, 344 (W.D. Okla. 1972) ......................... 5

*Dairyland Ins. Co. v. Makeover*, 654 F.2d 1120, 1123 (5th Cir. 1981) .......................................... 8

*El Naggar Fine Arts Furniture, Inc. v. Indian Harbor Ins. Co.*, 248 S.W.3d 202
(Tex. App.—[1st Dist.] Houston 2007, pet. denied) ........................................................................ 4

*Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 387
(Tex. App.—Dallas 2007, pet. dismissed) ..................................................................................... 3

*Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)) ........................ 12

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ........................................ 4, 5

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000) ........................................ 10

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003) ......................... 11, 12

*Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) ..................................................................... 9

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994) ................................................................. 10

*Standard Accident Ins. Co. v. Meadows*, 125 F.2d 422, 423-24 (5th Cir. 1942) ............................ 8

*State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 385 n.6 (5th Cir. 1997)) ......................... 6

*State Farm Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) ........................................ 5, 6

Case 3:07-cv-01297-F   Document 85   Filed 12/08/08   Page 4 of 19   PageID 1317

*United States Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)) ......................................... 12

**ATLANTIC CASUALTY'S RESPONSE
TO HENSLEY INDUSTRIES' MOTION TO DISMISS**

TO THE HONORABLE REED O'CONNOR, U.S. DISTRICT JUDGE:

Atlantic Casualty responds to Hensley Industries' motion to dismiss Atlantic's claims against Hensley, and respectfully shows the Court as follows:

### I.  Introduction

The Court has been down this road before.  With one exception that makes no difference to the outcome, Hensley's motion duplicates one the Clems filed requesting dismissal on the same grounds under the same rules and theories.  The Court referred that motion to Magistrate Judge Stickney, who recommended that the Clems' motion be denied.[1]  This second time around, those issues should receive no different treatment.  The Court has subject matter jurisdiction over Atlantic's claims against Hensley, Atlantic's claims are not subject to dismissal under Rule 12(b)(6), and the Court should not dismiss Atlantic's claims as a matter of discretion.  The Court should deny Hensley's motion.  This response is supported by an appendix, which is filed simultaneously and incorporated herein by reference.

### II.  Factual Background

Plaintiff, Atlantic Casualty, insured Defendant LBJ Trucking Co., Inc. under commercial general liability policies.  Atlantic understands that Defendant Ramirez was an officer or director of LBJ.  The Clem Defendants hired Briscoe Land Reclamation to bring in "clean fill material" to their real property on Parker Road in Carrollton, Texas.  Ramirez and LBJ Trucking are alleged to have transported the fill material, a portion of which is alleged to have come from

---

[1] The Clems objected to the magistrate's recommendation, Atlantic responded and the Clems replied.  Those objections are pending before the Court, and Atlantic submits that the Court should overrule the Clems' objections and adopt the magistrate's recommendation, as well as deny Hensley's mirror-image motion.

**ATLANTIC CASUALTY'S RESPONSE
TO HENSLEY INDUSTRIES' MOTION TO DISMISS**            **Page 1**

Hensley. According to the Clems, instead of clean fill material, the filler was "foundry sand" and other waste, which they characterize as environmentally unsuitable for their property. The Clems sued Ramirez, LBJ Trucking, Hensley Industries and other alleged wrongdoers under federal pollution laws as well as under numerous state-law theories, including negligence (the "underlying" lawsuit or action). They allege that Hensley generated and handled foundry sand and other foundry waste that was dumped on their land. The Atlantic Casualty policies do not cover Ramirez and LBJ's allegedly wrongful acts because of pollution exclusions, a classification endorsement and a claims-in-process exclusion, all as pleaded in Atlantic Casualty's First Amended Complaint.[2] Nor do they cover Ramirez acting individually before the inception of LBJ Trucking Co., Inc. Atlantic thus filed this action, seeking a declaration of no coverage as to those seeking recovery against LBJ/Ramirez and thus against the Atlantic policies.

In the underlying action, Hensley Industries filed a cross claim against Atlantic's insured, LBJ Trucking. Hensley seeks contribution from LBJ Trucking, seeking to recover from LBJ any damages that Hensley might be adjudged to owe the Clems. Hensley's cross claim is wholly derivative of the Clems' claims: "To the extent that Plaintiffs/Counter Defendants [*i.e.,* the Clems] have been harmed as alleged in the Original Complaint, such harm was caused by the acts and/or omissions of . . . LBJ Trucking." (P. APP. at 0013; Hensley's Cross-cl. ¶ 92.) Thus Hensley, like the Clems, is a potential judgment creditor of LBJ and functionally stands in the same shoes as the Clems. Like the Clems, Hensley *is presently seeking* damages in the

---

[2] As their name suggests, the pollution exclusions exclude coverage for incidents of pollution. The classification endorsement addresses coverage for a stated type or classification of work, while the claims-in-process exclusion excludes coverage for events that occurred before the policy period.

**ATLANTIC CASUALTY'S RESPONSE**
**TO HENSLEY INDUSTRIES' MOTION TO DISMISS**                                               Page 2

underlying action against LBJ Trucking. Because there is an actual controversy under the Declaratory Judgment Act between Hensley and Atlantic Casualty, the Court should deny Hensley's motion.

### III. Argument and Authorities

**a. Judge Stickney has already decided these issues in Atlantic's favor.**

Hensley does not deny that it seeks damages from LBJ Trucking or that it would try to recover those damages from the Atlantic policies. Instead, Hensley argues that its "interest in the Policies is too remote" to constitute an actual controversy. (Hensley's Mot. Dismiss at 3.) In the underlying action, Hensley is not the allegedly damaged party—the Clems are. Hensley thus has no independent claim *for its own damages* to allege against LBJ Trucking. Instead, Hensley asserts a contribution claim, which functionally allows Hensley to assert the Clems' claims against LBJ: "[C]ontribution and indemnity are not independent claims but are 'derivative' of the plaintiff's claim against each co-liable party." *Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 387 (Tex. App.—Dallas 2007, pet. dism'd). Hensley's claims are thus no less immediate than those of the Clems, and on the same arguments and claims, Judge Stickney, addressing the Clems' argument that their interest was too remote, correctly recognized that "under similar facts, the United States Supreme Court and Fifth Circuit have both found that facts alleged show that there is a substantial controversy between part[ies] with adverse interest of sufficient immediacy to warrant the issuance of a declaratory judgment." (P. APP. at 0024; Findings, Conclusions and Recommendation, May 12, 2008, at 8.)[3] The conclusion as to Hensley's claims can be no different.

---

[3] Judge Stickney's Findings, Conclusions and Recommendation is included in an appendix, filed with this response.

**ATLANTIC CASUALTY'S RESPONSE**
**TO HENSLEY INDUSTRIES' MOTION TO DISMISS**                                                                 **Page 3**

### b. Supreme Court precedent supports the inclusion of Hensley in this action.

Since 1941, an insurer's request for declaratory relief against a potential judgment creditor of its insured has been recognized as an actual controversy under the Declaratory Judgment Act. In *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), the United States Supreme Court considered whether Maryland Casualty Company's declaratory judgment coverage action against Joe Orteca, who was injured in a wreck with a Pacific Coal automobile, constituted an actual controversy. Like Atlantic Casualty's action, there was an underlying case between Orteca and Pacific Coal, and Maryland Casualty sought declaratory relief in federal court on the issue of coverage. Like Hensley and the Clems, Orteca was a potential judgment creditor. The Court concluded: "That the complaint in the instant case presents such a[n actual] controversy is plain." *Maryland Cas. Co.*, 312 U.S. at 273. The Supreme Court's rationale was the same as that supporting Atlantic Casualty's inclusion of the Clems and Hensley in this action. The Court noted a clear, actual controversy between the insurance company and its insured, and said, "[i]f we held contrariwise as to Orteca because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal court . . . while the state court, in a supplemental proceeding by Orteca against petitioner [the insurance company], might conclude otherwise." *Id.* at 274. Atlantic Casualty is in the same position. Were Hensley not a party to this action, this Court could hold that there is no coverage, Hensley could later claim that there was coverage, and another court could so hold because Hensley, if not a party to this action, would not be bound by this Court's judgment. *See El Naggar Fine Arts Furniture, Inc. v. Indian Harbor Ins. Co.*, 248 S.W.3d 202 (Tex. App.—[1st

Dist.] Houston 2007, pet. denied) (holding that potential judgment creditor not included in federal declaratory judgment action was not bound by no-coverage judgment against insured).[4]

The Court noted that Orteca, like Hensley, was presently seeking a judgment against the insurance company's insured. *Maryland Cas. Co.*, 312 U.S. at 273. Orteca, like Hensley, was only a potential judgment creditor, having no present rights in the insurance policy. Ohio law gave Orteca a right to proceed directly against the insurance company if he obtained a judgment against the insured. *Id*. Texas law is the same in this regard. In Texas, the party suing the insured may not proceed directly against the insurer until it has been established by judgment or settlement that the insured has a legal obligation to pay damages. *State Farm Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989). The United States Supreme Court found an actual controversy between a similarly situated insurance company and a similarly situated potential judgment creditor. There is no reason the outcome in this case should be different, and Hensley's motion should be denied.[5]

### c. Other federal courts agree with Atlantic's view.

Other federal district courts in Texas that have considered the same issue before this Court have agreed with Atlantic Casualty's view that there is an actual controversy between

---

[4] "There is good reason for permitting the joinder of persons in Plaintiff's [*i.e.* a potential judgment creditor's] position by an insurer seeking declaratory relief. If they were not joined they would not be bound by a favorable judgment of noncoverage and the insurers could be exposed to the risks of a multiplicity of litigation and inconsistent obligations." *Cross v. Occidental Fire & Cas. Co*., 347 F. Supp. 342, 344 (W.D. Okla. 1972).

[5] The *Maryland Casualty* Court granted certiorari to resolve a conflict in cases among the circuits. *Maryland Cas. Co*., 312 U.S. at 512 n.1. The Court cited a list of those cases, one of which is the Fifth Circuit's *Central Surety & Ins. Corp. v. Norris*, 103 F.2d 116 (5th Cir. 1939). There, the insurer sued its insured and the injured parties for a no-coverage declaration. The district court dismissed two of the injured parties. The Fifth Circuit reversed, saying "[t]he interest of Ruddell and Rosser in the question the Insurance Corporation is trying to get adjudicated by a declaratory judgment is real and substantial . . . . They ought to be retained as parties to be heard on it and to be bound by the result." *Id*. at 117. *Maryland Casualty* thus resolved the conflict on the side of those circuits including the Fifth Circuit, which supports the inclusion of Hensley as a defendant in this action.

parties situated as Atlantic and Hensley.  In *Century Surety Co. v. Hardscape Construction Specialties, Inc*., No. 4:05-CV-285-Y, 2006 WL 1948063 (N.D. Tex. July 13, 2006), U.S. District Judge Terry Means considered the same issue, in which Hardscape's subcontractor defectively built a couple of swimming pools for Hillwood Residential Services' real estate development.  Century Surety sued insureds Hardscape, the subcontractor (Elite Concepts), and the potential judgment creditor, Hillwood, seeking a declaration of no coverage.  Hillwood claimed not to be a proper party, but Judge Means disagreed.  He noted that in Texas, a party injured by an insured is viewed as a third-party beneficiary of a liability insurance policy (citing *Ollis*, 768 S.W.2d at 723), and, citing a Fifth Circuit opinion by Judge Higginbotham, stated,

> A declaratory-judgment action brought by an insurer is binding upon a third-party beneficiary to a liability insurance policy if properly joined as a party to the declaratory–judgment action.

*Century Surety*, 2006 WL 1948063, at *5 (citing *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 385 n.6 (5th Cir. 1997)).  Judge Means thus concluded that Hillwood was properly joined as a party and denied its motion for judgment.

U.S. District Judge Marcia Crone in the Eastern District held similarly.  In *National American Insurance Co. v. Breaux*, 368 F. Supp. 2d 604 (E.D. Tex. 2005), Hart Construction, which was insured by National American, had leased a "Bobcat Skidsteer" for use at an Office Depot job in Beaumont, Texas.  Hart employee Breaux took the equipment home with him to work on his own property.  While piling up brush with it, Breaux backed the Bobcat over a minor identified as "K.S. Y.," causing grave injuries that resulted in the child's death.  The child's parents, the Youngs, sued Breaux and others for the death.  In federal court, National American sought a declaration of no-coverage for the Youngs's claims against Breaux in the

underlying action. National Union sued Breaux and the Youngs. Like Hensley here, the Youngs alleged that without a judgment in the underlying action, no justiciable controversy existed between them, as potential judgment creditors, and National American.

In *Breaux*, the court recognized that a party injured by an insured is viewed as a third-party beneficiary of a liability policy even though he may not proceed directly against the insurer until receipt of a judgment against the insured or an agreement that the insured has an obligation to pay. *Breaux*, 368 F. Supp. 2d at 620. National American, though, had included the injured party in its declaratory judgment action. The *Breaux* court continued,

> [U]nder Texas law, a declaratory judgment action brought by an insurer is binding upon a third-party beneficiary to a liability insurance policy if properly joined as a party to such action.

*Id*. On this issue, the court concluded as follows:

> In this instance, because the Youngs derive their right, if any, to collect insurance proceeds directly from the rights of Breaux, they are deemed to be in privity by virtue of their shared legal interest. As such, under the Declaratory Judgment Act, the court may declare NAICO's rights and legal relations with respect to both Breaux and the Youngs.

*Id*. at 621.

In the case before this Court, the facts are not materially different, and neither should be the result. *See Continental Cas. Co. v. West Machine & Tool, Inc*., No. A 603CV447, 2004 WL 1445812, at *1 (E.D. Tex. June 22, 2004) (Guthrie, Mag. J.) (allowing underlying plaintiff to intervene in coverage action to defend against no-coverage position of insurance company vis-à-vis insured and noting underlying plaintiff's "compelling argument that he has an [sic] strong interest in the outcome of this lawsuit and in any decision as to whether Plaintiff must provide a

defense and indemnification for Defendants in the underlying lawsuit . . . ."); *Standard Accident Ins. Co. v. Meadows*, 125 F.2d 422, 423-24 (5th Cir. 1942) (citations omitted):

> It has been repeatedly held in this circuit and elsewhere that whether an insurer is bound [by] an automobile insurance policy by a judgment against its insured, presents a controversy for declaratory judgment as between it, its insured and the plaintiff in a damage suit against its insured and it was plain error to dismiss the state court plaintiffs from the suit.

*Dairyland Ins. Co. v. Makeover*, 654 F.2d 1120, 1123 (5th Cir. 1981) (citations omitted):

> It is decisive to our holding that Dairyland [the insurer] named the appellants [the potential judgment creditors] as defendants in its declaratory judgment action. In a declaratory judgment action brought by an insurer to determine coverage under a liability policy issued to the insured, third parties claiming liability in state tort suits against the insured have been held to be proper parties to the declaratory suit, even though their claims against the insurer was [sic] contingent upon recovery of a judgment against the insured.

*Cf. American States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir. 1998) (addressing, not dismissing for want of an actual controversy, appeal by injured parties of no-coverage judgment in insurer's declaratory judgment action against insureds and injured parties). Hensley, as a cross claimant in the underlying action, acts as an injured plaintiff there, just like the potential judgment creditors in the above-cited cases. It, like those potential judgment creditors, is properly joined in this action.

Hensley nonetheless tries to distinguish its status in the underlying lawsuit. Even though Hensley, like the Clems, is a potential judgment creditor, which is presently asserting a live cross claim, actively pursuing a judgment against LBJ, and will have any contingency regarding its right to recover determined in the underlying action at the same time the Clems have any contingency as to their right to recover determined, Hensley argues that its status as a potential

judgment creditor is more potential[6] than the Clems because Hensley will recover only if the Clems do *and* Hensley does. (Hensley's Mot. Dismiss at 6.)

Given the nature of Hensley's underlying claim, though, this purported two-step to judgment reduces to only one. As noted above, Hensley's claim is for contribution, which functionally is a pass-through of the Clems' claims. If the Clems recover against Hensley, it seems a foregone conclusion that such a finding would support Hensley's cross claim. There is accordingly one contingency, not two. The Clems, in the underlying action, take issue with Hensley and LBJ's handling foundry sand. There appears to be no dispute that the material was foundry sand, generated by Hensley, and Hensley admits as much in its answer and cross claim: "These materials included foundry sand that was generated by Hensley and transported to the Property by LBJ Trucking." (P. APP. at 011; Hensley's Cross-cl. ¶ 83.) The Clems's and Hensley's claims thus appear to be in lockstep.

But even were they not, it would make no difference to whether there is an actual controversy under the Declaratory Judgment Act. As shown in Atlantic's briefing regarding the Clems' motion to dismiss and in Judge Stickney's Findings, Conclusions and Recommendation on that motion, that the Clems' underlying recovery is contingent does not affect that there is an actual controversy as to them. The same is true for Hensley. Like the Clems, either Hensley will recover in the underlying action or it will not. The conclusion as to Hensley should be no different than as to the other potential judgment creditors, the Clems. Even "[t]he threat of litigation can establish a justiciable controversy if it is specific and concrete." *Shields v. Norton*,

---

[6] Atlantic submits that one either is a potential judgment creditor or is not a potential judgment creditor and that Hensley's notion of degrees of potentiality is a false construct. *Cf.* George Orwell, *Animal Farm* (To a lesser-empowered group of animals, the group of animals that controls the government says, "All animals are equal, but some animals are more equal than others.").

**ATLANTIC CASUALTY'S RESPONSE**
**TO HENSLEY INDUSTRIES' MOTION TO DISMISS**                                          **Page 9**

289 F.3d 832, 835 (5th Cir. 2002). But here, Hensley has not just threatened, but is actively pursuing claims in a live and pending lawsuit. Even when the filing of a lawsuit depends on contingencies, that fact does not *ipso facto* undermine that an actual controversy exists:

> The fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action. *See Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2nd Cir. 1992); 10B Charles A. Wright, et al., *Federal Practice and Procedure* § 2757, at 476 (1984) ("It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real.").

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). Yet an unfiled lawsuit, the filing of which depends on unrealized contingencies, is plainly more tenuous than the controversy between Hensley and Atlantic, but is nonetheless an actual controversy. As with the Clems, an actual controversy under the Declaratory Judgment Act exists between Hensley and Atlantic. The Court should deny Hensley's motion.

### d. The Court should not dismiss Atlantic's claims as a matter of discretion.

As a final matter, Hensley asks the Court to dismiss Atlantic's claims against it as a matter of discretion. To aid a district court in determining whether to hear a declaratory judgment action, the Fifth Circuit devised the following:

> In *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), this court identified seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action. These factors are:
>
> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;

**ATLANTIC CASUALTY'S RESPONSE**
**TO HENSLEY INDUSTRIES' MOTION TO DISMISS**                                       Page 10

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before which the parallel state suit between the same parties is pending.

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003).

The first and seventh factors address whether parallel state court proceedings, which could address the same issues among the same parties, are pending.  That there are no such proceedings related to this action does not make those factors irrelevant.  Instead, it strongly counsels against dismissal.  The Tenth and Eleventh Circuits have stated that dismissing a declaratory judgment action when there is no pending parallel state proceeding is an abuse of discretion.  *Id*. at 393.  The Fifth Circuit declined to adopt such a per se rule, but instead believes that the absence of a pending parallel state proceeding "is a factor that weighs strongly against dismissal." *Id*. at 394.

Based on the second factor, Hensley accuses Atlantic Casualty of filing suit in anticipation of a judgment in the underlying action and of "cut[ting] off a future suit by Hensley before the facts in the Underlying Lawsuit have ever been decided." (Hensley's Mot. Dismiss at 10.)  Cutting off future and duplicative litigation is exactly what the Declaratory Judgment Act is about.  If this Court determines with Hensley as a party that there is no coverage, Hensley will hardly be able to file a future action against Atlantic to recover insurance proceeds.  By the same

token, if the Court decides otherwise, Atlantic would not be able to contest coverage in a future action, as long as Hensley is a party here. Either way, expectations are presently settled and judicial economy enhanced.

Regardless, Atlantic is merely acting within its rights to seek a judicial declaration. Atlantic could not put it better than the Fifth Circuit:

> A proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires. The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court.

*Id*. at 397 (citation omitted). The Fifth Circuit continued:

> Despite the fact that plaintiff may have predicted that there would be a related suit filed . . . (making the federal suit "anticipatory"), "without more, we cannot say that [the declaratory plaintiff's] action is an instance of forum-shopping instead of a reasonable assertion of its rights under the declaratory judgment statute and diversity jurisdiction."

*Id*. at 398 (quoting *United States Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)). The *Sherwin-Williams* court also approvingly quoted the following:

> The Ninth Circuit similarly concluded that even if the insurer anticipated a state court declaratory judgment coverage action, "we know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage."

*Id*. (quoting *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

Based on factor three, Hensley accuses Atlantic of "forum shopping" but fails to make any arguments addressing alleged forum shopping. Hensley instead complains that it had no rights to sue Atlantic in the underlying action or otherwise, which is apparently focused on factor four. (Hensley's Mot. Dismiss at 10.) In any event, Atlantic has not engaged in forum shopping.

**ATLANTIC CASUALTY'S RESPONSE**
**TO HENSLEY INDUSTRIES' MOTION TO DISMISS**                                  **Page 12**

The same law would apply to the coverage action wherever filed, and many—if not most—of the defendants reside in Dallas, including Hensley Industries.[7]  Since when does a defendant complain about being sued in its own back yard?  In any event, this action could not be consolidated with the underlying action because it would inject the issue of insurance coverage there.  There is no forum shopping here.

Based on factor four, Hensley complains that Atlantic has acted when Hensley is powerless to take any affirmative action and further complains that Atlantic determined when and where the action should be filed and the scope of declaratory relief sought.  (Hensley's Mot. Dismiss at 11.)  This is not so much an argument about inequality as a complaint against all plaintiffs who necessarily decide where and when to file, as well as the scope of relief that they seek.  And it is unclear how Hensley is "powerless" to take any action.  Hensley can assert any claims for relief in this action that the law allows.  Hensley's notion of inequality is imaginary and its claims to "powerlessness," feigned.

Hensley also complains that it has to defend in two lawsuits and expend costs and fees that it may never recover.  Atlantic is also having to fund two actions—defending LBJ Trucking in the underlying action and prosecuting this action seeking a declaration of no coverage.  Hensley seems to miss the irony of its argument:  Atlantic would not need to add Hensley to this action were Hensley not trying to put its hand into Atlantic's pocket via Hensley's claims against LBJ in the underlying action.  It hardly seems right that Hensley could pursue money ultimately

---

[7] From Hensley's website:        **Hensley Industries, Inc.**
                                   2108 Joe Field Road
                                   Dallas, Texas 75229  U.S.A.

**ATLANTIC CASUALTY'S RESPONSE**
**TO HENSLEY INDUSTRIES' MOTION TO DISMISS**                                    Page 13

from Atlantic Casualty's policies and at the same time complain of Atlantic's efforts to thwart that pursuit when coverage is lacking.

Hensley also claims that its being dismissed from this action somehow will increase judicial economy. If Hensley is dismissed, the action against the other defendants remains, so the net increase to judicial economy would be zero. Also, Hensley misses the irony of arguing that Atlantic tries to cut off a future action by Hensley and claiming that dismissal supports judicial economy. To the contrary, Hensley seems to contemplate two actions—this one without them and a future one in which, apparently, the same coverage issues are contested again against them. Hensley's view, of course, does not support economy but instead multiplies litigation, which is one of the things declaratory actions are supposed to prevent. This Court can adjudicate the coverage issues regarding Atlantic's policies for all interested parties, including Hensley. That supports judicial economy. Also, Judge Stickney considered the above factors in relation to the Clems' motion, deciding that those factors weighed in favor of the Court hearing Atlantic's claims. (P. APP. at 0032-35; Findings, Conclusions and Recommendation at 16-19.) Again, the conclusion as to Hensley should be no different.

### IV. Conclusion

Hensley's request for dismissal under both rule 12(b)(1) and 12(b)(6) rests on its incorrect notion of actual controversy. Because, as Atlantic Casualty has shown, there is an actual controversy between it and Hensley, the motion to dismiss should be denied. Hensley's request for discretionary dismissal is also ill-founded, likewise supporting denial.

WHEREFORE, Atlantic Casualty prays that the Court deny Hensley's motion to dismiss and for such other and further relief to which it may be entitled.

**ATLANTIC CASUALTY'S RESPONSE**
**TO HENSLEY INDUSTRIES' MOTION TO DISMISS**                                                        **Page 14**

Respectfully submitted,

S<small>AVRICK</small>, S<small>CHUMANN</small>, J<small>OHNSON</small>, M<small>C</small>G<small>ARR</small>,
K<small>AMINSKI</small> & S<small>HIRLEY</small>, L.L.P.

By: _____
    Camille Johnson
    State Bar No. 10686600
    William A. Reece
    State Bar No. 16672990
    6440 N. Central Expwy., Suite 107
    Dallas, Texas 75206
    Phone: (214) 368-1515
    Fax: (214) 292-9647

A<small>TTORNEYS</small> F<small>OR</small> A<small>TLANTIC</small> C<small>ASUALTY</small>
I<small>NSURANCE</small> C<small>OMPANY</small>

### CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2008, I electronically filed the foregoing response with the Clerk of Court for the U.S. District Court for the Northern District of Texas using the CM/ECF system, which will send notification of such filing to counsel of record.

_____
William A. Reece