IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| ROBERT RAMIREZ, individually and | § | CIVIL ACTION NO. 3:07-CV-1297-F |
| d/b/a LBJ TRUCKING CO., INC., | § | |
| LBJ TRUCKING CO., INC., CLEM'S | § | ECF |
| YE OLDE HOMESTEAD FARMS, | § | |
| LTD., BETTYE CRIDER CLEM, | § | |
| CLARENCE TRUMAN CLEM, | § | |
| KELLY CLEM, CLARENCE T. | § | |
| "CASEY" CLEM, JR., HENSLEY | § | |
| INDUSTRIES, INC., PARADIGM | § | |
| ENGINEERING, LLC, GRACOMBS, LLC, | § | |
| LEIGH ANNE PRINS, BILL BRISCOE, | § | |
| and JANET BRISCOE, | § | |
| | § | |
|     Defendants. | § | |

## PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Table of Contents ......................................................................................................... i

Table of Authorities ..................................................................................................... ii

I.      Statement of the Case.........................................................................................1

        A.      The Underlying Lawsuit ..................................................................1

        B.      Atlantic Casualty's First Motion for Summary Judgment.......................4

II.     Summary of the Argument....................................................................................6

III.    Argument and Authorities....................................................................................7

        A.      No Duty to Defend or Indemnify Under the Total Pollution Exclusion.................9

                1.      The Atlantic Casualty Policies...................................................9

                2.      The Underlying Lawsuit Fourth Amended Complaint ...........................10

                3.      The Claims of the Other Parties are Derivative of the Clems' Claims......14

        B.      No Duty to Defend or Indemnify Under the "Claims in Process" Exclusion........15

                1.      The Atlantic Casualty Policies...................................................15

                2.      The Underlying Lawsuit Fourth Amended Complaint ...........................16

        C.      No Duty to Defend or Indemnify Under the Fortuitous Loss Doctrine................18

        D.      No Duty to Defend Under the Duty to Defend Limitation ...................................19

IV.     Conclusion .........................................................................................................20

TABLE OF AUTHORITIES

**Cases**

*A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 842 F. Supp. 1166, (N.D. Iowa 1993) ....................................................................................................10

*Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659 (5th Cir. 2000) ......................................7

*Allen v. St. Paul Fire & Marine Ins. Co.*, 960 S.W.2d 909 (Tex. App.–Texarkana 1998, no pet.) ............................................................................................................11

*Alcolac Inc. v. California Union Ins. Co.*, 716 F. Supp. 1546 (D. Md. 1989)..............................11

*Amoco Prod. Co. v. Hydroblast Corp.*, 90 F.Supp.2d 727 (N.D. Tex. 1999)..............................12

*Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663 (Tex. 1987)............................................................7

*Bituminous Cas. Corp. v. Kenworthy Oil Co.*, 912 F. Supp. 238 (W.D. Tex. 1996)....................12

*E&L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272 (Tex. App.–Beaumont 1998, no pet.) ............................................................................................................12

*Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81 (Tex. 1997)..............................8, 13, 17

*Franklin v. Fugro-McClelland, Inc.*, 16 F. Supp.2d 732 (S. D. Tex. 1997) ...............................18

*Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239 (5th Cir. 2000) ....................7, 8, 18

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006)....................................................................................................................7, 8

*King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185 (Tex. 2002) ............................................................7

*National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995)...................11, 13

*National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139 (Tex. 1997)............................................................................................................8

*Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642 (5th Cir. 2008) ...................................13

*Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex. 1984)............................................................18

*Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) ............................................................................12

*Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72 (Tex. App—Dallas 2001, pet. denied) ....................18

*Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495 (Tex. App.—Houston [14th Dist.]
    1995, no writ) ............................................................................................................................18

*United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 525 F.3d 400 (5th Cir. 2008) ..................................8, 12

*United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445 (5th Cir. 2007),
    *amended on denial of rehearing*, 525 F.3d 400 (5th Cir. 2008) ...............................................12

*Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.2d 760
    (Tex. App.—Fort Worth 2006, pet. denied) ............................................................................18

*Williams Consolidated I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895
    (Tex. App.—Houston [14th Dist.] 2004, no pet.) .....................................................................16

*Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565 (Tex. App.–San Antonio
    2002, pet. denied)................................................................................................................12, 13

**Statutes**

Resource Conservation Recovery Act, 42 U.S.C. § 6903(27) .......................................................10

## PLAINTIFF ATLANTIC CASUALTY'S BRIEF IN SUPPORT
## OF ITS SECOND MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") files this Brief in support of its Second Motion for Summary Judgment in the above action, and respectfully shows the Court as follows:

### I.      Statement of the Case

This declaratory judgment action stems from an environmental contamination lawsuit filed on June 12, 2007 by Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem and Clarence T. "Casey" Clem, Jr. (collectively, "the Clems") against numerous defendants, including Robert Ramirez, individually and d/b/a LBJ Trucking Co., Inc., and LBJ Trucking Co., Inc. (collectively, the "Underlying Lawsuit Defendants"), styled and numbered Cause No. 4:07-CV-285-RAS-DDB, *Clem's Ye Olde Homestead Farms, Ltd., et al v. Briscoe, et al*, in the United States District Court for the Eastern District of Texas, Sherman Division (the "Underlying Lawsuit").  (App. 1-36)

### A.      The Underlying Lawsuit

According to the Fourth Amended Complaint in the Underlying Lawsuit,[1] a parcel of land located at 1639 Parker Road in Carrollton, Texas ("the Clem property") has become a dumping site of solid municipal waste and foundry sand generated by Hensley Industries, Inc. ("Hensley") and other debris, that was transported by Robert Ramirez, individually and d/b/a LBJ Trucking, Co., Inc. ("Ramirez"), and LBJ Trucking Co., Inc.  (App. 1, 4-5)  The Clems, who

---

[1] Throughout its motion and brief, Atlantic Casualty treats the Underlying Lawsuit's purported factual and legal allegations as true solely for the determination of the duties to defend and/or indemnify in this insurance coverage action.  Atlantic Casualty does not assume, however, that those factual and legal allegations are credible or legally sufficient.  Atlantic Casualty expressly denies and disclaims that any discussion of the Clems' or other parties' allegations within this motion and brief constitutes any admission or waiver in the underlying litigation or any other.

are owners of the Clem property, allege that Bill Briscoe, individually and d/b/a Briscoe Land Reclamation Project and d/b/a Bill Briscoe Enterprises, Inc. ("Briscoe") engaged in the storage and disposal of solid waste, including foundry sand, that has contaminated the Clem property. (App. 1-2)  Janet Briscoe participated in the storage and disposal of the solid waste at the Clem property.  (App. 5)  Leigh Anne Prins ("Prins"), Paradigm Engineering, LLC ("Paradigm"), and Gracombs, LLC ("Gracombs") made representations or advised Briscoe in the storage and disposal of the solid waste at the Clem property. (App. 5-7)

The Clems allege that in 2001, Briscoe began performing reclamation work on a 46-48 acre part of the Clem property, and contracted to bring in "clean fill material" as part of a project to raise certain lands out of the flood plain.  (App. 6)  The first load of foundry sand, as opposed to clean fill material, was delivered to the Clem property by Ramirez in December 2001.  (App. 7)  Ramirez was the transporter of the foundry sand from December 2001 until at least October 17, 2002, when LBJ Trucking was incorporated.  (App. 7)

In general, Hensley generated the foundry sand and provided it to Ramirez and LBJ Trucking, who transported the material and other solid waste to the Clem property.  (App. 8) Hensley, Briscoe, Janet Briscoe, and other Briscoe entities handled it and arranged for its disposal at the Clem property.  (App. 8)  The Underlying Lawsuit Defendants, including LBJ Trucking, had continuous knowledge of the presence of solid waste and foundry sand that was being illegally disposed of at the Clem property.  (App. 8)

The Clems allege that they were not aware that Briscoe was accepting, storing and disposing of foundry sand and other solid waste generated by Hensley and transported by Ramirez and LBJ Trucking to the Clem property.  (App. 7)  The Clems did not become aware until approximately April 2006 that foundry sand and other solid waste had been transported to

and disposed of on the property, and multiple truckloads of such material continued to be transported to and disposed of at the property until at least May 2, 2006.  (App. 7)  The Clems allege the solid waste presents an imminent and substantial endangerment to individuals and the environment.  (App. 9)  More than 10,000 cubic yards of foundry sand and other solid waste were illegally disposed of on their land.  (App. 10)  Substantial quantities of solid waste and foundry sand remain at the property, as only a few buckets of it have been removed.  (App. 8)

LBJ Trucking was insured under commercial general liability ("CGL") policies numbered L057003403 and L057004262 issued by Atlantic Casualty effective April 27, 2004 to April 27, 2005 and April 28, 2005 to June 16, 2005, respectively.  (App. 37-119)  Atlantic Casualty understands that Robert Ramirez is an officer or director of LBJ Trucking.  The Atlantic Casualty policies do not cover Ramirez acting individually or d/b/a LBJ Trucking before the incorporation of LBJ Trucking Co., Inc.[2]  (App. 37, 60 and 76, 101)

Ramirez and LBJ Trucking demanded defense and indemnity coverage for the allegations made against them in the Underlying Lawsuit under the Atlantic Casualty policies.  Atlantic Casualty has been providing a defense for LBJ Trucking (including Ramirez as an officer and director of LBJ Trucking) in the Underlying Lawsuit under an express reservation of Atlantic Casualty's rights under the policy to contest coverage.  Atlantic Casualty refers to LBJ Trucking and Ramirez as an officer and director of LBJ Trucking collectively as "LBJ Trucking."

The Clems have alleged causes of action against LBJ Trucking for violations of the federal Resource Conservation Recovery Act, violations of the Texas Health and Safety Code,

---

[2]   Under the policies' definition of "Who is an Insured," Section II.1.d., LBJ Trucking is an insured.  In addition, when the insured is a corporation such as LBJ Trucking, "Your 'executive officers' and directors are insureds, but only with respect to the conduct of your business."  (App. 60, 101)  Thus, Robert Ramirez would be an insured in his capacity *as an officer and director* while conducting the business of LBJ Trucking *after* its incorporation. Robert Ramirez did not purchase any insurance coverage from Atlantic Casualty individually or when he was merely doing business as LBJ Trucking before its incorporation, and he is *not* an insured during that time, or in that capacity, under the Atlantic Casualty policies.  Therefore, Atlantic Casualty has no duty to defend or indemnify Ramirez against the claims in the Underlying Lawsuit by the Clems or by any other parties.

and under Texas common law for nuisance, negligence, and trespass.  (App. 9-15)  The Clems have alleged these claims against other Underlying Lawsuit Defendants, and have also asserted additional causes of action for aiding and abetting and tortious interference with license agreement against Paradigm, Gracombs, and Prins, and breach of license agreement, violations of the Texas Deceptive Trade Practices Act, indemnity, partnership liability, joint enterprise liability, and spousal liability against Janet Briscoe and/or Briscoe.  (App. 9-22)  The Clems seek millions of dollars in damages, injunctive relief, civil penalties, punitive damages, costs, and attorney's fees.  (App. 23-24)

### B.      Atlantic Casualty's First Motion for Summary Judgment

On October 22, 2007, Atlantic Casualty filed its first Motion for Summary Judgment (doc. # 17-19).  In the motion, Atlantic Casualty demonstrated that as a matter of law, it has no duty to defend or indemnify LBJ Trucking, or its officer and director Robert Ramirez (or any other defendant), regarding the Clems' claims in the Underlying Lawsuit.  The Underlying Lawsuit against LBJ Trucking is based *entirely* on allegations that it transported, handled, and arranged for disposal of foundry sand and other solid waste on the Clems' property, which resulted in environmental contamination to the property.

The Atlantic Casualty CGL policies contain a Total Pollution Exclusion endorsement providing that coverage is absolutely excluded for the discharge, dispersal or release of pollutants, which includes waste materials such as the municipal solid waste and foundry sand that LBJ Trucking allegedly transported to the Clems' property.  Under the "eight corners" rule of Texas insurance law, in which the Court evaluates only the allegations in the Underlying Lawsuit and the insurance policies' terms, Atlantic Casualty is entitled to summary judgment

because its policies do not provide coverage for the claims asserted by the Clems against LBJ Trucking in the Underlying Lawsuit.

On August 5, 2008, the Magistrate Judge filed his Findings, Conclusions, and Recommendation recommending that the Court grant Atlantic Casualty's Motion for Summary Judgment because Atlantic Casualty has no duty to defend or indemnify LBJ Trucking under its policies' Total Pollution Exclusion (doc. # 58).[3]   The Magistrate Judge noted that Atlantic Casualty had not asked for any decision regarding any counterclaims or cross-claims filed in the Underlying Lawsuit.  After Atlantic Casualty filed its Motion for Summary Judgment, the Clems had repeatedly amended their Complaint in the Underlying Lawsuit and added parties, who ultimately filed counterclaims and cross-claims against the other parties, including LBJ Trucking.

When the deadline to amend pleadings and join parties in the Underlying Lawsuit had passed, and all of the various parties' claims, counterclaims and cross-claims against LBJ Trucking had been alleged, Atlantic Casualty was granted leave to file its First Amended Complaint to add as defendants in this case the additional parties in the Underlying Lawsuit, Hensley, Paradigm, Gracombs, Prins, Briscoe, and Janet Briscoe (doc. #67).  Atlantic Casualty has also been granted leave to file this Second Motion for Summary Judgment to address the additional claims against LBJ Trucking, so that the sole remaining question of law in this lawsuit could be resolved fully.[4]

---

[3]  The Magistrate Judge had previously recommended that the Clems' Motion to Dismiss Atlantic Casualty's claims against them be denied (doc. #39).  Judge O'Connor had not yet made a determination on either of the Magistrate Judge's Recommendations when the case was transferred to this Court's docket, thus as of the time of this filing Atlantic Casualty's first Motion for Summary Judgment is one of its pending motions.

[4]  Without repeating them here, Atlantic Casualty incorporates by reference its first Motion for Summary Judgment, Brief, Appendix and Replies (doc. # 17-19, 27-28, 53-54) into this document, as well as its responses to the Clems' and LBJ Trucking's and Ramirez's Objections to the Magistrate Judge's Recommendation (doc. # 62-63).

## II.      Summary of the Argument

The Atlantic Casualty policies contain a Total Pollution Exclusion endorsement providing that coverage is excluded for the discharge, dispersal or release of pollutants, which includes waste materials such as the municipal solid waste and foundry sand that LBJ Trucking allegedly transported to and deposited on the Clem property.  (App. 73, 114)  The Magistrate Judge properly concluded under the Texas "eight corners" doctrine that the Total Pollution Exclusion was both patently and latently unambiguous, and excluded coverage, so that Atlantic Casualty had no duty to defend or indemnify LBJ Trucking against the Clems' claims in the Underlying Lawsuit (doc. # 58).[5]  The Magistrate Judge also properly concluded that the solid waste and foundry sand that LBJ Trucking allegedly transported to and deposited on the Clem property were "pollutants" as defined by the Atlantic Casualty policies, and that the injuries alleged in the Underlying Lawsuit were caused by the discharge, dispersal, seepage, migration, release or escape of pollutants.

For the same reasons, Atlantic Casualty has no duty to defend LBJ Trucking (or Ramirez) for the claims asserted by the counterclaimants and cross-claimants in the Underlying Lawsuit. The counterclaims and cross-claims by these other parties against LBJ Trucking are entirely derivative of the Clems' claims against LBJ Trucking, for which the Magistrate Judge has recommended that summary judgment in favor of Atlantic Casualty be granted.  Therefore, this Second Motion for Summary Judgment should also be granted.

---

[5]  Because the Magistrate Judge concluded that Atlantic Casualty had no duty to defend or indemnify LBJ Trucking under the Total Pollution Exclusion, the Recommendation did not reach the issues of whether Atlantic Casualty also had no duty to defend or indemnify for additional separate and independent reasons, under the policies' Claims in Process Exclusion, the Texas common law fortuitous loss doctrine, or the policies' Duty to Defend Limitation.  As Atlantic Casualty will show, it is entitled to summary judgment regarding the parties' counterclaims and cross-claims against LBJ Trucking under those exclusions/doctrines/limitations as well.  Atlantic Casualty incorporates by reference all of its previous briefing on those issues.

Atlantic Casualty submits as its summary judgment evidence the Fourth Amended Complaint in the Underlying Lawsuit (App. 1-36), the two CGL policies Atlantic Casualty issued to LBJ Trucking (App. 37-119), Hensley's Answer in the Underlying Lawsuit (App. 120-135), Paradigm's and Gracombs' Amended Answer in the Underlying Lawsuit (App. 136-164), Prins's Third Amended Answer in the Underlying Lawsuit (App. 165-193), and Briscoe and Janet Briscoe's Joint Answer in the Underlying Lawsuit (App. 194-218).

## III.    Argument and Authorities

Texas law governs this diversity case, which is a dispute over contracts (insurance policies) requested, negotiated and delivered in Texas to a Texas resident.  The Fifth Circuit reviews this Court's interpretation of an insurance policy *de novo*.  *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 677 (5th Cir. 2000).  Under Texas law, insurance policies are generally subject to the same rules of interpretation as other contracts.  *Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000), *citing Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  Additionally, the Fifth Circuit reviews *de novo* this Court's determinations of state law.  *Guaranty Nat'l  v. Azrock*, 211 F.3d at 242.

Under the "eight corners" or complaint allegation rule, an insurer's duty to defend its insured "is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity" of the allegations made against the insured. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).  The "eight corners" rule takes its name from the fact that only two documents are ordinarily relevant to the determination of an insurer's duty to defend – the four corners of the insurance policy, and the four corners of the third-party claimant's petition.  *Id*.; *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).  Facts outside the pleadings, even when easily ascertainable, are

ordinarily not considered, and the allegations against the insured are liberally construed in favor of coverage. *GuideOne* at 308; *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). This duty to construe the pleadings liberally does not require the court to "adopt unreasonable interpretations of plain language, ignore ordinary usage, or set aside the basic tools of construction." *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 525 F.3d 400, 401 (5th Cir. 2008).

Under Texas law, an insurer's duty to defend and duty to indemnify are distinct and separate in scope. *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). The duty to indemnify is narrower, because the insurer may have a duty to defend but ultimately no duty to indemnify. *Id*.; *Guaranty Nat'l v. Azrock*; 211 F.3d at 243. When the petition does not allege facts within the scope of coverage, there is no duty to defend or indemnify. *Griffin*, 955 S.W.2d at 82.

Atlantic Casualty has no duty to defend LBJ Trucking (or Ramirez) for any claims asserted in the Underlying Lawsuit because neither the Clems' Fourth Amended Complaint nor the derivative counterclaims and cross-claims of the other parties state a cause of action or allege facts falling within the coverage terms of the Atlantic Casualty insurance policies. All of the allegations made against LBJ Trucking are expressly excluded under the policies. Atlantic Casualty is entitled to summary judgment as a matter of law because its CGL policies do not provide coverage for, or require it to defend against, the Clems' or other parties' claims regarding LBJ Trucking in the Underlying Lawsuit. Under the eight corners analysis, the four corners of the Atlantic Casualty insurance policies are compared to the four corners of the plaintiffs' and counterclaimants/cross-claimants' complaint or answers in the Underlying Lawsuit.

A.    No Duty to Defend or Indemnify Under the Total Pollution Exclusion

Each of the Atlantic Casualty CGL policies contains a Total Pollution Exclusion endorsement which, as the Magistrate Judge correctly found regarding the Clems' claims, clearly and expressly precludes coverage for all of the allegations asserted in the Underlying Lawsuit against LBJ Trucking.

1.    The Atlantic Casualty Policies

The Total Pollution Exclusion reads as follows and applies to preclude coverage for the Underlying Lawsuit allegations:

> *Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability is replaced by the following.*
>
> *This insurance does not apply to:*
>
> *f. Pollution*
>
> *(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*
>
> *(2) Any loss, or expense arising out of any:*
>
>> *(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or*
>>
>> *(b) Claim or suit by or behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."*

(App. 73, 114)

The initial 2004-2005 policy defines "pollutants" as:

> *Any solid, liquid, gaseous or thermal <u>irritant or contaminant</u>, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and <u>waste</u>.  Waste includes materials to be recycled, reconditioned or reclaimed.*

(App. 66)

The 2005-2006 renewal policy defines "pollutants" as follows:

> *"Pollutants" means solid, liquid, gaseous, or thermal irritant or contaminant <u>or</u> all material for which a Material Safety Data Sheet is required pursuant to federal, state or local laws, where ever discharged, dispersed, seeping, migrating or released, including onto or into the air or any air supply, water or any water supply or land, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, sewage; and associated smoke, vapor, soot, fumes from said substance.  Waste includes materials to be recycled, reconditioned, or reclaimed.*

(App. 114)

### 2.    The Underlying Lawsuit Fourth Amended Complaint

The Underlying Lawsuit against LBJ Trucking is based *<u>entirely</u>* on allegations that it transported, handled, and arranged for disposal of foundry sand[6] and other solid waste[7] on the Clem property, which resulted in environmental contamination to the property.  (App. 4-15)  This waste material is clearly defined as a "pollutant" under each of the Atlantic Casualty policies.  (App. 66, 114)  The alleged transporting and releasing or disposing of pollutants is expressly precluded from coverage under the Total Pollution Exclusion.  (App. 73, 114)

---

[6]  "Foundry sand" is waste sand resulting from the manufacture of metal alloy products in a foundry.  Although no Texas court has discussed whether foundry sand is a "pollutant," a federal court in the Midwest, where foundries are apparently more common, has so concluded.  *See A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 842 F. Supp. 1166, 1175-76 (N.D. Iowa 1993) (foundry sand was "waste" within the meaning of the pollution exclusion of CGL policies under Iowa law).

[7]  According to the Clems' Fourth Amended Complaint, "Solid Waste" as defined in the federal Resource Conservation Recovery Act includes "discarded material, garbage, refuse, waste sludge from treatment facilities, and any type of material that is discarded, except for domestic sewage, irrigation return flows permitted pursuant to the CWA and nuclear waste."  (App. at 9-10, *citing* 42 U.S.C. § 6903(27))

The exclusion in the Atlantic Casualty policy is a "total" pollution exclusion (also sometimes referred to in the case law as an "absolute" pollution exclusion), in which there is no coverage for injury or damage related to pollution *under any circumstances*.[8]   More than a decade ago, the Texas Supreme Court construed an absolute or total pollution exclusion with language similar to the Atlantic Casualty policy exclusions in *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995).   The Texas Supreme Court found the exclusion unambiguous and refused to permit extrinsic evidence or discovery to contradict the meaning of the plain language of the insurance policy:

> In this case, the policies unequivocally deny coverage for damage resulting from pollutants, however the damage is caused. . . . Courts usually strive for uniformity in construing insurance provisions, especially where, as here, the contract provisions at issue are identical across the jurisdictions.   Most courts which have examined the same or substantially similar absolute pollution exclusions have concluded that they are clear and unambiguous.   "This pollution exclusion is just what it purports to be - absolute ..."   *Alcolac [Inc. v. California Union Ins. Co.]*, 716 F. Supp. 1546, 1549 (D. Md. 1989).   We agree.   The language in this pollution exclusion is clear and susceptible of only one possible interpretation in this case.   Because there are no latent or patent ambiguities in the policies, there are no fact issues that merit discovery.   We conclude that the record is sufficiently developed to support the trial court's summary judgment in favor of the defendant insurance companies.

*National Union* at 522 (footnotes omitted).   The Texas Supreme Court affirmed the summary judgment in favor of the insurers.

Since *National Union*, Texas courts have consistently concluded that such absolute or total pollution exclusions clearly and unambiguously preclude coverage for damage related to the release or dispersal of pollutants.  *Allen v. St. Paul Fire & Marine Ins. Co.*, 960 S.W.2d 909, 912 (Tex. App.–Texarkana 1998, no pet.) (plaintiff's pleadings did not allege facts separate from contamination, and because "contaminants" were included in the policies' absolute pollution

---

[8] Some CGL policies have pollution exclusions which may provide coverage under certain specific exceptions. Cases construing those qualified pollution exclusions are distinguishable from the cases construing the "total" or "absolute" pollution exclusions, such as the exclusion in the Atlantic Casualty policies in this case.

exclusions, all of the plaintiffs' claims were excluded under the policies; the insurer had no duty

to defend); *E&L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272, 277-278 (Tex. App.–

Beaumont 1998, no pet.) (plaintiff claimed damages from contaminated water, which fell under

the unambiguous language of the absolute pollution exclusion; no coverage or duty to defend);

*Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 340 (Tex. App.–Houston [14th

Dist.] 2004, pet. denied) (total pollution exclusion was unambiguous; no duty to defend or

indemnify); *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573-74 (Tex. App.–San

Antonio 2002, pet. denied) (same).

The Fifth Circuit construed a pollution exclusion identical to the Atlantic Casualty

policies' Total Pollution Exclusion in *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445,

448 (5th Cir. 2007) *amended on denial of rehearing*, 525 F.3d 400 (5th Cir. 2008).  The Fifth

Circuit affirmed the district court's granting of summary judgment in favor of the insurer on the

basis that the pollution exclusion precluded coverage or a defense in a lawsuit brought by

workers injured while removing petroleum-byproduct sludge.  The Fifth Circuit held:

> if a claim alleges that injury arose at least in part from a pollutant, coverage is
> denied.  *See, e.g., Amoco Prod. Co. v. Hydroblast Corp.*, 90 F.Supp.2d 727, 732-
> 33 (N.D. Tex. 1999) (allegation of pollutant-related injury sufficient to trigger
> pollution exclusion clause); *Bituminous Cas. Corp. v. Kenworthy Oil Co.*, 912 F.
> Supp. 238, 241 (W.D. Tex. 1996) (same).

*United Nat'l Ins. Co.*, 525 F.3d at 401-02.

The Fifth Circuit has also recently construed a pollution exclusion with the identical

definition of "pollutants" contained in the first Atlantic Casualty policy, and declared it to be

"unambiguous:"

> The pollution exclusion clause in the [Bituminous Casualty] policy states
> that the policy does not cover liability for:
>
> (1) **Bodily injury** or **property damage** arising out of the actual,

>   alleged or threatened discharge, dispersal, release or escape of pollutants.
>
>   ....
>
>   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.
>
> Texas courts have consistently held similar pollution exclusions to be unambiguous.  Like those courts, we hold the pollution exclusion here at issue to be unambiguous.

*Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 646 (5th Cir. 2008), *citing National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 527, 521 (Tex. 1995) (holding that absolute pollution exclusion in policy is neither patently nor latently ambiguous);[9] *Zaiontz v. Trinity Universal Ins. Co.,* 87 S.W.3d 565, 571 (Tex. App.—San Antonio 2002, pet. denied) (holding that absolute pollution exclusion is not latently ambiguous).  The Fifth Circuit held that the insurer was not required to defend or indemnify because there was no coverage under the policy's pollution exclusion.

In this case, the Clems claim that their injury (contamination of the Clem property) arose entirely from the transporting and disposal of pollutants on their land, therefore the Magistrate Judge properly concluded that Atlantic Casualty is not required to defend or indemnify LBJ Trucking in the Underlying Lawsuit.  When the petition or complaint does not allege facts within the scope of coverage, there is no duty to defend or indemnify.  *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

---

[9]  In their Objections to the Magistrate Judge's Recommendation, the Clems tried to distinguish away *Noble Energy*. The Clems played semantic games, claiming that the word that they selected in their serial Complaints to describe environmental contamination, "deposit," does not have the same meaning and legal effect as the words used in the Atlantic Casualty policies to describe environmental contamination:  "discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"  The Clems merely tried to plead around the specific definitions in the policies in a transparent attempt to manufacture coverage where none exists.  The Magistrate Judge did not find these arguments credible and correctly declined to ignore the Fifth Circuit's holding in *Noble Energy* by finding the Total Pollution Exclusion ambiguous, as the Clems advocated.

### 3.    The Claims of the Other Parties are Derivative of the Clems' Claims

The Magistrate Judge properly concluded that the Total Pollution Exclusion was both patently and latently unambiguous, and excluded coverage, so that Atlantic Casualty had no duty to defend or indemnify LBJ Trucking against the Clems' claims in the Underlying Lawsuit.  The counterclaims and cross-claims against LBJ Trucking of the other parties – Hensley, Paradigm and Gracombs, Prins, and the Briscoes – are entirely derivative of the Clems' claims.  Therefore, Atlantic Casualty is entitled to summary judgment with regard to all of these other claims against LBJ Trucking for the same reasons the Magistrate Judge set forth in the Recommendation.

Hensley asserts that to the extent the Clems sustained injury as alleged in their Fourth Amended Complaint, the injuries were caused by other parties, including LBJ Trucking, so that Hensley's liability should be reduced proportionally or negated under the doctrines of contribution and indemnity.  (App. 133)  Paradigm and Gracombs assert a cross-claim against other parties, including LBJ Trucking, and allege that they are entitled to contribution because the Clems' damages were caused by the wrongful conduct of the other parties.  (App. 161-162)  Prins asserts a cross-claim against other parties, including LBJ Trucking, and alleges that she is entitled to contribution because the Clems' damages were caused by the wrongful conduct of the other parties.  (App. 190-191)  Finally, the Briscoes assert that they are entitled to contribution from and a finding of the proportionate responsibility of the Clems and the other parties.  (App. 215)

All of these claims are *entirely derivative* of the Clems' claims against LBJ Trucking. The counterclaimants/cross-claimants have no independent claims whatsoever on any basis against LBJ Trucking.  If the Clems lose at trial in the Underlying Lawsuit, no reason for contribution or indemnity will exist, and all of these claims against LBJ Trucking will be moot.

The Magistrate Judge has recommended that the Court grant Atlantic Casualty's first Motion for Summary Judgment and declare that Atlantic Casualty has no duty to defend or indemnify LBJ Trucking with respect to the Clems' claims.  For the same reasons, Atlantic Casualty has no duty to defend or indemnify LBJ Trucking for the derivative counterclaims and cross-claims of the other parties in the Underlying Lawsuit.

**B.      No Duty to Defend or Indemnify Under the "Claims in Process" Exclusion**

Because the Magistrate Judge concluded that Atlantic Casualty had no duty to defend or indemnify LBJ Trucking under the policies' Total Pollution Exclusion, the Recommendation did not analyze the other three separate and independent bases under which Atlantic Casualty is also entitled to summary judgment.   First, each of the Atlantic Casualty policies issued to LBJ Trucking contains a "Claims in Process" Exclusion that excludes coverage for "bodily injury" and "property damage" under Coverage A of the CGL policy.

**1.      The Atlantic Casualty Policies**

The "Claims in Process" exclusion reads as follows:

> *Paragraphs b (3), c. and d. under Insuring Agreement of Section I – Coverage A- Bodily Injury and Property Damage Liability are deleted.  The following is added to 2. Exclusions under Section I – Coverage A – Bodily Injury and Property Damage Liability:*
>
> *1.  any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown:*
>
> > *a. which first occurred prior to the inception date of this policy; or*
> >
> > *b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy.*
>
> *2.  any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.*

> *We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.*

(App. 69, 110)  The exclusion clearly and unambiguously precludes coverage for all losses that occurred, or were in the process of occurring, prior to the inception of the policy, whether known or unknown.  The "Claims in Process" exclusion provides for coverage only if an "occurrence" happened during the policy period, and contractually negates any claim that coverage may be triggered when an occurrence happened *before* the policy period but the damage had not yet been discovered, or manifested until some time during the policy period.[10]

## 2.    The Underlying Lawsuit Fourth Amended Complaint

According to the Fourth Amended Complaint, before he incorporated LBJ Trucking, Robert Ramirez individually began transporting waste material to the Clem property in December 2001.  (App. 7)  LBJ Trucking's alleged environmental contamination of the Clem property (by transporting and releasing foundry sand and other solid waste, as opposed to clean fill dirt) first occurred when Ramirez incorporated the company on October 17, 2002.[11]  (App. 7)  This was *more than eighteen months* before the inception date of the first Atlantic Casualty policy on April 27, 2004.  (App. 37)  The alleged environmental contamination continued to occur afterward with every subsequent load of solid waste and foundry sand that LBJ Trucking transported to the Clem property.  (App. 7)

---

[10] This case, and the Claims in Process exclusion, differs from the "Prior Incident(s) and Prior Construction Defects Exclusion" discussed in the mold case *Williams Consolidated I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  In *Williams*, the petition did not allege when damage from the mold began, unlike the Fourth Amended Complaint in this case, which specifies that LBJ Trucking first began delivering solid waste and foundry sand to the Clem property upon its incorporation on October 17, 2002. (App. 7)

[11]  The Clems allege that Ramirez individually (who is not an insured under the Atlantic Casualty policies) had already been delivering waste and foundry sand to the Clem property for several months, since December 2001, before he incorporated LBJ Trucking on October 17, 2002.  (App. 7)

The allegations against LBJ Trucking in the Underlying Lawsuit are not covered under the Atlantic Casualty policies because of the Claims in Process Exclusion.   Under Claims in Process Exclusion sections 1.a. and 1.b. quoted above, the policies expressly exclude coverage for any loss or claim for property damage, whether known or unknown, "which first occurred prior to the inception date of this policy" or are "alleged to be in the process of occurring as of the inception date of this policy."   (App. 69, 110)   The Clems allege that the environmental contamination damage to their land resulted from the deposit of the foundry sand and Solid Waste.   With respect to LBJ Trucking, the damage thus *first occurred* with the first load it transported to and deposited on the Clems' land.   It is irrelevant, for purposes of the Claims in Process Exclusion, whether LBJ Trucking took ten more loads, a hundred more loads or a thousand more loads of the waste to the Clems' land after the first policy incepted.

There is no coverage, and no duty to defend or indemnify, because the Clems have pleaded facts that indicate the damage to their land from LBJ Trucking's transportation and disposal of the foundry sand and Solid Waste "first occurred" long before the policy ever became effective.   Therefore, under the plain language of the policies, which is susceptible of only one reasonable construction, there is no coverage for, and Atlantic Casualty is not required to defend against, the claims by the Clems or the derivative claims by the counterclaimants/cross-claimants regarding LBJ Trucking in the Underlying Lawsuit.   When the petition or complaint does not allege facts within the scope of coverage, there is no duty to defend or indemnify.   *Farmers Tex. County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).

The "Claims in Process" exclusion applies to both the duty to defend and the duty to indemnify.   In addition to precluding coverage, the exclusion expressly negates any duty to defend.   If insurance policy terms are susceptible of only one reasonable construction, they will

be enforced as written.  *Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 242 (5th Cir. 2000), *citing Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).  Atlantic Casualty is entitled to summary judgment on this issue as a matter of law.

### C.    No Duty to Defend or Indemnify Under the Fortuitous Loss Doctrine

Even if the Atlantic Casualty policies did not contain the "Claims in Process" exclusion, coverage for the claims against LBJ Trucking in the Underlying Lawsuit would still be precluded under the common law "fortuitous loss" or "fortuity" doctrine.   Under Texas insurance law, fortuity is an inherent element in all risk insurance policies.  *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App.—Houston [14[th] Dist.] 1995, no writ).  The doctrine incorporates the "known loss" and "loss in progress" principles, which focus on the proposition that "insurance coverage is precluded where the insured is, or should be, aware of an ongoing progressive loss or known loss at the time the policy is purchased."   *Id*.   "An insured cannot insure against something that has already begun and which is known to have begun."  *Warrantech Corp. v. Steadfast Ins. Co*., 210 S.W.2d 760, 766 (Tex. App.—Fort Worth 2006, pet. denied).

The common law "loss in progress" principle was enshrined in the "Claims in Process" exclusion of the Atlantic Casualty policies.  When, as in this case, the alleged injury began prior to the insurance coverage inception date, coverage is precluded under the fortuitous loss doctrine.  *Two Pesos*, 901 S.W.2d at 502, *Franklin v. Fugro-McClelland, Inc.*, 16 F.Supp.2d 732, 735 (S. D. Tex. 1997); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 76-77 (Tex. App—Dallas 2001, pet. denied).

The Clems' Fourth Amended Complaint alleges that the Underlying Lawsuit Defendants, including LBJ Trucking, have had "*continuous knowledge*" of the presence of solid waste and foundry sand that was being illegally disposed of at the Clem property.  (App. 8)  LBJ Trucking

knew at the time it obtained the first Atlantic Casualty policy that it had already been transporting the solid waste and foundry sand to the Clem property for many months. LBJ Trucking's repeated transportation and dispersal of solid waste and foundry sand to the Clem property detailed at length above was an ongoing progressive loss and known loss before the first Atlantic Casualty policy's effective or inception date, which precludes coverage under the Atlantic Casualty policies. Atlantic Casualty is not required to defend against or indemnify the claims by the Clems or the derivative claims by the counterclaimants/cross-claimants regarding LBJ Trucking in the Underlying Lawsuit.

### D. No Duty to Defend Under the Duty to Defend Limitation

Finally, Atlantic Casualty has no duty to defend LBJ Trucking in the Underlying Lawsuit because of an additional policy provision. Under the Duty to Defend Limitation, the CGL policies simply provide:

> Where there is no coverage under this policy, there is no duty to defend any insured.

(App. 71, 112)

Atlantic Casualty has demonstrated that the Total Pollution Exclusion and the Claims in Process Exclusion in its CGL policies, and the common law fortuitous loss doctrine, independently preclude coverage for and a defense against the Clems' claims and the counterclaims/cross-claims in the Underlying Lawsuit against LBJ Trucking. When the Court enforces the insurance policy terms as written, as it is required to do under Texas law, Atlantic Casualty is entitled to summary judgment as a matter of law that it has no duty to defend LBJ Trucking on an additional basis as well, under the Duty to Defend Limitation.

## V.      Conclusion

Atlantic Casualty has demonstrated that under the governing "eight corners" rule, as a matter of law Atlantic Casualty has no duty to defend or indemnify LBJ Trucking or Robert Ramirez, or any other insured or defendant for the claims asserted by the Clems or the derivative claims asserted by the counterclaimants/cross-claimants in the Underlying Lawsuit.  No genuine issues of material fact exist which would preclude summary judgment in favor of Atlantic Casualty.

WHEREFORE, Atlantic Casualty prays that the Court grant in all respects its Motion for Summary Judgment, declare that Atlantic Casualty has no duty to defend or indemnify LBJ Trucking or Robert Ramirez, or any other insured or defendant for the claims asserted by the Clems or the counterclaimants/cross-claimants in the Underlying Lawsuit, and award Atlantic Casualty its costs of court, reimbursement for its defense costs, and for all additional relief to which it may be entitled.

Respectfully submitted,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

By: _Camille Johnson_____
Camille Johnson, Attorney-in-Charge
State Bar No. 10686600
Gary N. Schumann
State Bar No. 17851930
6440 N. Central Expressway, Suite 107
Dallas, Texas  75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: camille@ssjmlaw.com

**ATTORNEYS FOR PLAINTIFF**
**ATLANTIC CASUALTY INSURANCE COMPANY**

Of counsel:

William A. Reece
State Bar No. 16672990
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.
6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647
Email: breece@ssjmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of April, 2009, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the CM/ECF system, and I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


Camille Johnson