UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP - 2 2009
CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY,<br>    Plaintiff,<br><br>v.<br><br>ROBERT RAMIREZ, individually and d/b/a LBJ TRUCKING CO., INC., LBJ TRUCKING CO., INC., CLEM'S YE OLDE HOMESTEAD FARMS, LTD., BETTYE CRIDER CLEM, CLARENCE TRUMAN CLEM, KELLEY CLEM, AND CLARENCE "CASEY" CLEM, JR.,<br>    Defendants. | No. 3:07-CV-1297-F |

## ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS AND RECOMMENDATION

BEFORE THE COURT are Magistrate Judge Paul Stickney's Findings, Conclusions, and Recommendation report (Docket No. 58), filed August 5, 2008; Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment and Brief in Support (Docket Nos. 17 and 18), filed October 22, 2007; The LBJ Defendants' Response to Atlantic's Motion for Summary Judgment (Docket No. 24), filed November 27,. 2007; Atlantic's Reply to the LBJ Defendants' Response (Docket No. 27), filed December 12, 2007; Atlantic's Objection to and Motion to Strike LBJ Defendants' Summary Judgment Evidence (Docket No. 29), filed

December 12, 2007. LBJ Defendants' Response to Atlantic's Motion to Strike (Docket No. 32), filed January 2, 2008; Atlantic's Reply to LBJ Defendants' Response (Docket No. 33), filed January 17, 2008; Clem Defendants' Response and Amended Response in Opposition to Atlantic's Motion for Summary Judgment (Docket Nos. 42 and 51), filed July 9, 2008; and Atlantic's Reply to Clem Defendants' Response (Docket No. 53), filed July 24, 2008.

Upon consideration of the parties' briefings, the facts, and the applicable law, the Court is of the opinion that the Magistrate Judge's Findings, Conclusions, and Recommendation (Docket No. 58) should be ADOPTED and Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment (Docket No. 17) should be GRANTED.

## Background

On July 25, 2007 Atlantic Casualty Insurance Company ("Atlantic") brought this action against Defendants Robert Ramirez ("Ramirez"), individually and doing business as LBJ Trucking Co., Inc. ("LBJ Trucking") (collectively the "LBJ Defendants"), and Defendants Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem, and Clarence T. "Casey" Clem, Jr. (collectively the "Clem Defendants"). Atlantic seeks a declaratory judgment regarding defense and indemnity coverage under certain commercial general liability policies between Atlantic and the LBJ Defendants (the "Policies"). The Clem Defendants are included as parties in this Declaratory Judgment Action because they are potential judgment creditors of the LBJ Defendants in the Underlying Lawsuit.

Atlantic insured LBJ Trucking Co., Inc., of which Ramirez is either an officer or director, under commercial general liability policies. *Plaintiff's Brief in Support* at ¶ 6. The Clem Defendants contracted with Briscoe Land Reclamation to supply "clean fill material" to their property on Parker Road in Carrollton, Texas. *Id* at ¶ 4. The LBJ Defendants are alleged to have transported the fill material, which the Clem Defendants allege was not clean fill material but rather "solid waste (as defined under federal law and Texas law...), including without limitation foundry sand and other foundry refuse...as well as brush, trees, wood grindings...other woody materials, and construction and demolition debris." *Clem Defendants' Fourth Amended Complaint,* 2008 WL 2907085, at ¶ 1. The Clem Defendants allege that the fill material is environmentally unsuitable for their land, and, "presents an imminent and substantial endangerment to individuals and the environment." *Id.* at ¶ 9. The Clem Defendants have filed suit ("Underlying Lawsuit") against the LBJ Defendants, amongst others, for violations of the federal Resource Conservation Recovery Act ("RCRA"), the Texas Health and Safety Code, and under Texas common law, in order to "remedy the storage and disposal of Solid Waste by [the Underlying Lawsuit] Defendants. *Id.* at ¶ 1-2.

The LBJ Defendants have demanded defense and indemnity coverage under the Policies against the Clem Defendants' allegations in the Underlying Lawsuit. *Plaintiff's Brief in Support* at ¶ 7. Atlantic has been paying the LBJ Defendants' defense in the Underlying Lawsuit under an express right of reservation to contest coverage and now seeks a declaratory judgment that Atlantic has no duty to defend or indemnify the LBJ Defendants because of

the Total Pollution Exclusion and Claims in Process provisions in the Policies. *Plaintiff's Brief in Support* at ¶ 7-10. Atlantic now moves for summary judgment in this action.

## Standard of Review

Summary judgment procedure is a method used by the Court to promptly dispose of an action in which there is no genuine issue of material fact. Summary judgment is proper only when "the pleadings, the discovery, and disclosure materials along with the affidavits...show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). (citing Fed. R.Civ.P. 56(c)).

When determining whether a genuine issue of material fact exists, the Court must consider "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a party moves for summary judgment they bear the burden of identifying those portions of the record which they believe demonstrate that no genuine issue of material fact exists. *OOIDA Risk Retention Group, Inc., v. Williams*, 544 Fd.Supp.2d 540, 542 (N.D.Tex 2008). (citing *Celotex* at 322-25).

Once the moving party has made a properly supported motion, the burden shifts to the non-moving party to demonstrate that summary judgment is inappropriate by going beyond the pleadings and providing depositions, affidavits, and competent evidence which shows that specific facts exist which demonstrate a genuine issue of material fact. *See Whittaker v.*

*BellSouth Telecomm., Inc.*, 206 F.3d 532, 534 (5th Cir. 2000). All competent evidence and reasonable inferences must be viewed in a light most favorable to the non-moving party. *Williams* at 542. The Court agrees with the Magistrate Judge's Conclusion that the material facts of this case are not in dispute. *Findings, Conclusions, and Recommendation Report* at ¶ 7.

## Analysis

In a diversity case, a federal court must apply the substantive law of the forum state. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n*, 783 F.2d 1234, 1240 (5th. Cir. 1986). Under Texas Law, the Court employs the "eight corners" doctrine when determining an insurer's duty to defend, meaning that the Court looks only to the allegations in the underlying plaintiff's pleadings and the language of the insurance policy provisions. *Noble Energy, Inc., v. Bituminous Cas. Co.*, 529 F.3d 642 (5th Cir. 2008); *Nat'l Fire Ins. Co. Of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.* 939 S.W.2d 139, 141 (Tex 1997). If the underlying plaintiff's pleadings allege facts that state a cause of action which may potentially fall within the scope of coverage, the insurer has a duty to defend. *Noble Energy* at 646. Doubtful cases are resolved in favor of the insured. *Id.* However, if the only facts alleged in the complaint are excluded from a policy's coverage provisions, the insurer does not have a duty to defend. While the Court must interpret the pleadings liberally for the purposes of construing the duty to defend this is not intended to mean that the Court should "adopt unreasonable interpretations of plain language, ignore ordinary usage, or set aside basic rules of

construction." *United Nat'l. Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 448 (5th Cir. 2007), *amended on rehearing by* 525 F.3d 400 (5th Cir. 2008). The insured bears the initial burden of showing that coverage exists, and once established, the burden shifts to the insurer to show that any policy exclusions apply. *Noble Energy* at 646 (citing *Hydro Tank* at 448).

Under Texas law, the rules of interpretation and construction which are applicable to contracts generally also control insurance policies. *Id.* Determining whether a contract is ambiguous is a question of law for the court to decide, in light of the present circumstances under which the contract was entered. *Id.* (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). If the language of the insurance policy can be given a definite or certain legal meaning it is not ambiguous. *Id.* When the policy language can be given a definite or certain legal meaning, extrinsic evidence cannot be presented. *See Id.*

### A. Pollution Exclusion Provision

This Court is convinced that the plain language of the pollution exclusion provision in the insurance policy, issued by Atlantic to the LBJ Defendants, excludes coverage of each of the claims asserted by the plaintiffs in the Underlying Lawsuit. The provision in the policy states:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal,

seepage, migration, release, or escape of 'pollutants' at any time.

*Plaintiff's Brief in Support* at Appendix 60, 101.

The term "pollutant" is defined by the initial 2004-05 policy as:

> Any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

*Plaintiff's Brief in Support* at Appendix 53.

The 2005-06 renewal policy redefines "pollutant", stating:

> "Pollutants" means solid, liquid, gaseous, or thermal irritant or contaminant or all material for which a Material Safety Data Sheet is required pursuant to federal, state, or local laws, where ever discharged, dispersed, seeping, migrating, or released, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, sewage; and associated smoke, vapor, soot, fumes, from said substance. Waste includes materials to be recycled, reconditioned, or reclaimed.

*Plaintiff's Brief in Support* at Appendix 101.

The pollution exclusion provision in the LBJ Defendants' liability policies unambiguously precludes coverage for underlying claims arising out of actual or alleged environmental pollution. Similar pollution exclusion provisions have traditionally been directed at precisely the type of claims involving environmental contamination of the

character alleged the plaintiffs in the Underlying Lawsuit. *See generally Noble Energy*, 529 F.3d 642; *CBI*, 907 S.W.2d 517. Numerous courts have examined the language of pollution exclusion provision, including those in Texas and the Fifth Circuit, and the majority of those courts have concluded that their language is clear and unambiguous. *See Noble Energy* at 646; *Hydro Tank* at 448.

### 1. Materials as Pollutants

The Clem Defendants argue that a latent ambiguity exists in the policy language for two reasons: (1) the materials do not qualify as pollutants, and (2) the direct deposit of the material onto their land is not included in the pollution exclusion language which prohibits coverage of damages caused by "discharge, dispersal, seepage, migration, release, or escape". *Clem Defs. Amended Resp.* at ¶ 9. While neither Texas nor Fifth Circuit courts have determined whether the solid waste and substances at issue in this case are pollutants, the Fifth Circuit recently held that the "presumably innocuous basic sediment and water" characterized in the underlying complaint as unwanted waste material indisputably met a similar policy's definition of pollutant. *Noble Energy* at 647.

Based on the Clem Defendants' allegations and Atlantic's policy language, the materials in the Underlying Lawsuit would also fall within the pollution exclusion provision. In their complaint, the Clem Defendants characterized the materials as "solid waste (as defined under federal law and Texas law...), including without limitation foundry sand and other foundry refuse...as well as brush, trees, wood grindings...other woody materials, and

construction and demolition debris." *Clem Defendants' Fourth Amended Compl.* at ¶ 1. Moreover, the Clem Defendants allege that the material deposited on their land, "presents an imminent and substantial endangerment to individuals and the environment". *Id.* at ¶ 9. After looking at the pleadings and the language of the policy provision, as well as looking to the plain meaning of the words, the Court agrees with the Magistrate Judge's conclusion that the Clem Defendants' allegations fall squarely within the pollution exclusion provision. The materials at issue are both waste and contaminants, and thus are properly classified as pollutants.

Additionally, any evidence proffered by the Clem or LBJ Defendants to indicate that the solid waste material is not an irritant is inadmissable under Texas law. In their response, the LBJ Defendants offered evidence refuting the classification of the materials as contaminants. Under Texas law, however, extrinsic evidence is only admissible if, "it is initially impossible to discern whether potential coverage is implicated," and when such evidence, "goes solely to a fundamental issue of coverage which does not overlap with the merits or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co. v. Loving Home Care Inc.*, 363 F.3d 523, 531 (5th Cir. 2004). In the present case, no ambiguity exists which would render it impossible to determine any potential coverage implication. Furthermore, allowing evidence in determining whether the waste is also an irritant or contaminant would engage in the truth or falsity of the Clem Defendants' allegations that the materials rendered the land unsuitable.

## 2. Materials Did Discharge, Disperse, Seep, Migrate, Release, or Escape

The Clem Defendants also argue that the pollution exclusion provision does not apply because the damage occurred through the direct deposit of waste onto their property, and not through discharge, dispersal, seepage, migration, release, or escape. *Clem Defs. Amended Resp.* at ¶ 21. To support this argument, the Clem Defendants rely substantially on *Clarendon American Ins. Co. v. Bay, Inc.*, 10 F.Supp.2d 736 (S.D. Tex 1998). The pollution exclusion provision in *Clarendon* is nearly identical to the one in the present case. In *Clarendon,* the defendants, Bay, maintained that, "the terms 'discharge,' 'dispersal,' and 'pollution' are terms of art, and that the sand, gravel, cement, and silica to which the [underlying] plaintiffs were exposed do not constitute 'pollutants.'" *Id.* at 743. The court, however, found this term of art argument wholly unconvincing, stating "the Fifth Circuit has taken a broader view of these [pollution] exclusions, and has found they are not limited in application to traditional environmental pollution — releases that cause widespread environmental harm", precisely the type of harm alleged by the Clem Defendants. *Id.* at 743.

The *Clarendon* court held that a latent ambiguity existed related to whether coverage was excluded for injuries sustained by direct bodily contact with wet cement while the material was in its intended container. *Id.* at 744. The court held that if the injuries occurred to the underlying plaintiff while the pollutant was in its intended container, the injuries did not stem from "discharge, dispersal, seepage, migration, release, or escape of pollutants." *Id.* The Clem Defendants' reliance on the holding in *Clarendon* is misguided because the alleged

damages to their land occurred from the dumping of solid waste on land, in other words, traditional environmental pollution — precisely the sort of damage that a pollution exclusion provision is intended to preclude from coverage.

### B. Duty to Defend Counter-Claims

The LBJ Defendants also argue that if the Court finds that the Policies do not cover the LBJ Defendants in the Clem Defendants' action, Atlantic still has a duty to defend the LBJ Defendants against counterclaims asserted by Hensley Industries ("Hensley"). *LBJ Defendants' Resp.* at ¶ 12. Atlantic's complaint, however, only seeks, "a declaration from this Court that it has no duty to defend or indemnify Robert Ramirez or LBJ Trucking or any other insured or Defendant for the claims asserted by the Underlying Plaintiff in the Underlying Lawsuit." *Plaintiff's Compl.* at ¶ 32. Atlantic's complaint does not seek a decision regarding cross-claims or counterclaims in the Underlying Lawsuit, therefore Atlantic's duty to defend or indemnify the LBJ Defendants as to any claims other than those brought by the Clem Defendants in the Underlying Lawsuit are not properly before this Court. Accordingly, this Court makes no determinations regarding those claims.

### C. Duty to Indemnify

In Texas, the duty to indemnify is distinct from, and narrower than, the duty to defend. *Lincoln Gen. Ins. Co. v. Aisha's Learning Center*, 468 F.3d 857, 858 (5th Cir. 2006). An insurer may have an initial duty to defend but it may later be determined on the facts in the underlying lawsuit that there is no duty to indemnify. *Farmers Tex. County Mutual Ins. Co.*

*v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). If the Court finds no duty to defend, the insurer has no duty to indemnify. *Id.* at 82. Accordingly, because the Court finds that Atlantic has no duty to defend, we also find the Atlantic has no duty to indemnify.

## Conclusion

For the foregoing reasons, the Court is of the opinion that the pollution exclusion provision in the Policies is unambiguous, and as a result, Atlantic's Objections to and Motion to Strike LBJ Defendants' Summary Judgment Evidence (Docket No. 29) is GRANTED. In light of the Clem Defendants' pleadings and the Policies' provisions, the Court finds that Atlantic has neither the duty to defend nor indemnify the LBJ Defendants against the Clem Defendants' claims in the Underlying Lawsuit. Consequently, the Court need not consider Atlantic's additional arguments that it has no duty to defend or indemnify under the claims in process exclusion or under the "fortuitous loss" doctrine. Accordingly, Atlantic's Motion for Summary Judgment (Docket No. 17) is GRANTED.

It is so ORDERED.

Signed this 2nd day of September, 2009.

*/s/ Royal Furgeson*
ROYAL FURGESON
UNITED STATES DISTRICT JUDGE